IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| KAYLA GORE; L.G.;and K.N., ) <br> ) <br>     *Plaintiffs*, ) <br> ) <br>     v. ) <br> ) <br> WILLIAM BYRON LEE, in his official ) <br> capacity as Governor of the State of ) <br> Tennessee; and LISA PIERCEY, in her ) <br> official capacity as Commissioner of the ) <br> Tennessee Department of Health, ) <br> ) <br>     *Defendants*. ) | No. 3:19-cv-00328 <br><br> Judge Eli J. Richardson <br> Magistrate Judge Barbara D. Holmes |

### DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

Defendants respectfully submit this reply in support of their motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### I.     Plaintiffs' Equal Protection Claim Fails as a Matter of Law

Plaintiffs' equal protection claim fails as a matter of law because Tennessee's "Birth Certificate Policy," as defined by Plaintiffs, does not treat transgender persons differently from cisgender persons; no person may correct the sex designation on a birth certificate unless it was factually inaccurate *at the time of birth*. Plaintiffs attempt to short circuit the threshold disparate-treatment requirement by arguing that a sex designation that does not comport with a person's current gender identity is inaccurate. But Plaintiffs' allegation that a person's "sex" at the time of birth means his or her current gender identity is a legal conclusion, not a factual allegation. And Plaintiffs may not rely on that legal conclusion to avoid dismissal.

1

The sex designation on a Tennessee birth certificate is recorded based on an individual's external genitalia at the time of birth.[1] That practice is consistent with the longstanding and broadly accepted definition of "sex" to mean the classification as male or female based on reproductive function. *See, e.g.*, New Oxford American Dictionary 1600 (3d ed. 2010) ("either of the two main categories (male and female) into which humans and many other living things are divided on the basis of their reproductive functions"). If an individual later identifies with a different gender, that subsequent development does not render incorrect the initial sex designation at the time of birth. The sex of the individual was not recorded in error.[2]

Plaintiffs also argue that discrimination based on transgender status is synonymous with discrimination based on sex, which warrants heightened scrutiny. But the Title VII cases holding discrimination against transgender persons tantamount to discrimination based on sex have done so because the discrimination at issue stemmed from "stereotypical notions of how sexual organs and gender identity ought to align." *EEOC v. R.G. & G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560, 576 (6th Cir. 2018), *cert. granted*, 139 S. Ct. 1599 (2019). That analysis is inapposite here. The narrow purpose of the sex field on a birth certificate is to record a person's sex *at the time of birth*, not to predict that person's eventual gender identity. A person's current gender identity is simply irrelevant to the sex designation that appears on a birth certificate. Indeed, the fact that Tennessee allows individuals to change the sex designation on current identification documents such as driver's licenses makes clear that the State is not engaging in any impermissible stereotyping.

---

[1] A small number of babies are born with ambiguous genitalia, but that is not at issue in this case.

[2] It is unclear how, under Plaintiffs' view that gender identity is determinative of one's sex, a State could ever accurately determine sex at the time of birth.

Plaintiffs' equal protection claim also fails a matter of law because their allegations of intentional discrimination, a required element of an equal protection claim based on a disparate impact theory, are wholly conclusory.

## II. Plaintiffs' Substantive Due Process Claims Fail as a Matter of Law

Plaintiffs fail to point to any alleged disclosure or release of any information about the Plaintiffs by the Defendants, instead arguing that *Kallstrom* somehow supports the idea that the unconstitutional disclosure to a third party can come from someone other than the government. (Doc. 43 p. 11). But in *Kallstrom*, as even Plaintiffs point out, it was the *government's disclosure* to defense counsel that was the unconstitutional disclosure. *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1063 (6th Cir. 1998). Plaintiffs cite no authority—nor are Defendants aware of any—recognizing a claim for infringement of the right to informational privacy when the Plaintiffs themselves disclosed the information.

Further, *Kallstrom* relied on the propensity of violence by *specific individuals* in relation to the plaintiffs in that case, while here, Plaintiffs only allege vague and general concerns related to "discrimination, harassment, and hostility" from unknown persons. But the fundamental right at issue in *Kallstrom* was one where the disclosure "places an individual at substantial risk of serious bodily harm, possibly even death, from a perceived likely threat." *Id.* at 1064. Discrimination, harassment, and hostility are simply insufficient to give rise to a fundamental liberty interest, and therefore Plaintiffs' claim must fail.

Additionally, Plaintiffs' argument that their transgender status is private, intimate personal information fails to meet the standard set out in *Bloch*. *Bloch* specifically held that "a rape victim has a fundamental right of privacy in preventing government officials from gratuitously and unnecessarily releasing the intimate details of the rape where no penalogical purpose is being

3

served." *Bloch v. Ribar*, 156 F.3d 673, 686 (6th Cir. 1998). Given the Sixth Circuit's narrow construction of the right to informational privacy, Plaintiffs' notion―that a disclosure of "particularly private, intimate personal information" rises to the level of a fundamental right and states a substantive due process claim―is entirely without merit. (Doc. 43, p. 14).

Finally, Plaintiffs do not cite—nor could they—any Sixth Circuit or Supreme Court precedent recognizing the precise right to personal autonomy they are claiming. They instead rely on law review articles and cherry-picked language from Supreme Court cases involving dissimilar rights. (Doc. 43, p. 16-17). But the Supreme Court "has required in substantive-due-process cases a 'careful description' of the asserted fundamental liberty interest." *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997). Plaintiffs' substantive due process claim to personal autonomy therefore fails as a matter of law.

