# EXHIBIT 5

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KAYLA GORE; JAIME COMBS; L.G.; and K.N., <br><br> *Plaintiffs*, <br><br> v. <br><br> WILLIAM BYRON LEE, in his official capacity as Governor of the State of Tennessee; and LISA PIERCEY, in her official capacity as Commissioner of the Tennessee Department of Health, <br><br> *Defendants*. | Case No. 3:19-CV-00328 <br><br> DISTRICT JUDGE RICHARDSON <br> MAGISTRATE JUDGE HOLMES |

## DECLARATION OF L.G. IN SUPPORT OF
## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

I, L.G., being of legal age and sound mind, do hereby declare and state as follows:

1. I am a Plaintiff in the above-captioned case. I have actual knowledge of the matters stated in this declaration.

2. I am 31 years old. I was born in Knoxville, Tennessee and currently reside in Louisville, Kentucky.

3. I attended and graduated from college in Georgia. Upon graduating, I returned to Knoxville where I lived until about six years ago when I moved to Kentucky for a job.

4. I was a professional herbalist and retail manager. I have a background in herbalism and worked with a chain of natural food stores as the Natural Living Director.

5. I am currently attending graduate school in Theology and work part time as a private contractor.

6. I am a woman.

7. I am also transgender. I was designated "male" on my birth certificate, even though I am, in fact, a woman.

8. I tried to come out as a woman in high school but was met with rejection. In college, I was denied support and medical care, which led to my first suicide attempt. While in college, I continued to struggle with my gender identity and lack of support; as a result, I continued to experience thoughts of self-harm.

9. I came out to my parents again around the age of 24. Although they initially had a difficult time understanding my being transgender, both of my parents made efforts to support me and eventually became strong allies of the LGBT community.

10. Around the same time, I began to socially and medically transition in order to align my lived experience and body characteristics with my female gender identity.

11. I have received a diagnosis for gender dysphoria. In 2013, I began to undergo hormone replacement therapy to relieve my gender dysphoria and bring my body into alignment with my gender identity. In 2017, I had an orchiectomy. The steps I have taken in my transition have brought my outside appearance into alignment with my female identity so that the general public sees me as the woman I am.

12. In addition to undergoing medical treatment for my gender dysphoria, I have sought to align my whole lived experience with my gender identity.

13. As I started aligning my lived experience with my true self, I faced discrimination and harassment, including in the workplace. Because of that, I am not "out" as transgender at work. None of my co-workers know that I am transgender.

14. In 2014, I began the process to correct the name and gender marker on my identity documents, including my driver's license, Social Security records, and birth certificate, so that my identity documents accurately reflect my identity and true sex as a female.

15. I am aware that the State of Tennessee has a policy and practice that categorically prohibits transgender persons, like me, from correcting the gender marker on their birth certificates so that the birth certificates may accurately reflect their sex, consistent with their gender identity (hereinafter the "Birth Certificate Policy").

16. In March 2014, I obtained a court order changing my name, but was informed that the State of Tennessee does not permit gender marker corrections on birth certificates. I also tried several times to correct the gender marker on my Tennessee driver's license. Following multiple instances of invasive questioning and humiliation at the Tennessee Department of Motor Vehicles (DMV), the DMV denied my requests to correct the gender marker on my driver's license. When I moved to Kentucky, I visited the DMV there to request a driver's license with a female gender marker; my request was denied there as well. I then obtained a passport with a female gender marker. Only after producing proof of surgery was I able to obtain a Kentucky driver's license that accurately reflects my female gender identity. The process of correcting the gender marker on my driver's license was painful, humiliating, and traumatizing. I believe that were I permitted to have an accurate birth certificate, the process of correcting my driver's license would have been straightforward, and would not have subjected me to this kind of humiliation and harassment.

17. Because of Tennessee's Birth Certificate Policy, I am still prohibited from correcting the gender marker on my birth certificate. As a result, my birth certificate and my other identification documents are incongruent with each other.

18. I am stigmatized and harmed by Tennessee's Birth Certificate Policy. I need my identity documents to be congruent with who I am—a woman—and I believe that my identity should be recognized and respected by Tennessee.

19. I reasonably fear that possessing a birth certificate that fails to accurately reflect my sex, consistent with my gender identity, increases the likelihood that I will be subjected to discrimination, invasions of privacy, prejudice, harassment, or physical violence.

20. For example, I was harassed and asked invasive questions about my genitals when I presented inconsistent identity documentation at the DMV. Before I was permitted to correct the gender marker on my driver's license, I was also inappropriately touched and questioned by a doctor when I tried to obtain routine medical services. I have also faced discrimination at work because of my gender identity.

21. Additionally, I have gone to great lengths to ensure that my birth certificate will not inadvertently be discovered. I keep my Tennessee birth certificate with the incorrect gender marker in a safety deposit box at my bank. On my death, the contents of the safety deposit box will be turned over to my mother whom I have directed to destroy my Tennessee birth certificate. I have done this to ensure, to the best of my ability, that my Tennessee birth certificate with the incorrect gender marker will not be public.

22. I am personally aware of the high incidence of violence and harassment directed at transgender persons as well as the high rates of employment and housing discrimination faced by transgender persons.

23. As a result of Tennessee's Birth Certificate Policy, my current Tennessee birth certificate reflects the sex that I was incorrectly assigned at birth, erroneously stating that I am male.

24. Being denied a birth certificate that accurately reflects my sex, consistent with my gender identity, is psychologically and emotionally harmful to me. I am faced with the persistent reminder that the State of Tennessee does not respect me for who I am, and I am kept in fear of what may happen the next time I have to show my birth certificate to a stranger.

25. I wish to correct my birth certificate, which currently indicates that my sex is male, to accurately reflect my sex as female, as determined by my gender identity.

Signed under penalty of perjury under the laws of the United States this 4th day of March, 2020.

*/s/ L.G.*

L.G.

Case 3:19-cv-00328   Document 61-5   Filed 03/09/20   Page 6 of 6 PageID #: 509
Active 43750839.6
5