# EXHIBIT Q



# Model State Vital Statistics Act and Regulations

From the CENTERS FOR DISEASE CONTROL AND PREVENTION/National Center for Health Statistics



## 1992 Revision

**U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES**
Public Health Service
Centers for Disease Control and Prevention
National Center for Health Statistics





Approved and Recommended by the
Association for Vital Records and Health Statistics
Centers for Disease Control and Prevention
United States Public Health Service

This document has also been submitted to the Council of State Governments for inclusion in *Suggested State Legislation*. At the time of publication, their action is pending.

This revision replaces the 1977 Revision of the Model State Vital Statistics Act and Model State Vital Statistics Regulations (PHS 78–1115).

# Model State Vital Statistics Act and Regulations

From the CENTERS FOR DISEASE CONTROL AND PREVENTION/National Center for Health Statistics



## 1992 Revision

U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES
Public Health Service
Centers for Disease Control and Prevention
National Center for Health Statistics

Hyattsville, Maryland
February 1994
DHHS Publication No. (PHS) 94-1115

Case 3:19-cv-00328    Document 62-17    Filed 03/09/20    Page 4 of 41 PageID #: 734

**National Center for Health Statistics**

Manning Feinleib, M.D., Dr.P.H., *Director*

Jack R. Anderson, *Deputy Director*

Jacob J. Feldman, Ph.D., *Associate Director for Analysis and Epidemiology*

Gail F. Fisher, Ph.D., *Associate Director for Planning and Extramural Programs*

Peter L. Hurley, *Associate Director for Vital and Health Statistics Systems*

Robert A. Israel, *Associate Director for International Statistics*

Stephen E. Nieberding, *Associate Director for Management*

Charles J. Rothwell, *Associate Director for Data Processing and Services*

Monroe G. Sirken, Ph.D., *Associate Director for Research and Methodology*

**Division of Vital Statistics**

Lester R. Curtin, Ph.D., *Acting Director*

James A. Weed, Ph.D., *Deputy Director*

George A. Gay, *Chief, Registration Methods Branch*

# Preface

The U.S. vital registration and statistics system exemplifies cooperation between the Federal and State Government at its best. Even though the legal responsibility for the registration of vital events rests with the individual States, the States and the National Center for Health Statistics (the Federal partner) work together to build a uniform system that produces records to satisfy the legal requirements of individuals and their families and also to meet statistical and research needs at the local, State, and national levels. The cooperation includes the development and promotion of standard certificates and reporting forms, training and quality control programs, and model legislation.

This is the fifth revision of the Model State Vital Statistics Act (the first was in 1907) and the second revision of the Model State Vital Statistics Regulations (the first was in 1977). The Model Act and Regulations provide detailed guidance to State registrars of vital statistics and State legislators who are considering revision of their own State vital statistics laws and regulations. The Model Act and Regulations serve to promote uniformity among States in definitions, registration practices, disclosure and issuance procedures, and in many other functions that comprise a State system of vital statistics.

A major goal of this revision of the Model Act and Regulations is to ensure the vital statistics laws allow States to easily incorporate technological advances in records and information management. Special emphasis was given to the language within the revision in order that it can serve as a model for the next 10-15 years. The wording used will allow States to make use of emerging technology that will continue to impact the vital statistics system without having to change their law.

In developing this revision, input was sought not only from State vital records and statistics offices but also from other persons and organizations, including Federal agencies, which have an interest in the registration system either as a source of legal records or a source of statistical data. The expert testimony and comments from these interested persons and organizations provided invaluable assistance in developing the revision and should help guarantee that the vital statistics system continues to serve the interests of its many users, especially the general public.

# Working Group to Revise the Model State Vital Statistics Act and Model State Vital Statistics  Regulations

**Chairperson**

Mrs. Paula M. Taylor
State Registrar
Tennessee Department of Health

**Members**

Mr. Henry C. Robinson, Jr.
Director, Division of Vital Records and State Registrar
Arkansas Department of Health

Mr. David Mitchell
Chief, Health Data and Statistics Branch, and Chief, Office of State Registrar
California Department of Health Services

Mrs. Julie D. Biddy
Deputy Director, Vital Records Service
Georgia Department of Human Resources

Mr. Steven L. Perry
Deputy State Registrar
Illinois Department of Health

Mr. Frederick L. King
State Registrar
Minnesota Department of Health

Mr. Charles E. Sirc
State Registrar and Chief
New Hampshire Bureau of Vital Records and Health Statistics

Ms. Jacquelyn S. Dickman            April 1990–February 1991
Assistant General Counsel
South Carolina Department of Health and Environmental Control

Ms. Mary Lloyd Lowe            January 1991–July 1992
Staff Counsel
Illinois Department of Health

**Resource staff**

Mr. George A. Gay
Chief, Registration Methods Branch
Division of Vital Statistics
National Center for Health Statistics

Ms. Julia L. Kowaleski
Statistician
Registration Methods Branch
Division of Vital Statistics
National Center for Health Statistics

# Acknowledgment

The Working Group Would Like to Thank the Following Organizations That Provided Input to the Revision

Testimony heard:

American Association of Motor Vehicle Administrators
American Bar Association
American College of Obstetricians and Gynecologists
American Council of Life Insurance
American Health Information Management Association (formerly, American Medical Record Association)
American Medical Association
Centers for Disease Control and Prevention, Division of Surveillance and Epidemiology
Dow Chemical Company
Immigration and Naturalization Service
International Association of Coroners and Medical Examiners
Medical Ethicists - George Washington University
National Association of Medical Examiners
National Committee on Vital and Health Statistics
National Conference of Commissioners on Uniform State Laws
National Funeral Directors Association
National Genealogical Society
National Medical Association
Social Security Administration, Office of Retirement and Survivors Benefits
State Department, Office of Fraud Prevention Programs
University of Maryland, Journalism Department

Written input received:

American Hospital Association
Association of State and Territorial Health Officials-Epidemiology affiliate (Council of State and Territorial Epidemiologists)
U.S. Office of Child Support Enforcement

# Contents

Preface . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Working group to revise the model State vital statistics act and model State vital statistics regulations. . . . . . . . . . . iv

Acknowledgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

1. Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

2. Office of vital statistics and statewide system of vital statistics. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

3. Regulations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

4. Appointment of State registrar of vital statistics . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

5. Duties of State registrar . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

6. Content of certificates and reports . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

7. Birth registration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

8. Infants of unknown parentage; foundling registration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

9. Delayed registration of birth. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

10. Judicial procedure to establish facts of birth . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

11. Certificates of adoption . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

12. Certificates of birth following adoption, legitimation, court determination of paternity, and paternity
acknowledgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

13. Death registration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

14. Delayed registration of death. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

15. Reports of fetal death . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

16. Reports of induced termination of pregnancy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

17. Vital reports . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

18. Authorization for final disposition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

19. Marriage registration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

20. (Divorce, dissolution of marriage, or annulment) registration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

21. Amendment of vital records . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

22. Preservation of vital records . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

23. Disclosure of information from vital records or vital reports . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

24. Copies from the system of vital statistics . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

25. Fees. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

26. Persons required to keep records . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

27. Duties to furnish information. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

28. Matching of birth and death certificates. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

29. Penalties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

30.  Applicability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     14

31.  Severability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     14

32.  Uniformity of interpretation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     14

33.  Short title. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     14

34.  Repeal  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     15

35.  Time of taking effect . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     15

Model State Vital Statistics Regulations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     20

# MODEL STATE VITAL STATISTICS ACT

NOTE: Where the need for variation was apparent, parentheses, "( )," have been placed around the word or phrase. In cases where recommendations were considered optional, brackets, "[ ]," have been placed around the word or phrase.

## Section 1. Definitions

(a) "Dead body" means a human body or such parts of such human body from the condition of which it reasonably may be concluded that death occurred.

(b) "Fetal death" means death prior to the complete expulsion or extraction from its mother of a product of human conception, irrespective of the duration of pregnancy and which is not an induced termination of pregnancy. The death is indicated by the fact that after such expulsion or extraction, the fetus does not breathe or show any other evidence of life, such as beating of the heart, pulsation of the umbilical cord, or definite movement of voluntary muscles. Heartbeats are to be distinguished from transient cardiac contractions; respirations are to be distinguished from fleeting respiratory efforts or gasps.

(c) "File" means the presentation and acceptance of a vital record or report provided for in this Act for registration by the (Office of Vital Statistics).

(d) "Filing, date of" means the date a vital record is accepted for registration by the (Office of Vital Statistics).

(e) "Final disposition" means the burial, interment, cremation, removal from the State, or other authorized disposition of a dead body or fetus.

(f) "Induced termination of pregnancy" means the purposeful interruption of an intrauterine pregnancy with the intention other than to produce a live-born infant, and which does not result in a live birth. This definition excludes management of prolonged retention of products of conception following fetal death.

(g) "Institution" means any establishment, public or private, which provides in-patient or out-patient medical, surgical, or diagnostic care or treatment or nursing, custodial, or domiciliary care, or to which persons are committed by law.

(h) "Live birth" means the complete expulsion or extraction from its mother of a product of human conception, irrespective of the duration of pregnancy, which, after such expulsion or extraction, breathes, or shows any other evidence of life, such as beating of the heart, pulsation of the umbilical cord, or definite movement of voluntary muscles, whether or not the umbilical cord has been cut or the placenta is attached. Heartbeats are to be distinguished from transient cardiac contractions; respirations are to be distinguished from fleeting respiratory efforts or gasps.

(i) "Physician" means a person authorized or licensed to practice medicine or osteopathy pursuant to the laws of this State.

(j) "Registration" means the process by which vital records are completed, filed, and incorporated into the official records of the (Office of Vital Statistics).

(k) "System of vital statistics" means the registration, collection, preservation, amendment, and certification of vital records; the collection of other reports required by this Act; and activities related thereto including the tabulation, analysis, publication, and dissemination of vital statistics.

(l) "Vital records" means certificates or reports of birth, death, marriage, (divorce, dissolution of marriage, or annulment) and data related thereto.

(m) "Vital reports" means reports of fetal death and induced termination of pregnancy and data related thereto.

(n) "Vital statistics" means the data derived from certificates and reports of birth, death, fetal death, induced termination of pregnancy, marriage, (divorce, dissolution of marriage, or annulment) and related reports.

## Section 2. Office of Vital Statistics and Statewide System of Vital Statistics

There is hereby established in the (State public health administrative agency) an (Office of Vital Statistics) which shall install, maintain, and operate the only system of vital statistics throughout this State. The (Office of Vital Statistics) shall be provided with sufficient staff, suitable offices, and other resources for the proper administration of the system of vital statistics and for the preservation and security of its official records.

## Section 3. Regulations

The (State public health administrative agency), hereinafter referred to as "State Agency," is authorized to adopt, amend, and repeal regulations for the purpose of carrying out the provisions of this Act.

