**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| KAYLA GORE; JAIME COMBS; L.G.; and K.N., <br><br> *Plaintiffs*, <br><br> v. <br><br> WILLIAM BYRON LEE, in his official capacity as Governor of the State of Tennessee; and LISA PIERCEY, in her official capacity as Commissioner of the Tennessee Department of Health, <br><br> *Defendants*. | No. 3:19-CV-00328 <br><br><br> DISTRICT JUDGE RICHARDSON <br> MAGISTRATE JUDGE HOLMES |

## STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs Kayla Gore, Jaime Combs, L.G., and K.N. (collectively, "Plaintiffs"), by and through their attorneys, and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.01(b), submit the following Statement of Material Facts in support of their Motion for Summary Judgment, which is filed herewith.

| No. | Fact | Supporting Record Citation |
|---|---|---|
| **I.** | **SEX AND GENDER IDENTITY** | |
| 1. | A person has multiple sex-related characteristics, including hormones, external and internal morphological features, external and internal reproductive organs, chromosomes, and gender identity. These characteristics may not always be in alignment. | Ettner Decl. ¶¶ 18, 20; Taylor Decl. ¶¶ 19, 20, 30. |
| | Response: | |

| 2. | Gender identity—a person's core internal sense of their own gender—is the primary factor in determining a person's sex. Every person has a gender identity. | Ettner Decl. ¶¶ 19, 20, 21, 24, 25, 34; Taylor Decl. ¶¶ 21, 30, 42. |
|---|---|---|
| | Response: | |
| 3. | There is a medical consensus that gender identity is innate and that efforts to change a person's gender identity are unethical and harmful to a person's health and well-being. | Ettner Decl. ¶¶ 20, 24, 25, 34, 38; Taylor Decl. ¶¶ 21, 28, 29. |
| | Response: | |
| 4. | Although there is no one definitive factor that determines gender identity, biological factors—most notably the neurodevelopmental characteristics of a person's brain with respect to sex—play a role in gender identity development and cannot be changed. | Ettner Decl. ¶ 24; Taylor Decl. ¶¶ 21-24. |
| | Response: | |
| 5. | The phrase "sex assigned at birth" refers to the sex recorded on a person's birth certificate at the time of birth. Typically, a person is assigned a sex on their birth certificate solely on the basis of the appearance of external genitalia at the time of birth. Other sex-related characteristics (such as a person's chromosomal makeup and gender identity, for example) are typically not assessed or considered at the time of birth. | Ettner Decl. ¶¶ 16, 18; Taylor Decl. ¶¶ 18, 19. |
| | Response: | |
| 6. | External genitalia alone—the critical criterion for assigning sex at birth—is not an accurate proxy for a person's sex. | Ettner Decl. ¶ 17; Taylor Decl. ¶ 18; *see also Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1053 (7th Cir. 2017) ("[I]t is unclear that the sex marker on a birth certificate can even be used as a true proxy for an individual's biological sex. The marker does not take into account an individual's chromosomal makeup, which |

| | | is also a key component of one's biological sex."). |
|---|---|---|
| | Response: | |
| 7. | When there is a divergence between anatomy and identity, one's gender identity is paramount and the primary determinant of an individual's sex designation. | Ettner Decl. ¶ 20; Taylor Decl. ¶¶ 30, 32, 42. |
| | Response: | |
| 8. | A transgender person is someone whose gender identity diverges from the sex they were assigned at birth. A transgender man's sex is male (even though he was assigned the sex of female at birth), and a transgender woman's sex is female (even though she was assigned the sex of male at birth). | Ettner Decl. ¶¶ 16, 23; Taylor Decl. ¶¶ 18, 26, 33, 45, 66. |
| | Response: | |
| 9. | A cisgender person is someone whose gender identity aligns with the sex they were assigned at birth. A cisgender man's sex is male (and was assigned the sex of male at birth), and a cisgender woman's sex is female (and was assigned the sex of female at birth). | Ettner Decl. ¶¶ 21, 22; Taylor Decl. ¶ 18. |
| | Response: | |
| 10. | The incongruence between a transgender person's gender identity and sex assigned at birth can sometimes be associated with gender dysphoria. Gender dysphoria is a medical condition recognized in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fifth Ed. (2013) ("DSM-V"), and by the other leading medical and mental health professional groups, including the American Medical Association and the American Psychological Association. | Ettner Decl. ¶¶ 26, 31, 32; Taylor Decl. ¶¶ 34, 35, 37, 38. |
| | Response: | |
| 11. | Gender dysphoria refers to clinically significant distress that can result when a person's gender identity differs from the person's sex assigned at birth. If left untreated, gender dysphoria may result in psychological distress, | Ettner Decl. ¶¶ 26, 28, 29; Taylor Decl. ¶¶ 34, 35, 36. |