### III. Plaintiffs' First Amendment Claim Fails as a Matter of Law

Plaintiffs argue that Defendants are forcing them to act as couriers of an ideological point of view and that this violates their First Amendment rights. (Doc. 43 pg. 18-19). This argument lacks merit. As an initial matter, the sex designation on a birth certificate is the recordation of a historical fact, not the expression of an ideological viewpoint. In any event, Plaintiffs are not being forced to act as couriers of that information. It is not enough, as Plaintiffs suggest, that third parties would routinely and reasonably understand a birth certificate "to reflect personal information relating to the particular individual." (Doc. 43, p. 19). Of course, third parties would understand a person's birth certificate to convey information *about* that individual. Rather, the relevant question is whether those parties would understand the information to be the speech *of that* individual rather than of the government. The answer to that question is easy: given that the sex designation is recorded on a government document at birth and may be amended only as allowed

4

by the government, that designation is understood to be the government's speech, even when it is disclosed by the individual. Plaintiffs' presentation of their birth certificates is not even remotely analogous to the forced public display of New Hampshire's state motto that was at issue in *Wooley v. Maynard*, 430 U.S. 705 (1977). To the extent Plaintiffs are ever required to present their birth certificates to third parties such as employers or government officials, that situation is much more analogous to the use of currency that the *Wooley* Court found distinguishable from the forced public display at issue in *Wooley. Id.* at 718 n.15. The Court rejected the suggestion that its decision would cast doubt on the constitutionality of the national motto, explaining that "[t]he bearer of currency," which is passed from hand to hand "is . . . not required to publicly advertise the national motto." *Id.*

Plaintiffs also mischaracterize Defendants' argument that birth certificates are *per se* government speech because of registration. (Doc. 43, p. 21). Unlike in *Matal v. Tam*, 137 S. Ct. 1733 (2017),[3] birth certificates are not a voluntary registration; instead, they are required by law. T.C.A. § 68-3-301. Birth certificates carry the imprimatur of the state, are the property of the state, and are controlled by the state. These are the hallmark predicates that indicate the birth certificate's sex field is government speech. *See Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 135 S. Ct. 2239, 2245 (2015).

For all of these reasons, all claims in the Complaint should be dismissed.

---

[3] Plaintiffs make much of the fact that the lower court in *In re Tam* characterized birth certificates as private speech. *In re Tam*, 808 F.3d 1321, 1348 (Fed. Cir. 2016). But it is significant that the Supreme Court also included a similar list that excluded any mention of birth certificates. *Tam*, 137 S. Ct at 1761.

5

Case 3:19-cv-00328 Document 44 Filed 08/05/19 Page 5 of 7 PageID #: 252

Respectfully Submitted,

HERBERT H. SLATERY III
Attorney General and Reporter


*s/ Dianna Baker Shew*

DIANNA BAKER SHEW     BPR 012793
Senior Assistant Attorney General
(615) 532-1969
dianna.shew@ag.tn.gov
NICHOLAS R. BARRY     BPR 031963
Assistant Attorney General
(615) 741-8726
nick.barry@ag.tn.gov
SARA E. SEDGWICK   BPR 004336
Senior Assistant Attorney General
(615) 532-2589
sara.sedgwick@ag.tn.gov
Attorneys for Defendants
P.O. Box 20207
Nashville, TN  37202

*Counsel for the Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of August 2019 I filed the foregoing electronically through the Court's CM/ECF System and thereby served the following:

Stuart C. Plunkett
BAKER BOTTS L.L.P.
101 California Street, Suite 3600
San Francisco, CA 94111
Phone: (415) 291-6200
Facsimile: (415) 291-6300
stuart.plunkett@bakerbotts.com

Maddy Dwertman
BAKER BOTTS L.L.P.
98 San Jacinto Boulevard, Suite 1500
Austin, TX 78701-4078
Phone: (512) 322-2500
Facsimile: (512) 322-2501
maddy.dwertman@bakerbotts.com

Brandt Thomas Roessler
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112-4498
Phone (212) 408-2500
Facsimile: (212) 408-2501
brandt.roessler@bakerbotts.com

Kathryn S. Christopherson
BAKER BOTTS L.L.P.
1001 Page Mill Rd., Bldg. One, Suite 200
Palo Alto, CA 94304-1007
Phone: (650) 739-7500
Facsimile: (650) 739-7699
kathryn.christopherson@bakerbotts.com

John T. Winemiller (TN 021084)
MERCHANT & GOULD
9717 Cogdill Road, Suite 101
Knoxville, TN 37932
Phone: (865) 380-5960
Facsimile: (612) 332-9081
JWinemiller@merchantgould.com

Omar Gonzalez-Pagan
LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, NY 10005-3919
Telephone: (212) 809-8585
Facsimile: (212) 809-0055
ogonzalez-pagan@lambdalegal.org

Tara L. Borelli
LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
730 Peachtree Street NE, Suite 640
Atlanta, GA 30318-1210
Telephone: (404) 897-1880
Facsimile: (404) 897-1884
tborelli@lambdalegal.org

Sasha Buchert
LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
1776 K Street NW, Suite 722
Washington, DC 20006
Telephone: (202) 804-6245
sbuchert@lambdalegal.org

*s/ Dianna Baker Shew*
Dianna Baker Shew