2

## Section 4. Appointment of State Registrar of Vital Statistics

The (State Health Officer) shall appoint the State Registrar of Vital Statistics, hereinafter referred to as "State Registrar," in accordance with (applicable civil service laws and regulations).

## Section 5. Duties of State Registrar

(a)  The State Registrar shall:

   (1)  Administer and enforce the provisions of this Act and the regulations issued hereunder, and issue instructions for the efficient administration of the system of vital statistics.

   (2)  Direct and supervise the system of vital statistics and the (Office of Vital Statistics) and be custodian of its records.

   (3)  Direct, supervise, and control the activities of all persons when they are engaged in activities pertaining to the operation of the system of vital statistics.

   (4)  Conduct training programs to promote uniformity of policy and procedures throughout the State in matters pertaining to the system of vital statistics.

   (5)  Prescribe, with the approval of the State Agency, furnish and distribute such forms as are required by this Act and the regulations issued hereunder, or prescribe such other means for transmission of data as will accomplish the purpose of complete and accurate reporting and registration.

   (6)  Prepare and publish reports of vital statistics of this State and such other reports as may be required by the State Agency.

   (7)  Provide to local health agencies copies of or data derived from certificates and reports required under this Act, as he or she shall determine are necessary for local health planning and program activities. The State Registrar shall establish a schedule with each local health agency for transmittal of the copies or data. The copies or data shall remain the property of the (Office of Vital Statistics), and the uses which may be made of them shall be governed by the State Registrar.

(b)  The State Registrar may establish or designate offices in the State as provided by regulation to aid in the efficient administration of the system of vital statistics.

(c)  The State Registrar may delegate such functions and duties vested in him or her to employees of the (Office of Vital Statistics) and to employees of any office established or designated under Section 5(b).

## Section 6. Content of Certificates and Reports

(a)  In order to promote and maintain nationwide uniformity in the system of vital statistics, the forms of certificates and reports required by this Act, or by regulations adopted hereunder, shall include as a minimum the items recommended by the Federal agency responsible for national vital statistics.

(b)  Each certificate, report, and other document required by this Act shall be prepared in the format approved by the State Registrar.

(c)  All vital records shall contain the date of filing.

(d)  Information required in certificates, forms, records, or reports authorized by this Act may be filed, verified, registered, and stored by photographic, electronic, or other means as prescribed by the State Registrar.

## Section 7. Birth Registration

(a)  A certificate of birth for each live birth which occurs in this State shall be filed with the (Office of Vital Statistics), or as otherwise directed by the State Registrar, within 5 days after such birth and shall be registered if it has been completed and filed in accordance with this section.

(b)  When a birth occurs in an institution or en route thereto, the person in charge of the institution or his or her authorized designee shall obtain the personal data, prepare the certificate, certify that the child was born alive at the place and time and on the date stated either by signature or by an approved electronic process, and file the certificate as directed in Section 7(a). The physician or other person in attendance shall provide the medical information required by the certificate within 72 hours after the birth.

3

(c) When a birth occurs outside an institution,

    (1) the certificate shall be prepared and filed by one of the following in the indicated order of priority, in accordance with regulations promulgated by the State Agency:

        (a) the physician in attendance at or immediately after the birth, or in the absence of such a person;

        (b) any other person in attendance at or immediately after the birth, or in the absence of such a person;

        (c) the father, the mother, or, in the absence of the father and the inability of the mother, the person in charge of the premises where the birth occurred.

    (2) the State Agency shall by regulation determine what evidence may be required to establish the facts of birth.

(d) When a birth occurs on a moving conveyance within the United States and the child is first removed from the conveyance in this State, the birth shall be registered in this State and the place where it is first removed shall be considered the place of birth. When a birth occurs on a moving conveyance while in international waters or air space or in a foreign country or its air space and the child is first removed from the conveyance in this State, the birth shall be registered in this State, but the certificate shall show the actual place of birth insofar as can be determined.

(e) For the purposes of birth registration, the mother is deemed to be the woman who gives birth to the child, unless otherwise provided by State law or determined by a (court of competent jurisdiction) prior to the filing of the birth certificate. The information about the father shall be entered as provided in Section 7(f).

(f) (1) If the mother was married at the time of either conception or birth, or between conception and birth, the name of the husband shall be entered on the certificate as the father of the child, unless:

        (a) paternity has been determined otherwise by (a court of competent jurisdiction), or

        (b) the mother and the mother's husband execute joint or separate affidavits attesting that the husband is not the father of the child. Affidavits shall be notarized, and signatures of the mother and of the husband shall be individually notarized on any joint affidavit. In such event, information about the father shall be omitted from the certificate, or

        (c) the mother executes an affidavit attesting that the husband is not the father and that the putative father is the father, and the putative father executes an affidavit attesting that he is the father, and the husband executes an affidavit attesting that he is not the father. Affidavits may be joint or individual or a combination thereof, and each signature shall be individually notarized. In such event, the putative father shall be shown as the father on the certificate.

    (2) If the mother was not married at the time of either conception or birth or between conception and birth, the name of the father shall not be entered on the certificate without an affidavit of paternity signed by the mother and the person to be named as the father.

    (3) In any case in which paternity of a child is determined by (a court of competent jurisdiction), the name of the father and surname of the child shall be entered on the certificate of birth in accordance with the finding and order of the court.

    (4) If the father is not named on the certificate of birth, no other information about the father shall be entered on the certificate.

    (5) Affidavits referenced in this section shall be filed with the State Registrar.

(g) Either of the parents of the child, or other informant, shall verify the accuracy of the personal data to be entered on the certificate in time to permit the filing of the certificate within the 5 days prescribed in Section 7(a).

(h) Certificates of birth filed after 5 days, but within one year from the date of birth shall be registered on the standard form of live birth certificate in the manner prescribed above. Such certificates shall not be marked "Delayed." The State Registrar may require additional evidence in support of the facts of birth.

## Section 8. Infants of Unknown Parentage; Foundling Registration

(a) Whoever assumes the custody of a live-born infant of unknown parentage shall report on a form and in a manner prescribed by the State Registrar within 5 days to the (Office of Vital Statistics) the following information:

4

    (1)  the date and city and/or county of finding;

    (2) sex and approximate birth date of child;

    (3)  name and address of the person or institution with whom the child has been placed for care;

    (4)  name given to the child by the custodian of the child; and

    (5) other data required by the State Registrar.

(b)  The place where the child was found shall be entered as the place of birth.

(c)  A report registered under this section shall constitute the certificate of birth for the child.

(d)  If the child is identified and a certificate of birth is found or obtained, the report registered under this section shall be placed in a special file and shall not be subject to inspection except upon order of (a court of competent jurisdiction) or as provided by regulation.

## Section 9. Delayed Registration of Birth

(a)  When a certificate of birth of a person born in this State has not been filed within one year, a delayed certificate of birth may be filed in accordance with regulations of the State Agency. No delayed certificate shall be registered until the evidentiary requirements as specified in regulation have been met.

(b)  Such birth shall be registered on a delayed certificate of birth form, and show on its face the date of registration. The delayed certificate shall contain a summary statement of the evidence submitted in support of the delayed registration.

(c)  No delayed certificate of birth shall be registered for a deceased person.

(d)  (1) When an applicant as defined by regulation does not submit the minimum documentation required in the regulations for delayed registration or when the State Registrar has cause to question the validity or adequacy of the applicant's sworn statement or the documentary evidence, and if the deficiencies are not corrected, the State Registrar shall not register the delayed certificate of birth and shall advise the applicant of the reasons for this action, and shall further advise the applicant of his or her right to seek an order from (a court of competent jurisdiction).

    (2)  The State Agency may by regulation provide for the dismissal of an application which is not actively pursued.

## Section 10. Judicial Procedure to Establish Facts of Birth

(a)  If the State (Agency, Registrar) refuses to file a certificate of birth under the provisions of Section 7 or 9, a petition signed and sworn to by the petitioner may be filed with (a court of competent jurisdiction) for an order establishing a record of the date and place of the birth and the parentage of the person whose birth is to be registered.

(b)  Such petition shall be made on a form prescribed and furnished or approved by the State Registrar and shall allege:

    (1)  that the person for whom a certificate of birth is sought was born in this State;

    (2)  that no certificate of birth of such person can be found in the (Office of Vital Statistics) or (the office of any local custodian of birth certificates);

    (3)  that diligent efforts by the petitioner have failed to obtain the evidence required in accordance with Sections 7 or 9 of this Act and Regulations adopted pursuant thereto;

    (4)  that the State Registrar has refused to file a certificate of birth, and;

    (5) such other allegations as may be required.

(c)  The petition shall be accompanied by a statement of the State Registrar made in accordance with Sections 7 or 9 and all documentary evidence which was submitted to the State Registrar in support of such registration.

(d)  The court shall fix a time and place for hearing the petition and shall give the State Registrar ( ) days notice of said hearing. The State Registrar or his authorized representative may appear and testify in the proceeding.

(e)  If the court finds, from the evidence presented, that the person for whom a certificate of birth is sought was born in this State, it shall make findings as to the place and date of birth, parentage, and such other findings as may be required and shall issue an order, on a form prescribed and furnished or approved by the State Registrar, to establish

5

a court order certificate of birth. This order shall include the birth data to be registered, a description of the evidence presented, and the date of the court's action.

(f) The clerk of court shall forward each such order to the State Registrar not later than the tenth day of the calendar month following the month in which it was entered. Such order shall be registered by the State Registrar and shall constitute the court order certificate of birth.

## Section 11. Certificates of Adoption

(a) For each adoption decreed by (a court of competent jurisdiction) in this State, the court shall require the preparation of a certificate of adoption on a form prescribed and furnished by the State Registrar. The certificate of adoption shall include such facts as are necessary to locate and identify the certificate of birth of the person adopted or, in the case of a person who was born in a foreign country, evidence from sources determined to be reliable by the court as to the date and place of birth of such person; shall provide information necessary to establish a new certificate of birth of the person adopted; shall identify the order of adoption; and shall be certified by the clerk of court.

(b) Information necessary to prepare the certificate of adoption shall be furnished by each petitioner for adoption or his or her attorney. The (social service agency) or any person having knowledge of the facts shall supply the court with such additional information as may be necessary to complete the certificate of adoption. The provision of such information shall be prerequisite to the issuance of a final decree in the matter by the court.

(c) Whenever an adoption decree is amended or annulled, the clerk of the court shall prepare a report thereof, which shall include such facts as are necessary to identify the original certificate of adoption and the facts amended in the adoption decree as shall be necessary to properly amend the birth record.

(d) Not later than the ( ) day of each calendar month or more frequently, as directed by the State Registrar, the clerk of the court shall forward to the State Registrar certificates of adoption, reports of annulment of adoption, and amendments of decrees of adoption which were entered in the preceding month, together with such related reports as the State Registrar shall require.