3

| | | |
|---|---|---|
| | anxiety, depression, and suicidal ideation or even self-harm. | |
| | Response: | |
| 12. | Treatment of gender dysphoria is usually provided pursuant to the *Standards of Care for the Health of Transsexual, Transgender, and Gender Nonconforming People*, published by the World Professional Association of Transgender Health ("WPATH"). | Ettner Decl. ¶¶ 31, 32; Taylor Decl. ¶¶ 37, 38. |
| | Response: | |
| 13. | Medical treatment for gender dysphoria must be individualized and tailored to the medical needs of each patient. | Ettner Decl. ¶ 33; Taylor Decl. ¶ 41. |
| | Response: | |
| 14. | These treatments do not change a transgender person's sex, which is already determined by their gender identity. Instead, they affirm the authentic gender than an individual person *is.* Attempts to change a person's gender identity in order to bring it into alignment with the person's sex assigned at birth are not only unsuccessful but also dangerous, risking psychological harm and even suicide. | Ettner Decl. ¶¶ 25, 34, 38, 39; Taylor Decl. ¶¶ 39, 42. |
| | Response: | |
| 15. | Treatments for gender dysphoria align the transgender person's body and lived experience with the person's sex, as determined by their gender identity. Among the steps that transgender people take to treat their gender dysphoria are: (1) social transition; (2) hormone therapy; and/or (3) gender-affirming surgery. | Ettner Decl. ¶¶ 33, 35-37, 39; Taylor Decl. ¶¶ 41, 43-46. |
| | Response: | |
| 16. | Social transition entails a transgender person living in accordance with the person's gender identity. For example, for a transgender woman, social transition can include, among other actions, changing her first name to a name typically associated with women, no longer using male pronouns, changing her identity documents | Ettner Decl. ¶ 35; Taylor Decl. ¶ 43. |

4

| | | |
|---|---|---|
| | to indicate a female gender, wearing clothing and adopting grooming habits stereotypically associated with women, and otherwise living as a woman in all aspects of life. | |
| | Response: | |
| 17. | Social transition requires that a transgender woman or a transgender man be recognized as a woman or a man, respectively, and treated the same as all other women or men, respectively, by family members, coworkers, and others in the community. | Ettner Decl. ¶¶ 35, 41, 42, 46; Taylor Decl. ¶¶ 43, 44, 49. |
| | Response: | |
| 18. | Social transition—which often includes correcting one's identity documents to accurately reflect one's sex—is the most important, and sometimes the only, aspect of transition that transgender people undertake. | Ettner Decl. ¶ 35; Taylor Decl. ¶¶ 43, 44, 58. |
| | Response: | |
| 19. | Living in a manner consistent with one's gender identity is critical to the health and well-being of all transgender people. | Ettner Decl. ¶ 36. |
| | Response: | |
| 20. | Living in a manner consistent with one's gender identity is also a key aspect of treatment for gender dysphoria for those who suffer from it. | Ettner Decl. ¶¶ 36, 39; Taylor Decl. ¶ 58. |
| | Response: | |
| 21. | Having identity documents consistent with one's gender identity is a key aspect of social transitioning for transgender persons and can result in significant improvements in the quality of life, health, and wellbeing of transgender persons. | Ettner Decl. ¶¶ 30, 35-36, 41-42, 47; Taylor Decl. ¶¶ 40, 44, 56, 66. |
| | Response: | |
| 22. | By contrast, not having identity documents, such as a birth certificate, consistent with one's gender identity | Ettner Decl. ¶¶ 29, 42-45; Taylor Decl. ¶¶ 50-55, 61. |