(e) When the State Registrar shall receive a certificate of adoption, report of annulment of adoption, or amendment of a decree of adoption for a person born outside this State, he or she shall forward such certificate or report to the State Registrar in the State of birth.

(f) If the birth occurred in a foreign country, and the child was not a citizen of the United States at the time of birth, the State Registrar shall prepare a "Certificate of Foreign Birth" as provided by Section 12(h). If the child was born in Canada, the State Registrar shall also send a copy of the certificate of adoption, report of annulment of adoption, or amendment of a decree of adoption to the appropriate registration authority in that country.

(g) If the child was born in a foreign country but was a citizen of the United States at the time of birth, the State Registrar shall not prepare a "Certificate of Foreign Birth" and shall notify the adoptive parents of the procedures for obtaining a revised birth certificate for their child through the United States Department of State.

## Section 12. Certificates of Birth Following Adoption, Legitimation, Court Determination of Paternity, and Paternity Acknowledgment

(a) The State Registrar shall establish a new certificate of birth for a person born in this State when he or she receives the following:

(1) A certificate of adoption as provided in Section 11 or a certificate of adoption prepared and filed in accordance with the laws of another State or foreign country, or a certified copy of the decree of adoption, together with the information necessary to identify the original certificate of birth and to establish a new certificate of birth; except that a new certificate of birth shall not be established if so requested by the court decreeing the adoption, the adoptive parents, or the adopted person.

(2) A request that a new certificate be established as prescribed by regulation and such evidence as required by regulation proving that such person has been legitimated, or that (a court of competent jurisdiction) has determined the paternity of such person, or that both parents have acknowledged the paternity of such person and request that the surname be changed from that shown on the original certificate.

(b) When a new certificate of birth is established, the actual city and/or county and date of birth shall be shown. The new certificate shall be substituted for the original certificate of birth in the files, and the original certificate of birth and the evidence of adoption, legitimation, court determination of paternity, or paternity acknowledgment shall not be

6

subject to inspection except upon order of (a court of competent jurisdiction) or as provided by regulation or as otherwise provided by State law.

(c) Upon receipt of a report of an amended decree of adoption, the certificate of birth shall be amended as provided by regulation.

(d) Upon receipt of a report or decree of annulment of adoption, the original certificate of birth shall be restored to its place in the files and the new certificate and evidence shall not be subject to inspection except upon order of (a court of competent jurisdiction) or as provided by regulation.

(e) Upon written request of both parents and receipt of a sworn acknowledgment of paternity signed by both parents of a child born out of wedlock, the State Registrar shall reflect such paternity on the certificate of birth in the manner prescribed by regulation if paternity is not already shown on the certificate of birth.

(f) If no certificate of birth is on file for the person for whom a new birth certificate is to be established under this section, and the date and place of birth have not been determined in the adoption or paternity proceedings, a delayed certificate of birth shall be filed with the State Registrar as provided in Section 9 or Section 10 of this Act before a new certificate of birth is established. The new birth certificate shall be prepared on the delayed birth certificate form.

(g) When a new certificate of birth is established by the State Registrar, all copies of the original certificate of birth in the custody of any other custodian of vital records in this State shall be sealed from inspection or forwarded to the State Registrar, as he or she shall direct.

(h) The State Registrar shall, upon request, prepare and register a certificate in this State for a person born in a foreign country who is not a citizen of the United States and who was adopted through (a court of competent jurisdiction) in this State. The certificate shall be established upon receipt of a certificate of adoption from the court decreeing the adoption, proof of the date and place of the child's birth, and a request from the court, the adopting parents, or the adopted person if 18 years of age or over that such a certificate be prepared. Such certificate shall be labeled "Certificate of Foreign Birth" and shall show the actual country of birth. A statement shall also be included on the certificate indicating that it is not evidence of United States citizenship for the child for whom it is issued. After registration of the birth certificate in the new name of the adopted person, the State Registrar shall seal and file the certificate of adoption which shall not be subject to inspection except upon order of (a court of competent jurisdiction) or as provided by regulation or as otherwise provided by State law.

## Section 13. Death Registration

(a) A certificate of death for each death which occurs in this State shall be filed with the (Office of Vital Statistics), or as otherwise directed by the State Registrar, within 5 days after death or the finding of a dead body and prior to final disposition, and shall be registered if it has been completed and filed in accordance with this section.

(1) If the place of death is unknown but the dead body is found in this State, the certificate of death shall be completed and filed in accordance with this section. The place where the body is found shall be shown as the place of death. If the date of death is unknown, it shall be determined by approximation. If the date cannot be determined by approximation, the date found shall be entered and identified as such.

(2) When death occurs in a moving conveyance in the United States and the body is first removed from the conveyance in this State, the death shall be registered in this State and the place where it is first removed shall be considered the place of death. When a death occurs on a moving conveyance while in international waters or air space or in a foreign country or its air space and the body is first removed from the conveyance in this State, the death shall be registered in this State but the certificate shall show the actual place of death insofar as can be determined.

(3) In all other cases, the place where death is pronounced shall be considered the place where death occurred.

(b) The funeral director or person acting as such who first assumes custody of the dead body shall file the certificate of death. He or she shall obtain the personal data from the next of kin or the best qualified person or source available and shall obtain the medical certification from the person responsible therefor. The funeral director or person acting as such shall provide the death certificate containing sufficient information to identify the decedent to the certifier within 48 hours after death.

(c) The medical certification shall be completed within 48 hours after receipt of the death certificate by the physician in charge of the patient's care for the illness or condition which resulted in death, except when inquiry is required by the

7

(Post-Mortem Examinations Act). In the absence or inability of said physician or with his or her approval, the certificate may be completed by his or her associate physician, the chief medical officer of the institution in which death occurred, or the physician who performed an autopsy upon the decedent, provided such individual has access to the medical history of the case, and death is due to natural causes. The person completing the cause of death shall attest to its accuracy either by signature or by an approved electronic process.

(d) When inquiry is required by the (Post-Mortem Examinations Act), the (medical examiner, coroner) in the jurisdiction where death occurred or the body was found shall determine the cause of death and shall complete and sign the medical certification within 48 hours after taking charge of the case.

(e) When death occurs in an institution and the person responsible for the completion of the medical certification is not available to pronounce death, another physician at the institution who views the body may pronounce death, attest to the pronouncement by signature or an approved electronic process, and, with the permission of the person responsible for the medical certification, release the body to the funeral director or person acting as such. The funeral director or person acting as such must in all cases obtain the medical certification from the person responsible for its completion or obtain assurance that the medical certification has been provided to the State Registrar by an approved electronic process.

(f) If the cause of death cannot be determined within the time prescribed, the medical certification shall be completed as provided by regulation. The attending physician or (medical examiner, coroner) shall give the funeral director or person acting as such notice of the reason for the delay, and final disposition of the body shall not be made until authorized by the attending physician or (medical examiner, coroner).

(g) Upon receipt of autopsy results or other information that would change the information in the cause-of-death section of the death certificate from that originally reported, the certifier shall immediately file a supplemental report of cause of death with the (Office of Vital Statistics) to amend the record.

(h) When a death is presumed to have occurred within this State but the body cannot be located, a death certificate may be prepared by the State Registrar only upon receipt of an order of (a court of competent jurisdiction) which shall include the finding of facts required to complete the death certificate. Such a death certificate shall be marked "Presumptive" and shall show on its face the date of death as determined by the court and the date of registration, and shall identify the court and the date of the decree.

## Section 14. Delayed Registration of Death

(a) When a death occurring in this State has not been registered within the time period prescribed by Section 13, a certificate of death may be filed in accordance with regulations of the State Agency. Such certificate shall be registered subject to such evidentiary requirements as the State Agency shall by regulation prescribe to substantiate the alleged facts of death.

(b) When an applicant does not submit the minimum documentation required in the regulations for delayed registration or when the State Registrar has cause to question the validity or adequacy of the applicant's sworn statement or the documentary evidence, and if the deficiencies are not corrected, the State Registrar shall not register the delayed certificate of death and shall advise the applicant of the reasons for this action, and shall further advise the applicant of his or her right to seek an order from (a court of competent jurisdiction).

(c) Certificates of death registered one year or more after the date of death shall be marked "Delayed" and shall show on their face the date of the delayed registration.

## Section 15. Reports of Fetal Death

Each fetal death of 350 grams or more, or if weight is unknown, of 20 completed weeks gestation or more, calculated from the date last normal menstrual period began to the date of delivery, which occurs in this State shall be reported within 5 days after delivery to the (Office of Vital Statistics) or as otherwise directed by the State Registrar. All induced terminations of pregnancy shall be reported in the manner prescribed in Section 16 and shall not be reported as fetal deaths.

(a) When a fetus is delivered in an institution, the person in charge of the institution or his or her designated representative shall prepare and file the report.

(b) When a fetus is delivered outside an institution, the physician in attendance at or immediately after delivery shall prepare and file the report.

(c) When a fetal death required to be reported by this section occurs without medical attendance at or immediately after the delivery, or when inquiry is required by the (Post-Mortem Examinations Act), the (medical examiner, coroner) shall investigate the cause of fetal death and shall prepare and file the report within 5 days.

(d) When a fetal death occurs in a moving conveyance and the fetus is first removed from the conveyance in this State or when a fetus is found in this State and the place of fetal death is unknown, the fetal death shall be reported in this State. The place where the fetus was first removed from the conveyance or the fetus was found shall be considered the place of fetal death.

## Section 16. Reports of Induced Termination of Pregnancy

Each induced termination of pregnancy which occurs in this State, regardless of the length of gestation, shall be reported to the (Office of Vital Statistics) within 5 days by the person in charge of the institution in which the induced termination of pregnancy was performed. If the induced termination of pregnancy was performed outside an institution, it shall be reported by the attending physician.

## Section 17. Vital Reports

The reports required under Sections 15 and 16 are statistical reports to be used only for medical and health purposes. A schedule for the disposition of these reports may be provided by regulation.

## Section 18. Authorization for Final Disposition

(a) The funeral director or person acting as such who first assumes custody of a dead body shall, prior to final disposition of the body, obtain authorization for final disposition of the body. The physician or (medical examiner, coroner) when certifying the cause of death also shall authorize final disposition of the body on a form or in a format prescribed by the State Registrar. If the body is to be cremated, additional authorization for cremation must be obtained from the (medical examiner, coroner) on a form or in a format prescribed by the State Registrar.

(b) Prior to final disposition of a fetus, irrespective of the duration of pregnancy, the funeral director, the person in charge of the institution, or other person assuming responsibility for final disposition of the fetus shall obtain from the parents authorization for final disposition. Such authorization shall be on a form or in a format prescribed by the State Registrar.

(c) With the consent of the physician or (medical examiner, coroner) who is to certify the cause of death, a dead body may be moved from the place of death for the purpose of being prepared for final disposition,

(d) An authorization for final disposition issued under the law of another State which accompanies a dead body or fetus brought into this State shall be authority for final disposition of the body or fetus in this State.