5

| | | |
|---|---|---|
| | can have negative effects in the quality of life, health, and welfare of transgender persons. | |
| | <u>Response:</u> | |
| 23. | Not every person suffering from gender dysphoria undergoes the same treatment. From a medical and scientific perspective, there is no basis for refusing to acknowledge a transgender person's sex, as determined by their gender identity, based on whether that person has undergone surgery or any other medical treatment. | Ettner Decl. ¶¶ 33, 37; Taylor Decl. ¶¶ 30, 41, 47, 58, 59, 65. |
| | <u>Response:</u> | |
| **II.** | **TRANSGENDER PEOPLE AS A CLASS** | |
| 24. | Transgender people, as a class, exhibit an immutable or distinguishing characteristic that define them as a discrete group. | Ettner Decl. ¶¶ 19, 21-22, 24-25; Taylor Decl. ¶¶ 26, 28-29. |
| | <u>Response:</u> | |
| 25. | Transgender people, as a class, represent a small minority. | Taylor Decl. ¶ 27; Gonzalez-Pagan Decl., Ex. J. |
| | <u>Response:</u> | |
| 26. | Transgender people, as a class, have historically been and continue to be subject to discrimination, violence, and harassment. | Ettner Decl. ¶¶ 44-45; Taylor Decl. ¶¶ 50-51, 53-56; Gonzalez-Pagan Decl., Ex. D; Ex. F; Ex. G; Ex. H. |
| | <u>Response:</u> | |
| 27. | Transgender people, as a class, have a defining characteristic that bears no relation to their ability to perform or contribute to society. | Ettner Decl. ¶¶ 22, 29; Taylor Decl. ¶¶ 29, 40; Gonzalez-Pagan Decl., Ex. I at 4. |
| | <u>Response:</u> | |
| 28. | Transgender people, as a class, have relatively little political power. | *See*, *e.g.*, Gonzalez-Pagan Decl., Ex. K. |
| | <u>Response:</u> | |

6

| | | |
|---|---|---|

| **III.** | **PLAINTIFFS** | |
|---|---|---|
| 29. | Plaintiffs are four transgender persons who wish to amend their Tennessee birth certificates to accurately reflect their gender identity. Declaration of Kayla Gore ("Gore Decl.") ¶¶ 5, 23; Declaration of Jaime Combs ("Combs Decl.") ¶¶ 6, 22; Declaration of L.G. ("L.G. Decl.") ¶¶ 7, 25; Declaration of K.N. ("K.N. Decl.") ¶¶ 5, 22. | Declaration of Kayla Gore ("Gore Decl.") ¶¶ 5, 23; Declaration of Jaime Combs ("Combs Decl.") ¶¶ 6, 22; Declaration of L.G. ¶¶ 7, 25; Declaration of K.N. ¶¶ 5, 22. |
| | Response: | |
| ***Plaintiff Kayla Gore*** | | |
| 30. | Plaintiff Kayla Gore is a 34-year-old woman who was born and currently resides in Memphis, Tennessee. | Gore Decl. ¶¶ 2, 4. |
| | Response: | |
| 31. | At birth, Ms. Gore was incorrectly designated "male" on her birth certificate, even though she is, in fact, a woman. | Gore Decl. ¶¶ 4, 5. |
| | Response: | |
| 32. | Ms. Gore is transgender. | Gore Decl. ¶ 5. |
| | Response: | |
| 33. | Ms. Gore has undergone medical treatment for gender dysphoria. | Gore Decl. ¶ 10. |
| | Response: | |
| 34. | Ms. Gore's gender identity and expression is female (she looks, dresses, and expresses herself as a woman). | Gore Decl. ¶¶ 6, 8, 9, 10. |
| | Response: | |
| 35. | Ms. Gore has aligned her body characteristics, appearance, and lived experience with her female gender identity. | Gore Decl. ¶¶ 10, 11, 12. |

7

| | | |
|---|---|---|
| | Response: | |
| 36. | Ms. Gore has changed her name and corrected the gender marker on her state identification card and Social Security records. | Gore Decl. ¶¶ 11, 12. |
| | Response: | |
| 37. | Because Tennessee's Birth Certificate Policy makes it impossible for Ms. Gore to correct the gender marker on her birth certificate, she considers it futile to correct her name on her birth certificate, as the document would still be incongruent with her other identification documents. | Gore Decl. ¶ 15. |
| | Response: | |
| 38. | Ms. Gore wishes to correct the gender marker on her birth certificate to accurately reflect her identity as a woman, as determined by her gender identity. | Gore Decl. ¶ 23. |
| | Response: | |
| 39. | Ms. Gore's birth certificate does not reflect her true identity, is incongruent with her female identity and expression, and conflicts with her other identification documents. | Gore Decl. ¶¶ 14, 15. |
| | Response: | |
| | ***Plaintiff Jaime Combs*** | |
| 40. | Plaintiff Jaime Combs is a 51-year old woman who was born in Elizabethton, Tennessee and currently resides in Nashville, Tennessee. | Combs Decl. ¶¶ 3, 5. |
| | Response: | |
| 41. | At birth, Ms. Combs was incorrectly designated "male" on her birth certificate, even though she is, in fact, a woman. | Combs Decl. ¶¶ 5, 6. |
| | Response: | |