(e) No sexton or other person in charge of any place in which interment or other disposition of dead bodies is made shall inter or allow interment or other disposition of a dead body or fetus unless it is accompanied by authorization for final disposition.

(f) Each person in charge of any place for final disposition shall include in the authorization the date of disposition and shall return all authorizations to the funeral director or person acting as such within 10 days after the date of disposition. When there is no person in charge of the place for final disposition, the funeral director or person acting as such shall complete the authorization. At the close of each month the funeral director or person acting as such shall transmit to the State Registrar, in the State where death occurred, all authorizations received during the month.

[(g) Authorization for disinterment and reinterment shall be required prior to disinterment of a dead body or fetus. Such authorization shall be issued by the State Registrar to a licensed funeral director or person acting as such, upon proper application. ]

## Section 19. Marriage Registration

(a) A record of each marriage performed in this State shall be filed with the (Office of Vital Statistics) and shall be registered if it has been completed and filed in accordance with this section and regulations adopted by the State Agency.

(b) The (official) who issues the marriage license shall prepare the record in the form prescribed or furnished by the State Registrar upon the basis of information obtained from (one of) the parties to be married.

9

(c) Each person who performs a marriage shall certify the fact of marriage and return the record to the (official) who issued the license within ( ) days after the ceremony. (This record shall be signed by the witnesses to the ceremony.) (A signed copy shall be given to the parties.)

(d) Every (official) issuing marriage licenses shall complete and forward to the (Office of Vital Statistics) on or before the ( ) day of each calendar month the records of marriages returned to such official during the preceding calendar month.

(e) A marriage record not filed within the time prescribed by statute may be registered in accordance with regulations adopted by the State Agency.

[(f) Provision for a recording fee may be added here if desired.]


## Section 20. (Divorce, Dissolution of Marriage, or Annulment) Registration

(a) A record of each (divorce, dissolution of marriage, or annulment) (decreed, ordered) by any court in this State shall be filed by the (clerk of court) with the (Office of Vital Statistics) and shall be registered if it has been completed and filed in accordance with this section. The record shall be prepared by the petitioner or his or her legal representative in the form prescribed or furnished by the State Registrar and shall be presented to the (clerk of court) with the petition. In all cases the completed record shall be prerequisite to the entry of the (decree, order).

(b) The (clerk of court) shall complete and forward to the (Office of Vital Statistics) on or before the ( ) day of each calendar month the records of each (divorce, dissolution of marriage, or annulment) (decree, order) entered during the preceding calendar month.

[(c) Provision for a recording fee may be added here if desired.]

[(d) Provision for adoption of regulations by the State Agency may be added here if desired.]


## Section 21. Amendment of Vital Records

(a) A certificate or report registered under this Act may be amended only in accordance with this Act and regulations adopted by the State Agency to protect the integrity and accuracy of vital records.

(b) A certificate or report that is amended under this section shall indicate that it has been amended, except as otherwise provided in this section or by regulation. A record shall be maintained which identifies the evidence upon which the amendment was based, the date of the amendment, and the identity of the person making the amendment. The State Agency shall prescribe by regulation the conditions under which additions or minor corrections may be made to certificates or records within one year of the event without the certificate or record indicating that it has been amended.

(c) Upon receipt of a certified copy of an order of (a court of competent jurisdiction) changing the name of a person born in this State and upon request of such person or his or her parents, guardian, or legal representative, the State Registrar shall amend the certificate of birth to show the new name.

(d) Upon receipt of a certified copy of an order of (a court of competent jurisdiction) indicating the sex of an individual born in this State has been changed by surgical procedure and whether such individual's name has been changed, the certificate of birth of such individual shall be amended as prescribed by regulation.

(e) When an applicant does not submit the minimum documentation required in the regulations for amending a vital record or when the State Registrar has cause to question the validity or adequacy of the applicant's sworn statements or the documentary evidence, and if the deficiencies are not corrected, the State Registrar shall not amend the vital record and shall advise the applicant of the reason for this action and shall further advise the applicant of the right of appeal to (a court of competent jurisdiction).

(f) When a certificate or report is amended under this section by the State Registrar, the State Registrar shall report the amendment to any other custodian of the vital record and their record shall be amended accordingly.

When an amendment is made to a certificate of marriage or (divorce, dissolution of marriage, or annulment) by the local official issuing the marriage license or the court which entered the decree of (divorce, dissolution of marriage, or annulment), copies of such amendment shall be forwarded to the State Registrar.

10

## Section 22. Preservation of Vital Records

To preserve vital records, the State Registrar is authorized to prepare typewritten, photographic, electronic, or other reproductions of certificates or reports in the (Office of Vital Statistics). Such reproductions when verified and approved by the State Registrar shall be accepted as the original records, and the documents from which permanent reproductions have been made may be disposed of as provided by regulation.

## Section 23. Disclosure of Information from Vital Records or Vital Reports

In accordance with Section 24 of this Act and the regulations adopted pursuant thereto:

(a)  To protect the integrity of vital records or vital reports, to ensure their proper use, and to ensure the efficient and proper administration of the system of vital statistics, it shall be unlawful for any person to permit inspection of, or to disclose information contained in vital records or in vital reports or to copy or issue a copy of all or part of any such record or report unless authorized by this Act and by regulation or by order of (a court of competent jurisdiction). Regulations adopted under this section shall' provide for adequate standards of security and confidentiality of vital records.

(b)  Disclosure of information which may identify any person [or institution] named in any vital record or report may be made only pursuant to regulations which require submission of written requests for information by researchers and execution of research agreements that protect the confidentiality of the information provided. Such agreements shall prohibit the release by the researcher of any information that might identify any person [or institution] other than releases that may be provided for in- the agreement. For purposes of this Act, research means a systematic investigation designed primarily to develop or contribute to generalizable knowledge.

Nothing in this Act prohibits the release of information or data which would not identify any person [or institution] named in a vital record or report.

(c)  Appeals from decisions of custodians of vital records, as designated under authority of Section 5(b), who refuse to disclose information from records as prescribed by this section and regulations issued hereunder, shall be made to the State Registrar whose decisions shall be binding upon such custodians.

(d)  When 100 years have elapsed after the date of birth, or 50 years have elapsed after the date of death, marriage, or (divorce, dissolution of marriage, or annulment), the records of these events in the custody of the State Registrar shall become available to the public without restriction, in accordance with regulations which shall provide for the continued safekeeping of the records.

(e)  The Federal agency responsible for national vital statistics may be furnished such copies of records, reports, or data from the system of vital statistics as it may require for national statistics. To furnish such records, reports, or data the State (Agency, Registrar) shall enter into an agreement with the Federal agency indicating the statistical or research purposes for which the records, reports, or data may be used. Such agreement will also set forth the support to be provided by the Federal agency for the collection, processing, and transmission of such records, reports, or data. Upon written request of the Federal agency, the State (Agency, Registrar) may approve, in writing, additional statistical or research uses of the records, reports, or data supplied under the agreement.

(f)  Federal, State, and local governmental agencies may, upon request, be furnished copies of records or data from the system of vital statistics, provided that such copies or data shall be used solely in the conduct of their official duties.

(g)  The State Registrar may, by agreement, transmit copies of records and other reports required by this Act to offices of vital statistics outside this State when such records or other reports relate to residents of those jurisdictions or persons born in those jurisdictions. The agreement shall specify the statistical and administrative purposes for which the records may be used and the agreement shall further provide instructions for the proper retention and disposition of such copies. Copies received by the (Office of Vital Statistics) from offices of vital statistics in other States shall be handled in the same manner as prescribed in this section.

## Section 24. Copies from the System of Vital Statistics

In accordance with Section 23 of this Act and the regulations adopted pursuant thereto:

(a)  The State Registrar [and other custodian(s) of vital records authorized by the State Registrar to issue certified copies] shall, upon receipt of an application, issue a certified copy of a vital record in his or her custody or a part thereof to the registrant, his or her spouse, children, parents, or guardian, or their respective authorized representative. Others may be authorized to obtain certified copies when they demonstrate that the record is needed

11

for the determination or protection of his or her personal or property right. The State Agency may adopt regulations to further define those who may obtain copies of vital records filed under this Act.

(b) All forms and procedures used in the issuance of certified copies of vital records in the State shall be uniform and provided or approved by the State Registrar. All certified copies issued shall have security features that deter the document from being altered, counterfeited, duplicated, or simulated without ready detection.

(c) Each copy or abstract issued shall show the date of registration and copies or abstracts issued from records marked "Amended" shall be similarly marked and show the effective date. Copies issued from records marked "Delayed" shall be similarly marked and shall include the date of registration and a description of the evidence used to establish the delayed certificate. Any copy issued of a "Certificate of Foreign Birth" shall indicate this fact and show the actual place of birth and the fact that the certificate is not proof of United States citizenship for the adoptive child.

(d) A certified copy or other copy of a death certificate containing the cause of death information shall not be issued except as follows:

(1) Upon specific request of the spouse, children, parents, or other next of kin of the decedent or their respective authorized representatives; or

(2) when a documented need for the cause of death to establish a legal right or claim has been demonstrated; or

(3) when the request for the copy is made by or on behalf of an organization that provides benefits to the decedent's survivors or beneficiaries; or

(4) upon specific request by local, State, or Federal agencies for research or administrative purposes approved by the State (Agency, Registrar); or

(5) when needed for research activities approved by the State (Agency, Registrar); or

(6) upon receipt of an order from a court of competent jurisdiction ordering such release.

(e) A certified copy of a vital record or any part thereof, issued in accordance with subsections (a), (b), and (c) shall be considered for all purposes the same as the original and shall be prima facie evidence of the facts stated therein, provided that the evidentiary value of a certificate or record filed more than one year after the event, or a record which has been amended, or a certificate of foreign birth, shall be determined by the judicial or administrative body or official before whom the certificate is offered as evidence.

(f) Nothing in this section shall be construed to permit disclosure of information contained in the "Information for Medical and Health Use Only" section of the birth certificate or the "Information for Statistical Purposes Only" section of the certificate of marriage or certificate of (divorce, dissolution of marriage, or annulment) unless specifically authorized by the State (Agency, Registrar) for statistical or research purposes. Such data shall not be subject to subpoena or court order and shall not be admissible before any court, tribunal, or judicial body.

(g) When the State Registrar receives information that a certificate may have been registered through fraud or misrepresentation, he or she shall withhold issuance of any copy of that certificate pending an administrative hearing to determine whether fraud or misrepresentation has occurred. The State Registrar shall offer the registrant or the registrant's authorized representative notice and opportunity to be heard. If upon conclusion of the hearing no fraud or misrepresentation is found, copies may be issued. If upon conclusion of the hearing, fraud or misrepresentation is found, the State Registrar shall remove the certificate from the file. The certificate and evidence shall be retained but shall not be subject to inspection or copying except upon order of (a court of competent jurisdiction) or by the State Registrar for purposes of administering the vital statistics program.