| 42. | Ms. Combs is transgender. | Combs Decl. ¶ 6. |
|---|---|---|
| | Response: | |
| 43. | Ms. Combs's gender identity is female (she looks, dresses, and expresses herself as a woman). | Combs Decl. ¶¶ 5, 6, 7, 8, 10. |
| | Response: | |
| 44. | Ms. Combs has aligned her body characteristics, appearance, and lived experience with her female gender identity. | Combs Decl. ¶¶ 9-11. |
| | Response: | |
| 45. | Ms. Combs has changed her name and corrected the gender marker on her driver's license, Social Security records, and passport. | Combs Decl. ¶¶ 9, 11. |
| | Response: | |
| 46. | Because Tennessee's Birth Certificate Policy makes it impossible for Ms. Combs to correct the gender marker on her birth certificate, Ms. Combs' birth certificate is incongruent with her other identification documents. | Combs Decl. ¶ 13. |
| | Response: | |
| 47. | Ms. Combs wishes to correct the gender marker on her birth certificate to accurately reflect her identity as a woman, as determined by her gender identity. | Combs Decl. ¶ 22. |
| | Response: | |
| 48. | Ms. Combs's birth certificate does not reflect her true identity, is incongruent with her female identity and expression, and conflicts with her other identification documents. | Combs Decl. ¶¶ 13, 14, 20, 21. |
| | Response: | |
| *Plaintiff L.G.* | | |

| 49. | Plaintiff L.G. is a 31-year-old woman who was born in Tennessee and currently resides in Kentucky. | L.G. Decl. ¶¶ 2, 6. |
|---|---|---|
| | <u>Response:</u> | |
| 50. | At birth, L.G. was incorrectly designated "male" on her birth certificate, even though she is, in fact, a woman. | L.G. Decl. ¶ 7. |
| | <u>Response:</u> | |
| 51. | L.G. is transgender. | L.G. Decl. ¶ 7. |
| | <u>Response:</u> | |
| 52. | L.G.'s gender identity is female (she looks, dresses, and expresses herself as a woman). | L.G. Decl. ¶¶ 6, 10-12. |
| | <u>Response:</u> | |
| 53. | L.G. has been diagnosed with and undergone medical treatment for gender dysphoria. | L.G. Decl. ¶ 11. |
| | <u>Response:</u> | |
| 54. | L.G. has aligned her body characteristics, appearance, and lived experience with her female gender identity. | L.G. Decl. ¶¶ 10, 11, 12, 14, 16. |
| | <u>Response:</u> | |
| 55. | L.G. has changed her name and corrected her gender marker on her driver's license and Social Security records. | L.G. Decl. ¶¶ 14, 16. |
| | <u>Response:</u> | |
| 56. | L.G. has changed the name on her birth certificate but has been prevented from correcting the gender marker on her birth certificate by Tennessee's Birth Certificate Policy. | L.G. Decl. ¶¶ 16, 17. |
| | <u>Response:</u> | |