(h) No person shall prepare or issue any certificate which purports to be an original, certified copy, or copy of a vital record except as authorized in this Act or regulations adopted hereunder.


## Section 25. Fees

(a) The State Agency shall prescribe by regulation the fee to be paid for the following services:

(1) Certified copies of certificates or records, or for a search of the files or records when no copy is made, or for copies or information provided for research, statistical, or administrative purposes;

(2) the replacement of a birth certificate subsequent to adoption, legitimation, paternity determination or acknowledgment, or court order;

12

(3)   the filing of a delayed registration of a vital event;

(4)   the amendment of a vital record, [provided that no fee shall be charged for an amendment completed within one year after the filing of the record]; and

(5)   other services as determined by regulation.

[(b)   In addition to the fee prescribed by regulation for a certified copy of a certificate or record, the State Registrar shall collect an additional fee of $ _____ for each copy requested to be deposited in the State Vital Statistics Improvement Fund. Funds collected pursuant to this section shall be used to modernize and automate the system of vital statistics in this State. Such funds shall not be used to supplant existing funding which is necessary for the daily operation of the system of vital statistics.]

(c)   Fees collected under this section by the State Registrar shall be deposited in the (general fund, special vital statistics fund) of this State, according to the procedures established by (the laws governing collection, the State Treasurer). [Fees for special programs, research, and the State Vital Statistics Improvement Fund shall be retained in a nonlapsing fund for the improvement of the system of vital statistics.]

## Section 26. Persons Required to Keep Records

(a)   Every person in charge of an institution shall keep a record of personal data concerning each person admitted or confined to such institution. This record shall include such information as required for the certificates of birth and death and the reports of fetal death and induced termination of pregnancy required by this Act. The record shall be made at the time of admission from information provided by the person being admitted or confined, but when it cannot be so obtained, the information shall be obtained from relatives or other persons acquainted with the facts. The name and address of the person providing the information shall be a part of the record.

(b)   When a dead body or fetus is released or disposed of by an institution, the person in charge of the institution shall keep a record showing the name of the decedent, date of death, name and address of the person to whom the body or fetus is released, and the date of removal from the institution. If final disposition is made by the institution, the date, place, and manner of disposition shall also be recorded.

(c)   A funeral director, embalmer, sexton, or other person who removes from the place of death, transports, or makes final disposition of a dead body or fetus, in addition to filing any certificate or other report required by this Act or regulations promulgated hereunder, shall keep a record which shall identify the body, and such information pertaining to his or her receipt, removal, delivery, burial, or cremation of such body as may be required by regulations adopted by the State Agency.

(d)   Records maintained under this section shall be retained for a period of not less than ( ) years and shall be made available for inspection by the State Registrar or his or her representative upon demand.

## Section 27. Duties to Furnish Information

(a)   Any person having knowledge of the facts shall furnish such information as he or she may possess regarding any birth, death, fetal death, induced termination of pregnancy, marriage, or (divorce, dissolution of marriage, or annulment), upon demand of the State Registrar.

(b)   Any person or institution that in good faith provides information required by this Act or regulations shall not be subject to any action for damages.

[(c)   Not later than the tenth day of the month following the month of occurrence, the administrator of each institution shall send to the (Office of Vital Statistics) a list showing all births and deaths occurring in that institution during the preceding month. Such lists shall be on forms provided by the State Registrar.]

[(d)   Not later than the tenth day of the month following the month of occurrence, each funeral director shall send to the (Office of Vital Statistics) a list showing all dead bodies embalmed or otherwise prepared for final disposition or dead bodies finally disposed of by the funeral director during the preceding month. Such list shall be made on forms provided by the State Registrar.]

## Section 28. Matching of Birth and Death Certificates

To protect the integrity of vital records and to prevent the fraudulent use of birth certificates of deceased persons, the State Registrar is hereby authorized to match birth and death certificates, in accordance with regulations which require

13

proof beyond a reasonable doubt the fact of death, and to post the facts of death to the appropriate birth certificate. Copies issued from birth certificates marked deceased shall be similarly marked.

## Section 29. Penalties

(a) A fine of not more than $10,000 or imprisonment of not more than 5 years, or both, shall be imposed on:

    (1) Any person who willfully and knowingly makes any false statement in a certificate, record, or report required by this Act, or in an application for an amendment thereof, or in an application for a certified copy of a vital record, or who willfully and knowingly supplies false information intending that such information be used in the preparation of any such report, record, or certificate, or amendment thereof; or

    (2) any person who, without lawful authority and with the intent to deceive, makes, counterfeits, alters, amends, or mutilates any certificate, record, or report required by this Act or a certified copy of such certificate, record, or report; or

    (3) any person who willfully and knowingly obtains, possesses, uses, sells, furnishes, or attempts to obtain, possess, use, sell, or furnish to another, for any purpose of deception, any certificate, record, or report required by this Act or certified copy thereof so made, counterfeited, altered, amended, or mutilated, or which is false in whole or in part, or which relates to the birth of another person, whether living or deceased; or

    (4) any employee of the (Office of Vital Statistics or any office designated under Section 5(b)) who willfully and knowingly furnishes or processes a certificate of birth, or certified copy of a certificate of birth, with the knowledge or intention that it be used for the purposes of deception; or

    (5) any person who without lawful authority possesses any certificate, record, or report, required by this Act or a copy or certified copy of such certificate, record, or report knowing same to have been stolen or otherwise unlawfully obtained.

(b) A fine of not more than $1,000 or imprisonment of not more than one year, or both, shall be imposed on:

    (1) Any person who willfully and knowingly refuses to provide information required by this Act or regulations adopted hereunder; or

    (2) any person who willfully and knowingly transports or accepts for transportation, interment, or other disposition a dead body without an accompanying permit as provided in this Act; or

    (3) any person who willfully and knowingly neglects or violates any of the provisions of this Act or refuses to perform any of the duties imposed upon him or her by this Act.

## Section 30. Applicability

The provisions of this Act also apply to all certificates of birth, death, marriage, and (divorce, dissolution of marriage, or annulment) and reports of fetal death and induced termination of pregnancy previously received by the (Office of Vital Statistics) and in the custody of the State Registrar or any other (custodian of vital records).

## Section 31. Severability

If any provision of this Act (or the application thereof to any person or circumstances) is held invalid, such invalidity shall not affect other provisions or applications of the Act which can be given effect without the invalid provision or application, and to this end the provisions of the Act are declared to be severable.

## Section 32. Uniformity of Interpretation

This Act shall be so construed as to effectuate its general purpose to make uniform the laws of those States which enact it.

## Section 33. Short Title

This Act may be cited as the "Vital Statistics Act."

## Section 34. Repeal

(Section _____ and Section _____ , _____ Laws of _____ are hereby repealed; and) all other laws or parts of laws which are inconsistent with the provisions of this Act are hereby repealed.

## Section 35. Time of Taking Effect

This Act shall take effect . . . .

# MODEL STATE VITAL STATISTICS REGULATIONS

This set of Model State Vital Statistics Regulations has been developed to supplement the Model State Vital Statistics Act of 1992 and to serve as a more detailed guide to State and local registration officials who administer the vital statistics system of the United States.

NOTE: Where the need for variation was apparent, parentheses, "( )," have been placed around the word or phrase. In cases where recommendations were considered optional, brackets, "[ ]," have been placed around the word or phrase.

17

# Contents

l. Duties of State registrar . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

   (authorization: section 5 of model act)

2. Birth registration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

   (authorization: section 7 of model act)

3. Infants of unknown parentage; foundling registration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

   (authorization: section 8 of model act)

4. Delayed registration of birth. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

   (authorization: section 9 of model act)

5. Certificates of birth following adoption, legitimation, paternity determination, and paternity acknowledgment . . .   23

   (authorization: section 12 of model act)

6. Death registration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

   (authorization: section 13 of model act)

7. Delayed registration of death. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

   (authorization: section 14 of model act)

8. Disposition of reports of fetal death and induced termination of pregnancy. . . . . . . . . . . . . . . . . . . . . . . . . . . 25

   (authorization: section 17 of model act)

9. Authorization for final disposition. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

   (authorization: section 18 of model act)

10. Delayed registration of marriage.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

   (authorization: section 19 of model act)

ll. Amendment of vital records . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

   (authorization: section 21 of model act)

12. Record preservation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

   (authorization: section 22 of model act)

13. Disclosure of records  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

   (authorization: sections 23 and 24 of model act)

14. Copies of data from vital records . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

   (authorization: section 24 of model act)

l5. Fees  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

   (authorization: section 25 of model act)

16. Persons required to keep records . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

   (authorization: section 26 of model act)

17. Matching of birth and death certificates . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

   (authorization: section 28 of model act)

19

# Model State Vital Statistics Regulations

## Regulation 1. Duties of State Registrar
(Authorization: Section 5 of the Model Act)

## Regulation 1 .1 Media, (Forms, Certificates, Electronic Data Files)

All forms, certificates, records, electronic data files, and reports used in the system of vital statistics are the property of the (State public health administrative agency) -hereinafter referred to as "State Agency"-and shall be surrendered to the State Registrar of Vital Statistics- hereinafter referred to as "State Registrar" -upon demand. The forms prescribed and distributed by the State Registrar for reporting vital statistics shall be used only for official purposes. Only those forms furnished or approved by the State Registrar shall be used in the reporting of vital statistics or in making copies thereof. Electronic data records will be accepted only when standards set by the State Registrar are met.

## Regulation 1.2 Requirements for Preparation of Certificates

All forms, certificates, and reports relating to vital statistics must either be typewritten or printed legibly in black, unfading ink, or stored on electronic media approved by the State Registrar. All signatures required shall be entered in black, unfading ink or stored electronically. Unless otherwise directed by the State Registrar, no certificate shall be complete and correct and acceptable for registration:

    (a)   That does not contain the certifier's name typed or printed legibly [under his or her signature];

    (b)   that does not supply all items of information called for thereon or satisfactorily account for their omission;

    (c)   that contains alterations or erasures;

    (d)   that does not contain handwritten signatures as required;

    (e)   that is marked "copy" or "duplicate";

    (f)   that is a carbon copy;

    (g)   that is prepared on an improper form;

    (h)   that contains improper or inconsistent data;

    (i)   that contains an indefinite cause of death which denotes only symptoms of disease or conditions resulting from disease; or

    (j)   that is not prepared in conformity with regulations or instructions issued by the State Registrar,

## Regulation 1.3 Designation of Local Registration Offices

The State Registrar shall determine whether offices other than the (Office of Vital Statistics) are needed in this State to aid in the efficient administration of the system of vital statistics. Such determination shall be based on an evaluation of the most efficient method to meet the needs of the people of this State with respect to the establishment and operation of the system of vital statistics.