| 57. | L.G. wishes to change the gender marker on her birth certificate to accurately reflect her identity as a woman, as determined by her gender identity. | L.G. Decl. ¶ 25. |
|---|---|---|
|  | Response: |  |
| 58. | L.G.'s birth certificate does not reflect her true identity, is incongruent with her female identity and expression, and conflicts with her other identification documents. | L.G. Decl. ¶¶ 17, 18, 23, 24. |
|  | Response: |  |
| 59. | L.G.'s transgender status is not publicly known, including not being known by any of her current co-workers. | L.G. Decl. ¶ 13. |
|  | Response: |  |
| *Plaintiff K.N.* |  |  |
| 60. | Plaintiff K.N. is a 31-year-old woman who was born in Tennessee and currently resides in California. | K.N. Decl. ¶¶ 2, 4. |
|  | Response: |  |
| 61. | At birth. K.N. was incorrectly designated "male" on her birth certificate, even though she is, in fact, a woman. | K.N. Decl. ¶ 5. |
|  | Response: |  |
| 62. | K.N. is transgender. | K.N. Decl. ¶ 5. |
|  | Response: |  |
| 63. | K.N. has been diagnosed with gender dysphoria. | K.N. Decl. ¶ 7. |
|  | Response: |  |
| 64. | K.N.'s gender identity is female (she looks, dresses, and expresses herself as a woman). | K.N. Decl. ¶¶ 4-8. |
|  | Response: |  |

11

| 65. | K.N. has aligned her body characteristics, appearance, and lived experience with her female gender identity. | K.N. Decl. ¶¶ 7-11. |
|---|---|---|
| | Response: | |
| 66. | K.N. has changed her name and corrected the gender marker on her driver's license, Social Security records, and passport. | K.N. Decl. ¶¶ 10, 11. |
| | Response: | |
| 67. | Because Tennessee's Birth Certificate Policy makes it impossible for K.N. to correct the gender marker on her birth certificate, K.N.'s birth certificate is incongruent with her other identification documents. | K.N. Decl. ¶ 16. |
| | Response: | |
| 68. | K.N. wishes to correct the gender marker on her birth certificate to accurately reflect her identity as a woman, as determined by her gender identity. | K.N. Decl. ¶ 22. |
| | Response: | |
| 69. | K.N.'s birth certificate does not reflect her true identity, is incongruent with her female identity and expression, and conflicts with her other identification documents. | K.N. Decl. ¶¶ 16, 18, 21. |
| | Response: | |
| **IV.** | **TENNESSEE'S BIRTH CERTIFICATE POLICY** | |
| 70. | Tennessee birth certificates include, *inter alia*, the given name and surnames of the newborn child, the date of birth, the names of the child's parents, and the sex of the child. | *See, e.g.*, Tenn. Code Ann. § 68-3-311(b)(2); *see also* Gonzalez-Pagan Decl., Ex. B (RFA No. 21). |
| | Response: | |
| 71. | It is the practice of the State of Tennessee, for purposes of determining the sex designation on birth certificates, to rely solely on the observations by third parties about the external genitalia of newborns. | *See* Defs.' Mem. Mot. to Dismiss (ECF No. 29) at 11-12 & n.6; *cf.* Gonzalez-Pagan Decl., Ex. B (RFA No. 21). |

| | | |
|---|---|---|
| | Response: | |
| 72. | In his official capacity as Governor of Tennessee, Defendant William Byron Lee executes the laws of the State, including The Vital Records Act of Tennessee (the "Vital Records Act"), and supervises the implementation and enforcement of the Vital Records Act. Governor Lee has the power to appoint the Commissioner of the Department of Health for the State of Tennessee, who serves at the pleasure of the governor. | *See* Tenn. Code Ann. § 68-1-102. |
| | Response: | |
| 73. | In her official capacity as Commissioner of the Tennessee Department of Health, Defendant Lisa Piercey supervises the activities of the Department and enforces Tennessee's vital records laws, including the Vital Records Act. | *See* Tenn. Code Ann. §§ 68-3-104. |
| | Response: | |
| 74. | The Tennessee Department of Health, which includes the Office of Vital Records, exercises responsibility for the registration, issuance, correction, and changes to Tennessee birth certificates. | *See* Tenn. Code Ann. § 68-3-103. |
| | Response: | |
| 75. | Recognizing that the information in a birth certificate may sometimes be inaccurate or need updating, the Vital Records Act and the regulations promulgated and enforced by Defendants permit the correction of errors on and updating of birth certificate records. | *See* Tenn. Code Ann. § 68-3-203; Tenn. Comp. R. & Regs. 1200-07-01-.10; *see also* |
| | Response: | |
| 76. | For example, in cases which a person has lawfully changed their name, such person may present a duly authenticated copy of the court order changing their name and request an amended certificate of birth. | Tenn. Comp. R. & Regs. 1200-07-01-.10 |
| | Response: | |