If the State Registrar determines that additional offices are necessary, such offices shall be designated with the approval of the State Agency. The duties and responsibilities may be assigned to currently existing offices or special branch offices of the (Office of Vital Statistics) may be established in those areas where they are deemed necessary, or a combination of existing offices and branch offices may be used. In all cases where existing offices are utilized, the employees of such offices shall be subject to the control of the State Registrar when they are performing functions relating to the system of vital statistics.

The State Registrar shall appoint a local registrar for each local registration office so designated. The local registrar shall, with the approval of the State Registrar, appoint one or more deputy local registrars of vital statistics. The deputy local registrar shall perform the duties of the local registrar in the absence or incapacity of such local registrar and shall perform such other duties as may be prescribed. The State Registrar may remove a local registrar or deputy local registrar for cause.

The State Registrar shall delegate such duties and responsibilities to such offices as he or she deems necessary to ensure the efficient operation of the system of vital statistics. These may include any or all of the following:

20

(a)    The receipt and processing of records of birth and death and reports of fetal death occurring within their registration district. This would include the receipt of these records and reports from the person responsible for their filing, checking them for accuracy and completeness, and forwarding them to the (Office of Vital Statistics) at intervals prescribed by the State Registrar.

(b)    Maintenance of all birth and death records received for filing. These records are considered to be in the custody of the State Registrar and are subject to the same requirements regarding disclosure as are records in the possession of the State Registrar. Records maintained by a local registration office shall be surrendered to the State Registrar upon demand.

(c)    Issuance of certified copies of birth and/or death records. The records from which the certified copies are issued shall be those maintained in the local registration office or shall be provided by the (Office of Vital Statistics). All forms and procedures used to issue the copies shall be provided or approved by the State Registrar. If it is deemed appropriate and feasible, any such office may be provided access to all birth and/or death records filed in this State.

(d)    Acting as the agent of the State Registrar in their designated area and providing assistance to physicians, hospitals, funeral directors, and others in matters related to the system of vital statistics.

(e)    Performing such other duties as may be prescribed by the State Registrar.

The State Registrar, with the approval of the State Agency, shall determine the responsibilities and duties of each office independently.

## Regulation 2. Birth Registration
## Out-of-Institution Birth-Documentary Evidence
(Authorization: Section 7 of the Model Act)

When a birth occurs in this State outside of a hospital or institution, and the birth certificate is filed before the first birthday, additional evidence in support of the facts of birth may be required.

A certificate for the birth shall be completed and filed upon presentation of the following evidence by the individual responsible for filing the certificate:

(a)    Evidence of pregnancy, such as but not limited to:

    (1)  Prenatal record, or

    (2)  a statement from a physician or other health care provider qualified to determine pregnancy, or

    (3)  a home visit by a public health nurse or other health care provider, or

    (4)  other evidence acceptable to the State Registrar.

(b)    Evidence that the infant was born alive, such as but not limited to:

    (1)  A statement from the physician or other health care provider who saw or examined the infant, or

    (2)  an observation of the infant during a home visit by a public health nurse, or

    (3)  other evidence acceptable to the State Registrar.

(c)    Evidence of the mother's presence in this State on the date of the birth, such as but not limited to:

    (1)  If the birth occurred in the mother's residence,

        (a)  a driver's license, or a State-issued identification card, which includes the mother's current residence on the face of the license/card, or

        (b)  a rent receipt that includes the mother's name and address, or

        (c)  any type of utility, telephone, or other bill that includes the mother's name and address, or

        (d)  other evidence acceptable to the State Registrar.

    (2)  If the birth occurred outside of the mother's place of residence, and the mother is a resident of this State, such evidence shall consist of:

        (a)  An affidavit from the tenant of the premises where the birth occurred, that the mother was present on those premises at the time of the birth, and

21

(b)   evidence of the affiant's residence similar to that required in paragraph (c)(l) of this regulation, and

(c)   evidence of the mother's residence in the State similar to that required in paragraph (c)(l) of this regulation, or

(4)   other evidence acceptable to the State Registrar.

(3)   If the mother is not a resident of this State, such evidence must consist of clear and convincing evidence acceptable to the State Registrar.

## Regulation 3. Infants of Unknown Parentage; Foundling Registration

(Authorization: Section 8 of the Model Act)

The report for an infant of unknown parentage shall be registered on a current certificate of live birth and shall:

(a)   Have "foundling" plainly marked in the top margin of the certificate;

(b)   show the required facts as determined by approximation and have parentage data left blank; and

(c)   show the name and title of the custodian in lieu of the attendant.

When a report has been placed in a special file as provided by (Section 8(d) of the Model Act), the State Registrar may inspect such information for purposes of properly administering the vital statistics program.

## Regulation 4. Delayed Registration of Birth

(Authorization: Section 9 of the Model Act)

### Regulation 4.1 Delayed Certificate of Birth Form

All certificates registered one year or more after the date of birth are to be registered on a delayed certificate of birth form prescribed and furnished by the State Registrar.

### Regulation 4.2 Who May Request the Registration of a Delayed Certificate of Birth

Any person born in this State whose birth is not recorded in this State, his or her parent or guardian, or any other person age 18 years or over acting for the registrant and having personal knowledge. of the facts of birth may request the registration of a delayed certificate of birth, subject to these regulations and instructions issued by the State Registrar.

Each application for a delayed certificate of birth shall be signed and sworn to before an official authorized to administer oaths by the person whose birth is to be registered if such person is age 18 years or over and is competent to sign and swear to the accuracy of the facts stated therein; otherwise the application shall be signed and sworn to by one of the parents of the registrant, his or her guardian, or any other person age 18 years or over having personal knowledge of the facts of birth.

### Regulation 4.3 Facts to be Established for a Delayed Registration of Birth

The minimum facts which must be established by documentary evidence shall be the following:

(a)   The full name of the person at the time of birth;

(b)   the date of birth and State of birth;

(c)   the full maiden name of the mother; and

(d)   the full name of the father; except that if the mother was not married either at the time of conception or birth the name of the father shall not be entered on the delayed certificate except as provided in Regulation 4.4.

### Regulation 4.4 Delayed Registration Following a Legal Change of Status

When evidence is presented reflecting a legal change of status by adoption, legitimation, paternity determination, or acknowledgment of paternity, a new delayed certificate may be established to reflect such change.

The existing certificate and the evidence upon which the new certificate was based shall be placed in a special file. Such file shall not be subject to inspection except upon order of (a court of competent jurisdiction) or by the State Registrar for purposes of properly administering the vital statistics program.

22

## Regulation 4.5 Documentary Evidence - Requirements

To be acceptable for filing, the name of the registrant at the time of the birth and the date and place of birth entered on a delayed certificate of birth shall be supported by at least:

    (a)   A hospital record created at the time of birth, or two pieces of acceptable documentary evidence, if the record is filed within 10 years after the date of birth; or

    (b)   three pieces of acceptable documentary evidence, if the record is filed 10 years or more after the date of birth.

Facts of parentage shall be supported by at least one document.

## Regulation 4.6 Documentary Evidence - Acceptability

The State Registrar shall determine the acceptability of all documentary evidence submitted.

    (a)   Documents presented, including but not limited to census, hospital, church, and school records, must be from independent sources and shall be in the form of the original record or a duly certified copy thereof or a signed statement from the custodian of the record or document. Documents must have been established at least one year prior to the date of application. Affidavits of personal knowledge are not acceptable as evidence to establish a delayed certificate of birth.

    (b)   All documents submitted in evidence:

        (1)   for persons age 10 years or over, must have been established at least 10 years prior to the date of application, or within 3 years of the date of birth; and

        (2)   for persons under 10 years of age, must be dated at least one year prior to the date of application or within the first year of life.

## Regulation 4.7 Abstraction of Documentary Evidence

The State Registrar, or his or her designated representative, shall abstract on the delayed certificate of birth a description of each document submitted to support the facts shown on the delayed birth certificate. This description shall include:

    (a)   The title or description of the document;

    (b)   the name and address of the custodian;

    (c)   the date of the original filing of the document being abstracted; and

    (d)   all birth facts required by Regulation 4.3 contained in each document accepted as evidence.

All documents submitted in support of the delayed birth registration shall be returned to the applicant after review.

## Regulation 4.8 Verification by the State Registrar

The State Registrar, or his or her designated representative shall verify:

    (a)   That no prior birth certificate is on file for the person whose birth is to be recorded;

    (b)   that he or she has reviewed the evidence submitted to establish the facts of birth; and

    (c)   that the abstract of the evidence appearing on the delayed certificate of birth accurately reflects the nature and content of the document.

## Regulation 4.9 Dismissal After 1 Year

Applications for delayed certificates which have not been completed within 1 year from the date of application may be dismissed at the discretion of the State Registrar. Upon dismissal, the State Registrar shall so advise the applicant and all documents submitted in support of such registration shall be returned to the applicant.

## Regulation 5. Certificates of Birth Following Adoption, Legitimation, Paternity Determination, and Paternity Acknowledgment

(Authorization: Section 12 of the Model Act)

23

## Regulation 5.1 Legitimation

If the natura1 parents marry after the birth of a child, a new certificate of birth shall be prepared by the State Registrar for a child born in this State upon receipt of a sworn acknowledgment of paternity signed by the natural parents of said child together with a certified copy of the parents' marriage record. However, if another man is shown as the father of the child on the original certificate, a new certificate may be prepared only when a determination of paternity is made by (a court of competent jurisdiction), or following adoption.

## Regulation 5.2 Court Determination of Paternity

A new certificate of birth shall be prepared by the State Registrar for a child born in this State upon receipt of a certified copy of a court determination of paternity, together with a request from the natural mother or person having legal custody of said child that such new certificate be prepared. If the surname of the child is not decreed by the court, the request for the new certificate shall specify the surname to be placed on the certificate.

## Regulation 5.3 Acknowledgment of Paternity

(a)'   A new certificate of birth shall be prepared by the State Registrar for a child born out of wedlock in this State upon receipt of a sworn acknowledgment of paternity signed by both parents and a written request by both parents that the child's surname be changed on the certificate. However, if another man is shown as the father of the child on the original certificate, a new certificate may be prepared only when a determination of paternity is made by (a court of competent jurisdiction), or following adoption.

(b)   In lieu of preparing a new birth certificate under the provisions of Regulations 5.1, 5.2, and 5.3, the original certificate may be altered provided that the fact of alteration is not obvious on the face of the certificate.

## Regulation 5.4 New Certificate

The new certificate of birth prepared after adoption, legitimation, court determination of paternity, or acknowledgment of paternity shall be on the form in use at the time of its preparation and shall include the following items and such other information necessary to complete the certificate:

(a)   The name of the child;

(b)   the date and city and/or county of birth as transcribed from the original certificate;

(c)   the names and personal particulars of the adoptive parents or of the natural parents, whichever is appropriate;

(d)   the name of the attendant, printed or typed;

(e)   the birth number assigned to the original birth certificate; and

(f)   the original filing date.