| 77. | Similarly, following the adoption of a child, a new birth certificate reflecting only the names of the adoptive parents and the new name of the adopted child must be substituted for the original registered birth certificate. The original registration certificate of the birth of the adoptee, decree of adoption, and other documents are kept under seal and can only be opened upon a court order or upon a directive from the Tennessee Department of Children's Services. | Tenn. Comp. R. & Regs. 1200-07-01-.04 |
|---|---|---|
| | Response: | |
| 78. | Pursuant to Tenn. Comp. R. & Regs. 1200-07-01-.10, and as documented on the public website for the Office of Vital Records, the sex listed on a person's birth certificate may be corrected if the change is substantiated by (1) a signed and notarized affidavit showing the full name, date of birth, the sex as it is shown on the certificate and the sex as it should be correctly listed, and (2) documentary evidence showing the correct sex of the individual. | *See* Tenn. Comp. R. & Regs. 1200-07-01-.10; Gonzalez-Pagan Decl., Ex. C at 3. |
| | Response: | |
| 79. | The original bills for the Vital Records Act of 1977 (House Bill 425 and Senate Bill 162) expressly authorized the amendment of the sex designation on Tennessee-issued birth certificates following "sex change surgery." | Gonzalez-Pagan Decl., Ex. L, Ex. M. |
| | Response: | |
| 80. | The bills for the Vital Records Act of 1977 (House Bill 425 and Senate Bill 162) were amended on the floor of the legislature to expressly prohibit amendments to the sex designation on Tennessee-issued birth certificates in response to "controversy" at the time. | Gonzalez-Pagan Decl., Ex. N at 6-7, Ex. O at 5, Ex. M. |
| | Response: | |
| 81. | As a result, the Vital Records Act provides, in part, that "[t]he sex of an individual shall not be changed on the original certificate of birth as a result of sex change surgery." | Tenn. Code Ann. § 68-3-203(d). |

14

| | | |
|---|---|---|
| | Response: | |
| 82. | Based on this provision, Defendants enforce a policy, custom, or practice that categorically prohibits transgender persons born in Tennessee from correcting the sex listed on their birth certificates so that it matches their sex, consistent with their gender identity, regardless of what steps such persons have taken to live in a manner consistent with their gender identity. | *See* Defs.' Mem. Mot. to Dismiss (ECF No. 29) at 7-8 & n.5; *see also*, *e.g.*, Tenn. Op. Att'y Gen. No. 14-70, 2014 WL 3700672 (July 16, 2014) (designation of sex on police booking sheets, warrants and other court records must match birth certificate, regardless of gender-confirming surgery); Tenn. Op. Att'y Gen. No. 88-43, 1988 WL 410159 (Feb. 29, 1988) (person's sex determined at birth for purposes of obtaining Tennessee marriage license). |
| | Response: | |
| 83. | Furthermore, Tennessee typically requires birth certificates to show a strike-out line through any information corrected, such as when instituting name changes on birth certificates. | Tenn. Comp. R. & Regs. 1200-07-01-.10(a)(2). |
| | Response: | |
| 84. | Taken in conjunction, these applications of the Vital Records Act by Defendants constitute the Birth Certificate Policy challenged by Plaintiffs. | Gore Decl. ¶ 13; Combs Decl. ¶ 12; K.N. Decl. ¶ 14; L.G. Decl. ¶ 25. |
| | Response: | |
| 85. | The Model State Vital Statistics Act, published by the National Center for Health Statistics, expressly authorizes the amendment of the sex designation on birth certificates in a manner consistent with a transgender person's gender identity. | Gonzalez-Pagan Decl., Ex. Q at 10; *see also* Gonzalez-Pagan Decl., Ex. B (RFA No. 7). |
| | Response: | |

15

| | | |
|---|---|---|
| 86. | Tennessee's Birth Certificate Policy is inconsistent with the Model State Vital Statistics Act. | Gonzalez-Pagan Decl., Ex. B (RFA Nos. 7, 9). |
| | <u>Response:</u> | |