The information necessary to locate the existing certificate and to complete the new certificate shall be submitted to the State Registrar on forms prescribed or approved by him or her.

## Regulation 5.5 Existing Certificate to Be Placed in a Special File

After preparation of the new certificate, the existing certificate and the evidence upon which the new certificate was based are to be placed in a special file. Such file shall not be subject to inspection except upon order of (a court of competent jurisdiction) or by the State Registrar for purposes of properly administering the vital statistics program or as otherwise provided by State law.

## Regulation 6. Death Registration

(Authorization: Section 13 of the Model Act)

## Regulation 6.1 Acceptance of Incomplete Death Certificate

If all the information necessary to complete a death certificate is not available within the time prescribed for filing of the certificate, the funeral director or person acting as such shall file the certificate with all information that is available and satisfactorily account for all the items that are omitted. In all cases the medical certification must be provided by the

24

person responsible for such certification. If the cause of death is unknown or pending investigation, the cause of death shall be shown as such on the certificate. The person providing the medical certification of cause of death also shall authorize the final disposition of the body.

A supplemental report providing the personal information omitted from the original certificate shall be filed by the funeral director or person acting as such with the State Registrar as soon as possible, but in all cases within 30 days of the date the death occurred.

A supplemental report providing the medical information omitted from the original certificate shall be filed by the certifier with the State Registrar within 30 days. If extended time is needed to get information, the State Registrar shall be notified. The State Registrar may provide for an extension not to exceed 60 days.

The supplemental report(s) shall be made a part of the existing death certificate. Such report(s) shall be considered an amendment, and the death certificate shall be marked "Amended."


## Regulation 6.2 Hospital or Institution May Assist in Preparation of Certificate

When a death occurs in a hospital or other institution and the death is not under the jurisdiction of the (medical examiner, coroner), the person in charge of such institution, or his or her designated representative, may initiate the preparation of the death certificate as follows:

    (a)  (1)   Place the full name of the decedent and the date, time, and place of death on the death certificate and obtain from the attending physician the medical certification of cause of death; or

          (2)   place the full name of the decedent and the date, time, and place of death on the death certificate and obtain the pronouncing physician's attestation.

    (b)   Present the partially completed death certificate to the funeral director or person acting as such.


## Regulation 7. Delayed Registration of Death
(Authorization: Section 14 of the Model Act)

The registration of a death after the time prescribed by statute and regulations shall be registered on the current certificate of death form in the manner prescribed below:

    (a)   If the attending physician or (medical examiner, coroner) at the time of death and the attending funeral director or person who acted as such are available to complete the certificate of death, it may be completed without additional evidence and filed with the State Registrar. For those certificates filed one year or more after the date of death, the physician or (medical examiner, coroner) and the funeral director or person who acted as such must state in accompanying affidavits that the information on the certificate is based on records kept in their files.

    (b)   In the absence of the attending physician or (medical examiner, coroner) and the funeral director or person who acted as such, the certificate may be filed by the next of kin of the decedent and shall be accompanied by two documents which identify the decedent and his or her date and place of death.

In all cases, the State Registrar may require additional documentary evidence to prove the facts of death.

A summary statement of the evidence submitted in support of the delayed registration shall be endorsed on the certificate.


## Regulation 8. Disposition of Reports of Fetal Death and Induced Termination of Pregnancy
(Authorization: Section 17 of the Model Act)

Reports of fetal death and induced termination of pregnancy are statistical reports only. The State Registrar is authorized to dispose of such reports when all statistical processing of the reports has been accomplished. However, the State Registrar may establish a file of such reports so they will be available for future statistical and research projects Such file shall be retained for as long as the State Registrar deems necessary and it shall then be destroyed. The file may be maintained by photographic, electronic, or other means as determined by the State Registrar, in which case the original report from which the photographic, electronic, or other file was made shall be destroyed.

The provisions of this regulation shall also apply to all records or reports of fetal death or induced termination of pregnancy filed prior to the adoption of this regulation.

## Regulation 9. Authorization for Final Disposition
(Authorization: Section 18 of the Model Act)

## Regulation 9.1 Removal of Body

Before removing a dead body or fetus from the place of death, the funeral director or person acting as such shall:

(a) Obtain assurance from the attending physician that death is from natural causes and that the physician will assume responsibility for certifying to the cause of death or fetal death and receive permission to remove the body from the place of death; or

(b) notify the (medical examiner, coroner) if the case comes within his or her jurisdiction and obtain authorization to remove the body.

## [Regulation 9.2 Authorization for Disinterment and Reinterment

An authorization for disinterment and reinterment of a dead body shall be issued by the State Registrar upon receipt of a written application signed by the next of kin and the person who is in charge of the disinterment or upon receipt of an order of (a court of competent jurisdiction) directing such disinterment.

Upon receipt of a court order or signed permission of the next of kin, the State Registrar may issue one authorization to permit disinterment and reinterment of all remains in a mass disinterment provided that, insofar as possible, the remains of each body be identified and the place of disinterment and reinterment specified. The authorization shall be permission for disinterment, transportation, and reinterment.

A dead body deposited in a receiving vault shall not be considered a disinterment when removed from the vault for final disposition.]

## Regulation 10. Delayed Registration of Marriage
(Authorization: Section 19 of the Model Act)

The registration of a marriage after the time prescribed by statute shall be made on the current certificate of marriage form in the manner prescribed below:

(a) The certificate must be filed with the (appropriate official) where the marriage license was originally issued.

(b) To be acceptable for registration by the State Registrar the delayed certificate of marriage must be supported by:

(1) A copy of the license or of the application for license if the license was granted, and

(2) a signed statement from the officiant or the custodian of the records of the officiant and from one witness to the wedding ceremony indicating that a marriage ceremony was performed and the date and place of the marriage.

(c) In all cases, the State Registrar may require additional documentary evidence to prove the facts of marriage.

(d) When an applicant does not submit the minimum documentation required for delayed registration or when the State Registrar has cause to question the validity or adequacy of the statements or the documentary evidence, and if the deficiencies are not corrected, the State Registrar shall not register the delayed certificate of marriage and shall advise the applicant of the reasons for this action, and shall further advise the applicant of his or her right to seek an order from (a court of competent jurisdiction).

## Regulation 11. Amendment of Vital Records
(Authorization: Section 21 of the Model Act)

26

## Regulation 11 .1 Amendment of Minor Errors on Birth Certificates During the First Year

Amendment of obvious errors, transposition of letters in words of common knowledge, or omissions may be made by the State Registrar within the first year after the date of birth either upon his or her own observation or query or upon request of a person as defined in Regulation 11.3. When such additions or minor amendments are made by the State Registrar, a notation as to the source of the information, together with the date the change was made and the initials of the authorized agent making the change shall be made on the certificate in such a way as not to become a part of any certified copy issued. The certificate shall not be marked "Amended."

## Regulation 11.2 All Other Amendments

Unless otherwise provided in these regulations or in the statute, all other amendments to vital records shall be supported by:

(a) An affidavit setting forth:

(1) Information to identify the certificate;

(2) the incorrect data as listed on the certificate;

(3) the correct data as they should appear; and

(b) One or more items of documentary evidence which support the alleged facts and were established at least 5 years prior to the date of application for amendment or within 7 years of the date of the event.

The State Registrar shall evaluate the evidence submitted in support of any amendment, and when he or she finds reason to doubt its validity or adequacy, the amendment may be rejected and the applicant advised of the reasons for this action.

## Regulation 11.3 Who May Apply

(a) To amend a birth certificate, application may be made by one of the parents if the registrant is under age 18, the guardian, the registrant if he or she is age 18 years or over, or the individual responsible for filing the certificate.

(b) To amend a death certificate, application may be made by the next of kin, the informant listed on the death certificate, or the funeral director or person acting as such who submitted the death certificate. Applications to amend the medical certification of cause of death shall be made only by the physician who provided the medical certification or the (medical examiner, coroner).

(c) Applications for amendment of certificates of marriage shall be made jointly by both parties to the marriage or by the survivor. In the event the marriage to which the application relates was terminated by (divorce, dissolution of marriage, or annulment) on or before the date of application for amendment, the applicant may request amendment only of those items on the certificate of marriage which relate to the applicant.

(d) Applications for amendment of matters contained in certificates of (divorce, dissolution of marriage, or annulment) which are not part of the (decree, court order) may be made by either party to the marriage so terminated. Applications for amendment of matters contained in certificates of (divorce, dissolution of marriage, or annulment) which are part of the (decree, court order) may only be made by the court which ordered the (divorce, dissolution of marriage, or annulment) upon which the report was made.

## Regulation 11.4 Amendment of Registrant's Given Names on Birth Certificates Within the First Year

Until the registrant's first birthday, given names may be amended upon receipt of an affidavit signed by the parent(s) named on the certificate or the guardian, person, or agency having legal custody of the registrant.

After one year from the date of birth the provisions of Regulation 11.2 must be followed to amend a given name if the name was entered incorrectly on the birth certificate. A legal change of name order must be submitted from (a court of competent jurisdiction) to change a given name after one year.

## Regulation 11.5 Addition of Given Names on Birth Certificates

Until the registrant's seventh birthday, given names, for a child whose birth was recorded without given names, may be added to the certificate upon receipt of an affidavit signed by the parent(s) named on the certificate or the guardian, person, or agency having legal custody of the registrant.

After 7 years the provisions of Regulation 1.1.2 must be followed to add a given name.

## Regulation 11.6 Amendment of Cause of Death

The cause of death may be amended only upon receipt of a signed statement or an approved electronic notification from the physician or (medical examiner, coroner) who originally certified the cause of death. In the absence or inability of the physician or with his or her approval, the cause of death may be amended upon receipt of a signed statement or an approved electronic notification from his or her associate physician, or the chief medical officer of the institution in which death occurred, or a (medical examiner, coroner) who assumes jurisdiction of the case provided such individual has access to the medical history of the case. The State Registrar may require documentary evidence to substantiate the requested amendment.

## Regulation 11.7 Amendment of the Same Item More than Once

Once an amendment of an item is made on a vital record, that item shall not be amended again except upon receipt of a court order from (a court of competent jurisdiction).

## Regulation 11.8 Methods of Amending Certificates

Certificates of birth, death, marriage, and (divorce, dissolution of marriage, or annulment) may be amended by the State Registrar in the following manner:

(a)  Completing the item in any case where the item was left blank on the existing certificate.

[(b)  Preparing a new certificate showing the correct information when the State Registrar deems that the nature of the amendment so requires.

The new certificate shall be prepared on the form used for registering current events at the time of amendment. Except as provided elsewhere in these regulations, the item number of the entry that was amended shall be identified on the new certificate.