| V. | OTHER TENNESSEE POLICIES REGARDING IDENTITY DOCUMENTS | |
|---|---|---|
| 87. | Tennessee permits transgender persons to correct the sex designation on their drivers' licenses in a manner consistent with their gender identity. | Gore Decl. ¶ 12; Combs Decl. ¶¶ 11, 17; Gonzalez-Pagan Decl., Ex. B (RFA No. 5); Tenn. Comp. R. & Regs. 1340-01-13-.12(6). |
| | <u>Response:</u> | |
| 88. | The State of Tennessee requires persons, in a variety of contexts, to produce their birth certificates to access and enjoy a host of government benefits and to participate in public and private life. | *See*, *e.g.*, Tenn. Code Ann. § 4-58-103(c)(2) (food stamps); Tenn. Code Ann. § 50-1-703(a)(1)(B) (employers to keep some proof of citizenship on file for their employees); Tenn. Comp. R. & Regs. § 0770-01-05-.13(2)(a) (housing assistance); Tenn. Comp. R. & Regs. § 0450-01-.05 (requiring presentation of birth certificate for application as licensed clinical counselor); *see also* Gonzalez-Pagan Decl., Ex. B (RFA No. 11) ("Defendants admit that some Tennessee statutes and regulations may contemplate the use of birth certificates as personal identification documents."). |
| | <u>Response:</u> | |

| VI. | THE HARMS INFLICTED UPON TRANSGENDER PERSONS, INCLUDING PLAINTIFFS, BY THE BIRTH CERTIFICATE POLICY | |
|---|---|---|
| 89. | Being unable to correct the gender marker on one's identity documents, including one's birth certificate, | Ettner Decl. ¶ 40; Taylor Decl. ¶¶ 50, 52. |

16

| | | |
|---|---|---|
| | means that transgender people are forced to display documents that indicate their birth-assigned sex (typically assumed based only upon the appearance of genitalia at birth), rather than their actual sex as determined by their gender identity and their lived experience. This discordance creates a myriad of deleterious social and psychological consequences. | |
| | <u>Response:</u> | |
| 90. | The inability access identity documents, such as birth certificates, that accurately reflect one's sex is harmful and exacerbates gender dysphoria, kindling shame and amplifying fear of exposure, as the *sine qua non* of the gender dysphoria diagnosis is the desire to be regarded in accordance with one's true sex as determined by one's gender identity. | Ettner Decl. ¶¶ 39, 42, 43, 46; Taylor Decl. ¶ 44, 52. |
| | <u>Response:</u> | |
| 91. | The forced disclosure of the transgender status of Plaintiffs and other transgender persons by way of an inaccurate birth certificate exposes them to prejudice, discrimination, distress harassment, and violence. | Ettner Decl. ¶¶ 42, 43; Taylor Decl. ¶ 51, 53-55; Gore Decl. ¶ 20; Combs Decl. ¶¶ 15, 17; L.G. Decl. ¶¶ 16, 20; K.N. Decl. ¶ 20 . |
| | <u>Response:</u> | |
| 92. | Having a birth certificate incorrectly identifying the sex of a transgender person is also a significant barrier to their ability to function successfully as their true self in seeking employment and volunteer opportunities, and gaining access to other private and public services, entitlements, and benefits. | *See, e.g.*, Taylor Decl. ¶¶ 50, 51, 53-55, 61; Gore Decl. ¶ 20; Combs Decl. ¶ 18; L.G. Decl. ¶ 20; K.N. Decl. ¶ 20. |
| | <u>Response:</u> | |
| 93. | For example, Ms. Gore has been outed as a transgender woman to several employers and subjected to invasive personal questions when she has had to present her birth certificate with the incorrect gender marker. Knowing that she would have to present an inaccurate birth certificate has dissuaded Ms. Gore from applying for | Gore Decl. ¶ 20. |