In all cases, the new certificate shall show the date the amendment was made and be given the same State file number as the existing certificate. Signatures, if any, appearing on the existing certificate shall be typed on the new certificate.]

[(c)  Drawing a single line through the item to be amended and inserting the correct data immediately above or to the side thereof. The line drawn through the original entry shall not obliterate such entry.]

[(d)  Completing a special form which shall include the incorrect information as it appears on the original certificate, the correct information as it should appear, an abstract of the documentation used to support the amendment, and sufficient information about the registrant to link the special form to the original record. When a copy of the record is issued, a copy of the amendment must be included.]

[(e)  Amending a record maintained in an electronic file by changing the item(s) to be amended. The date of the amendment must be made a part of the record and the original information must also be retained.]

[(f)  A certificate of birth amended pursuant to the provisions of (Section 21(d) of the Model Act) shall be amended by preparing a new certificate. The item numbers of the entries that were amended shall not, however, be identified on the new certificate or on any certified copies that may be issued of that certificate.]

## Regulation 12. Record Preservation
(Authorization: Section 22 of the Model Act)

When an authorized reproduction of a vital record has been properly prepared by the State Registrar and when all steps have been taken to ensure the continued preservation of the information, the record from which such authorized reproduction was made may be disposed of by the State Registrar. Such record may not be disposed of, however, until the quality of the authorized reproduction has been tested to ensure that acceptable certified copies can be issued and until a security copy of such document has been placed in a secure location removed from the building where the authorized reproduction is housed. Such security copy shall be maintained in such a manner to ensure that it can replace the authorized reproduction should the authorized reproduction be lost or destroyed.

The State Registrar shall offer the original documents from which the authorized reproductions are made to the (State Archival Authority). The (State Archival Authority) may be allowed to retain permanently such records provided they

adhere to the restrictions in the vital statistics law related to access to such records. If the (State Archival Authority) does not wish to place such records in their files the State Registrar shall be authorized to destroy the documents. Such destruction shall be by approved methods for disposition of confidential or sensitive documents.

## Regulation 13. Disclosure of Records
(Authorization: Sections 23 and 24 of the Model Act)

To protect the integrity of vital records:

(a) The State Registrar or other custodians of vital records shall not permit inspection of, or disclose information contained in, vital statistics records, or copy or issue a copy of all or part of any such record unless he or she is satisfied that the applicant is authorized to obtain a copy or abstract of such record.

  (1) Family members doing genealogical research and genealogists representing a family member may obtain copies of records needed for their research. Unless the registrant is deceased, appropriate authorizations shall be required from the registrant or relevant family members as defined in Section 24(a) for the release of the records.

  (2) The term "authorized representative" shall include an attorney, physician, funeral director, or other designated agent acting in behalf of the registrant or his or her family.

  (3) The natural parents of adopted children, when neither has custody, and commercial firms or agencies requesting listings of names and addresses shall not be authorized to obtain copies or abstracts of the record.

(b) All requests for disclosure of information contained in vital records or reports for research which identifies any person [or institution] shall be submitted in writing to the State (Agency, Registrar).

  (1) Each request must contain:

    (a) Objectives of the research;

    (b) peer review and approval of study protocol for any contact of study subjects;

    (c) storage and security measures to be taken to assure confidentiality of identifying information, and provision for return or destruction of the information at the conclusion of the research;

    (d) time frame of the study;

    (e) acknowledgement and agreement that ownership of all information provided by the State (Agency, Registrar) shall remain exclusively in the State Agency and that use of that information by the researcher constitutes a license only for usage during the course of the research and creates no ownership rights by the researcher; and

    (f) acknowledgment and agreement that release of identifying information contained in vital records or reports by the researcher to any other person or entity may be made only with prior written approval of the State (Agency, Registrar).

  (2) All requests shall be reviewed to determine compliance with the following:

    (a) The request contains all required elements;

    (b) the request adequately justifies the need for the requested information;

    (c) the requested information can be provided within the time frame set forth in the request; and

    (d) the State Agency has adequate resources with which to comply with the request;

  (3) The State (Agency, Registrar) shall enter into research agreements for all approved research requests. Each research agreement shall specify exactly what information will be disclosed and shall prohibit release by the researcher of any information which may identify any person or institution. Additionally, each research agreement may provide that in the event of breach the principal investigator(s) and collaborator(s) shall be barred from participation in future research agreements and shall pay to the State Agency the sum of $(5,000.00) per violation of the research agreement.

29

(c) For all requests for disclosure of information contained in vital records or reports for research which does not contain identifiers but may identify any person [or institution], a signed agreement must be obtained from the person or entity requesting the information which provides the following assurances:

    (1) The recipient will neither use nor permit others to use the information in any way except for statistical reporting and analysis;

    (2) the recipient will neither release nor permit others to release the information or any part of the information to any person who is not a member of the organization without approval of the State (Agency, Registrar);

    (3) the recipient will neither attempt to link nor permit others to attempt to link the data set with individually identifiable records from any other data set;

    (4) the recipient will neither use nor will allow anyone else to attempt to use the information to learn the identity of any person [or institution] included in the information provided; and

    (5) if the identity of any person [or institution] is discovered inadvertently, the recipient will not make use of this knowledge; will immediately notify the State (Agency, Registrar); will safeguard or destroy the information which led to the identification of the individual [or institution] as requested by the State (Agency, Registrar); and will inform no one else of the discovery.

(d) The State Registrar or local custodian shall not issue a certified copy of a record until the applicant has provided sufficient information to locate the record. Whenever it shall be deemed necessary to establish an applicant's right to information from a vital record, the State Registrar or local custodian may **also** require identification of the applicant or a sworn statement.

(e) When 100 years have elapsed after the date of birth, or 50 years have elapsed after the date of death, marriage, or (divorce, dissolution of marriage, or annulment), such records in the custody of the State Registrar shall become available to any person upon submission of an application containing sufficient information to locate the record. For each copy issued or search of the files made, the State Registrar shall collect the same fee as is charged for the issuance of certified copies or a search of the files for other records in his or her possession.

[The State (Agency, Registrar) may establish a public room where copies of these records will be made available for viewing. Such records will be made available in photographic or other suitable format and adequate facilities for viewing will be provided. Each person using this facility will be charged a fee of _____ per hour or fraction thereof.]

## Regulation 14. **Copies of Data from Vital Records**
(Authorization: Section 24 of the Model Act)

(a) Certified copies of vital records may be made by mechanical, electronic, or other reproductive processes.

(b) Each certified copy issued shall be certified as a true copy by the officer in whose custody the record is entrusted and shall include the date issued, the name of the issuing officer, the registrar's signature or an authorized facsimile thereof, and the seal of the issuing office. In addition, all certified copies of a birth record shall include at a minimum the following information: certificate number, given name(s), surname, generational identifier, date of birth, State and city or county of birth, sex, and date of filing. In addition, all certified copies of a death record shall include at a minimum the following information: given name(s), surname, generational identifier, date of death, date of birth or age, State and city or county of death, sex, and date of filing.

(c) All certified copies shall include, at a minimum, the following security features:

    (1) sensitized security paper;

    (2) background security design;

    (3) copy void pantograph;

    (4) consecutive numbering;

    [ (5) engraved border;

    (6) prismatic printing;

    (7) erasable fluorescent background inks;

30

(8) nonoptical brightener paper;

(9) microline;

(10) complex colors;

(11) security thread;

(12) intaglio print;

(13) security laminate.]

(d) Verification of the facts contained in a vital record may be furnished by the State Registrar to any Federal, State, county, or municipal government agency or to any other agency representing the interest of the registrant. Such verifications shall be on a form prescribed and furnished by the State Registrar or on a form furnished by the requesting agency and acceptable to the State Registrar; or, the State Registrar may authorize the verification in other ways when it shall prove in the best interests of his or her office.

## Regulation 15. Fees
(Authorization: Section 25 of the Model Act)

(a) No certified or uncertified copy shall be issued until the fee for such copy is received unless specific approval has been obtained from the State Registrar or otherwise provided for by statute or regulation.

(b) Fee for services:

(1) (a) For a ( ) year search of the files and issuance of a certified abstract of a vital record if found. . . $ ___

(b) For each additional certified abstract of the same vital record issued at the same time . . . . . . . . .$ ___

(2) (a) For a ( ) year search of the files and issuance of a certified or uncertified facsimile of a birth, death, marriage, or divorce record if found. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ ___

(b) For each additional facsimile of the same birth, death, marriage, or divorce record issued at the same time . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ ___

(3) For a search of the birth, death, marriage, or divorce files when no record is found or no copy is made the fee per hour or portion thereof of search is . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ __

(4) For a verification of the facts contained in a birth, death, marriage, or divorce record when no copys issued . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$___

(5) For preparation of a new certificate of birth by adoption, legitimation, or paternity determination which does (not) include one certified copy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $____

(6) For preparing a certificate of foreign birth which does (not) include one certified copy . . . . . . . . . . . . $____

(7) For amending a birth, death, marriage, or divorce certificate [one year or more after the event] which does (not) include one certified copy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $____

(8) For preparing and filing a delayed certificate of birth, death, marriage, or divorce which does (not) include one certified copy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ ____

(9) Additional handling charge for nonroutine, expedited service and all special delivery mail that requires special attention . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..$____

(10) A fee may be charged for special services not specified above. The fee shall be the actual cost for providing the service as determined by the State Registrar.

## Regulation 16. Persons Required to Keep Records
(Authorization: Section 26 of the Model Act)

Each funeral director shall keep a record containing, as a minimum, the following information about each dead body or fetus the funeral director handles:

31

(a) The date, place, and time of receipt;

(b) the date, place, and manner of disposition;

(c) if the dead body or fetus is delivered to another funeral director, the date of such delivery and the name and address of the funeral director to whom delivered; and

(d) the items required by the certificate of death for those deaths for which the funeral director was required to file the certificate.

## Regulation 17. Matching of Birth and Death Certificates
(Authorization: Section 28 of the Model Act)

When carrying out the birth and death matching program, the State Registrar shall establish written guidelines which provide the standards for determining a match does exist. These standards shall specify the information about the decedent which should be available and which should be compared to the information on the birth certificate before a match can be made. These items include as a minimum: name of decedent; name of father and maiden name of mother; date of birth or age of decedent; State of birth of decedent; and marital status of decedent. No match shall be made unless there is documented proof of the fact of death.

The date of death, the State where death occurred, and the death certificate number shall be posted to the birth certificate.

32

DEPARTMENT OF
HEALTH & HUMAN SERVICES

Public Health Service
Centers for Disease Control and Prevention
National Center for Health Statistics
6525 Belcrest Road
Hyattsville, Maryland 20782

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE, $300

BULK RATE
POSTAGE & FEES PAID
PHS/NCHS
PERMIT NO. G-281

DHHS Publication No. (PHS) 94-1115