17

| | | |
|---|---|---|
| | jobs and resuming her education, because doing so would force her to disclose her transgender status. | |
| | <u>Response:</u> | |
| 94. | The forced disclosure of a person's transgender status through inaccurate identification documents, such as a birth certificate, violates a transgender person's privacy—the right to maintain stewardship of personal and medical information—and their ability to control whether, when, how, and to whom to disclose one's transgender status. | Ettner Decl. ¶ 46; Taylor Decl. ¶¶ 57-60. |
| | <u>Response:</u> | |
| 95. | Being denied birth certificates that accurately reflect their sex, as determined by their gender identity, is psychologically and emotionally harmful to transgender persons born in Tennessee, including Plaintiffs. | Ettner Report ¶¶ 45-47; Taylor Report ¶¶ 52, 61; Gore Decl. ¶ 22; Combs Decl. ¶ 21; L.G. Decl. ¶ 24; K.N. Decl. ¶ 21. |
| | <u>Response:</u> | |
| 96. | Finally, by forcing Plaintiffs to have birth certificates incongruent with their gender identity—despite their social and medical transitions, and in defiance of their legal name changes and corrections to their other Tennessee and Federal identity documents—Defendants interfere with Plaintiffs' ability to communicate to others who they are. Gore Decl. ¶¶ 14, 18; Combs Decl. ¶¶ 14, 20; L.G. Decl. ¶¶ 16, 20, 27; K.N.'s Decl.¶¶ 18, 20, 24; *see also* Ettner Decl. ¶ 46. | |
| | <u>Response:</u> | |
| 97. | As a result of the Birth Certificate Policy, Plaintiffs are faced with a consistent reminder that the State of Tennessee does not respect them for who they are and does not recognize their personhood. | Ettner Decl. ¶¶ 43, 44; Gore Decl. ¶ 22; Combs Decl. ¶ 21; L.G. Decl. ¶ 24; K.N. Decl. ¶ 21. |
| | <u>Response:</u> | |

| 98. | The Birth Certificate Policy stigmatizes transgender persons born in Tennessee, such as Plaintiffs, as illegitimate or unworthy of recognition. | Ettner Decl. ¶¶ 43, 44; Gore Decl. ¶ 22; Combs Decl. ¶ 21; L.G. Decl. ¶¶ 18, 24; K.N. Decl. ¶ 21. |
|---|---|---|
| | Response: | |
| 99. | The Birth Certificate Policy inhibits the ability of transgender persons born in Tennessee, including Plaintiffs, to fully participate in our society. | *See, e.g.*, Gore Decl. ¶ 20; Combs Decl. ¶¶ 15, 17, 18; L.G. Decl. ¶ 20; K.N. Decl. ¶ 20; Taylor Decl. ¶¶ 48, 55. |
| | Response: | |

Dated:  March 9, 2020

Respectfully submitted,

_s/John T. Winemiller_

Omar Gonzalez-Pagan*
LAMBDA LEGAL DEFENSE AND
    EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, NY 10005-3919
Telephone: (212) 809-8585
Facsimile: (212) 809-0055
ogonzalez-pagan@lambdalegal.org

John T. Winemiller
MERCHANT & GOULD P.C.
800 S. Gay Street, Suite 2150
Knoxville, TN 37929
Phone: (865) 380-5960
Facsimile: (612) 332-9081
JWinemiller@merchantgould.com

Tara L. Borelli*
LAMBDA LEGAL DEFENSE AND
    EDUCATION FUND, INC.
730 Peachtree Street NE, Suite 640
Atlanta, GA 30318-1210
Telephone: (404) 897-1880
Facsimile: (404) 897-1884
tborelli@lambdalegal.org

Gavin R. Villareal*
Maddy Dwertman*
BAKER BOTTS L.L.P.
98 San Jacinto Boulevard, Suite 1500
Austin, TX 78701-4078
Phone: (512) 322-2500
Facsimile: (512) 322-2501
gavin.villareal@bakerbotts.com
maddy.dwertman@bakerbotts.com

Sasha Buchert*
LAMBDA LEGAL DEFENSE AND
    EDUCATION FUND, INC.
1776 K Street NW, Suite 722
Washington, DC 20006
Telephone: (202) 804-6245
sbuchert@lambdalegal.org

Brandt Thomas Roessler*
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112-4498
Phone (212) 408-2500
Facsimile: (212) 408-2501
brandt.roessler@bakerbotts.com

Kathryn S. Christopherson*
BAKER BOTTS L.L.P.
1001 Page Mill Rd., Bldg. One, Suite 200
Palo Alto, CA 94304-1007
Phone: (650) 739-7500
Facsimile: (650) 739-7699
kathryn.christopherson@bakerbotts.com

* Admitted _pro hac vice_.

_Counsel for Plaintiffs_

20

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed electronically using the Court's CM/ECF system, which provides electronic notice of the filing to all counsel of record, including:

Herbert H. Slatery III
Attorney General and Reporter

Dianna Baker Shew
Senior Assistant Attorney General
dianna.shew@ag.tn.gov
Sara E. Sedgwick
Senior Assistant Attorney General
sara.sedgwick@ag.tn.gov
PO Box 20207
Nashville, TN 37202

This 9th day of March, 2020.

_s/John T. Winemiller_
John T. Winemiller