**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE**

_____

|  |  |  |
|---|---|---|
| KAYLA GORE; JASON SCOTT; L.G.; and K.N., | ) ) ) | |
| *Plaintiffs,* | ) ) ) | |
| v. | ) ) | No. 3:19-cv-00328 |
| WILLIAM BYRON LEE, in his official capacity as Governor of the State of Tennessee; and LISA PIERCEY, in her official capacity as Commissioner of the Tennessee Department of Health, | ) ) ) ) ) ) | Judge Eli J. Richardson Magistrate Judge Barbara D. Holmes |
| *Defendants.* | ) ) | |

_____

## MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants respectfully request that this Court dismiss all claims raised by Plaintiffs in this case. As more fully set forth below, the Amended Complaint fails to state a claim for which relief can be granted. Plaintiffs have not stated cognizable claims under the Equal Protection Clause, Due Process Clause, or the First Amendment to the United States Constitution. Plaintiffs' claims must be dismissed.

### FACTS[1]

Plaintiffs are four transgender individuals, born in Tennessee, who wish to change the sex identifier on their respective birth certificates to match their current gender identities. (Amended Complaint, Doc. 59 ¶ 1-2). Citing Tenn. Code Ann. § 68-3-203(d) and the regulations governing

---

[1] Defendants assume the facts as alleged in Plaintiffs' Amended Complaint are true only for this Motion to Dismiss and supporting Memorandum of Law.

birth certificate amendments found at Tenn. Comp. R. & Regs. § 1200-07-01-.10, Plaintiffs allege that Defendants have a "Birth Certificate Policy" that "categorically prohibits transgender persons born in Tennessee from correcting the sex listed on their birth certificates so that it matches their true sex, consistent with their gender identity." (Doc. 59 ¶ 5, 69-70). Plaintiffs claim that the Birth Certificate Policy discriminates against transgender persons in violation of the Equal Protection Clause of the Fourteenth Amendment; impinges on their right to informational privacy in violation of the Due Process Clause of the Fourteenth Amendment; and compels speech in violation of the First Amendment. (Doc. 59 ¶ 180-81, 197-99, 212-13). Among other relief, Plaintiffs seek an order requiring Defendants to "immediately issue corrected birth certificates to [Plaintiffs] accurately reflecting their true sex, consistent with their gender identity, without adhering to the practice delineated in . . . Tenn. Comp. R. & Regs. 1200-07-01-.10 of using a strikeout line to change one's name, and with no record of the correction appearing upon the face of the certificate as provided by Tenn. Code Ann. § 68-3-203(f)." (Doc. 59 Prayer for Relief ¶ c).

## STATUTORY AND REGULATORY BACKGROUND

The "Vital Records Act of 1977," Tenn. Code Ann. §§ 68-3-101 - 612, and the regulations promulgated pursuant to that Act, Tenn. Comp. R. & Regs. 1200-07-01-.01 - .15, reflect a comprehensive system of laws and rules addressing Tennessee's system of vital records. That "system of vital records" includes the "registration, collection, preservation, amendment, and certification of vital records, and the collection of other reports required by this chapter." Tenn. Code Ann. § 68-3-102. Under the Act, the Tennessee Department of Health established an office of vital records; makes and amends regulations "necessary for the efficient performance of an adequate system of vital records"; "give[s] instructions and prescribe[s] forms for collecting,

2

transcribing, compiling and preserving vital records"; and enforces the Vital Records Act of 1977 and the regulations made pursuant to the Act. Tenn. Code Ann. § 68-3-103.

The state registrar, who is appointed by the Commissioner of the Tennessee Department of Health and acts as his agent and under his supervision, has specific enumerated powers and duties, including the directives that "the records or other information shall remain the property of the office of vital records," and that "the uses that may be made of the records or other information shall be governed by the state registrar." Tenn. Code Ann. § 68-3-104. The state registrar also has broad authority "to investigate cases of irregularities and violations of law," which he may refer to the district attorney general. Tenn. Code Ann. § 68-3-105(a). Upon request of the Department, the Attorney General "shall likewise assist in the enforcement provisions" of the Act. *Id*.

The kinds of information to be collected and recorded under the Act "shall be such as will aid the public health of the state, and furnish and preserve evidence affecting personal and property rights of the individual citizen." Tenn. Code Ann. § 68-3-201. In that respect, each certificate provided for under the Act, "filed within six (6) months after the recorded event occurred, shall be prima facie evidence of the facts stated in the certificate." Tenn. Code Ann. § 68-3-202. The information necessary to complete each certificate of live birth is provided by "[e]ither parent of the child or any other knowledgeable informant," who "shall attest to the accuracy of the personal data provided in sufficient time to permit the filing of a certificate within the ten (10) days prescribed by §§ 68-3-301 — 68-3-306."

In order to protect the accuracy and integrity of vital records, a certificate or record registered under the Act may be amended only in accordance with the statute and the regulations adopted by the Department. Tenn. Code Ann. § 68-3-203(a). When the state registrar "has

3

reasonable cause to question the validity or adequacy of the applicant's sworn statements or the documentary evidence, and if the deficiencies are not corrected, the state registrar shall not amend the vital record and shall advise the applicant of the reason for this action." Tenn. Code Ann. § 68-3-203(e).[2]

In turn, the regulations governing vital records include Tenn. Comp. R. & Regs. 1200-07-01-.10, "Amendment of Vital Records." Those rules provide various methods for amending certificates, including amendment of minor errors on certificates within the first year. Such minor errors include "obvious errors, transposition of letters in words of common knowledge, or the addition of omitted information." Tenn. Comp. R. & Regs. 1200-07-01-.10(1). The state registrar may, at his discretion, accept an affidavit alone to correct such inaccurate information recorded on a certificate within the first year after the date of the event. *Id.* But all other amendments, unless otherwise provided in the rules or by statute,[3] shall be supported by the documentation described in the rule, as applicable, including an affidavit signed by one of the persons identified in the rules *and* by one or more items of documentary evidence that support the alleged facts and that were created at least five years prior to the date of the application for amendment, or within seven years of the date of the event. Tenn. Comp. R. & Regs. 1200-07-01-.10(2)(a). The state registrar shall evaluate the evidence submitted in support of any amendment and, when he finds reason to doubt

---

[2] In addition to other methods of amending certificates provided by statute or by rule, if an applicant presents the state registrar with "evidence that a reasonable person would conclude proves beyond a reasonable doubt that an original entry on a certificate was *factually inaccurate at the time of recordation*, the state registrar shall block out the misinformation and make the necessary correction." Tenn. Code Ann. § 68-3-203(f) (emphasis added). A record of all evidence submitted, along with the state registrar's analysis of the evidence, shall be maintained by the Office of Vital Records. *Id.*

[3] For example, Tenn. Code Ann. § 68-3-203(d) provides that "[t]he sex of an individual shall not be changed on the original certificate of birth as a result of sex change surgery."

4

its validity or adequacy, "he may reject the amendment and in writing shall advise the applicant of the reasons for this action." Tenn. Comp. R. & Regs. 1200-07-01-.10(2)(b).

In order "to protect the integrity of vital records, to ensure their proper use, and to ensure the efficient and proper administration of the system of vital records, it is unlawful for any person to permit inspection of, or to disclose information contained in, vital records, or to copy or issue a copy of all or part of any such records," except as authorized by the Act, the regulations, as otherwise authorized by law, or by order of a court of competent jurisdiction. Tenn. Code Ann. § 68-3-205(a)(1). Although authenticating document(s) for the events of birth and other events of death, marriage, divorce, or annulment of marriage "shall be considered a public record," without specific statutory grounds only "verified information from such documents may be provided upon request."[4] Tenn. Code Ann. § 68-3-205(d)(2)(A). Certain confidential or medical information is not permitted to be disclosed, unless specifically authorized by the state registrar for statistical or research purposes. "This data is not subject to subpoena or court order and is not admissible before any court or judicial body." *Id*. Nevertheless, except as provided in Tenn. Code Ann. § 68-3-205(d)(2), nothing in subsection (d) shall be construed as altering the legal status as open or confidential of any information, document, record, or report used to compile or produce the information contained on the authenticating document. Tenn. Code Ann. § 68-3-205(d)(3).

## LEGAL ARGUMENT

### I. Standard of Review

In considering a motion to dismiss a complaint under Fed. R. Civ, P. 12(b)(6), the court construes the complaint in the light most favorable to the plaintiff and accepts all well-pleaded

---

[4] Issuance of certified copies or other copies of vital records is governed by Tenn. Code Ann. §§ 68-3-205(d)(2), and 68-3-206.

5

allegations as true. *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003). However, the court is not required to accept legal conclusions couched as factual allegations or a mere recitation of the elements of the cause of action as true. *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

To survive a motion to dismiss under Rule 12(b)(6), the complaint must do more than state a probable legal claim; the allegations on their face must support a factually plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Fritz*, 592 F.3d at 722. A claim is factually plausible "when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct that is alleged." *Iqbal*, 556 U.S. at 678.

The court should dismiss a complaint if it finds that "no relief could be granted under any set of facts that could be proved consistent with the allegations." *Trzebuckowski*, 319 F.3d at 855 (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73(1984)). To survive a motion to dismiss a claim brought under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant acted under color of law, and (2) the defendant's actions deprived the plaintiff of his rights secured under federal law. *Fritz*, 592 F.3d at 722.

## II.    Plaintiffs' Equal Protection Claim Fails As a Matter of Law.

Plaintiffs allege that Tennessee's Birth Certificate Policy "facially and intentionally" discriminates against transgender persons. (Doc. 59 ¶¶ 183-84, 188-189). In short, Plaintiffs claim that the law deprives transgender people, and *only* transgender people, of the right to a birth certificate that accurately reflects their sex. (Doc. 59 ¶ 5).

The Equal Protection Clause "embodies the principle that all persons similarly situated should be treated alike." *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). "The threshold element of an equal protection claim is disparate treatment; once disparate

treatment is shown, the equal protection analysis to be applied is determined by the classification used by government decision-makers." *Id.* The Equal Protection Clause prohibits only intentional discrimination. *Washington v. Davis*, 426 U.S. 229, 239 (1976). "When a facially neutral rule is challenged on equal protection grounds, the plaintiff must show that the rule was promulgated or reaffirmed *because of*, not merely in spite of, its adverse impact on persons in the plaintiff's class." *Horner v. Ky. High Sch. Athletic Ass'n,* 43 F.3d 265, 276 (6th Cir. 1994) (emphasis in original) (citing *Personnel Adm'r v. Feeney*, 442 U.S. 256, 279 (1999)).

For three reasons, Plaintiffs' claim under the Equal Protection Clause must be dismissed. First, Plaintiffs have failed to allege disparate treatment. The applicable statutes and regulations treat transgender and cisgender persons alike with respect to amendment of the sex designation on their birth certificates: the sex designation may be amended only if it was recorded incorrectly at the time of birth. Second, the applicable statutes and regulations are facially neutral and were enacted without a discriminatory purpose. Third, the applicable statutes and regulations satisfy the applicable level of scrutiny.

### A. Plaintiffs fail to allege disparate treatment.

Plaintiffs allege that Tennessee's "Birth Certificate Policy facially and intentionally discriminates based on transgender status by depriving transgender people who were born in Tennessee—and them alone—of a birth certificate that accurately reflects their sex and that is consistent with their gender identity." (Doc. 59 ¶ 184). In other words, Plaintiffs allege that transgender persons are treated differently from cisgender persons because the latter can amend their birth certificates if the sex designation is incorrect, while the former cannot. But this argument is premised entirely on Plaintiffs' erroneous view that the sex designation on a transgender person's birth certificate is "incorrect" if it reflects that person's sex at the time of

birth rather than his or her current gender identity. That erroneous premise is *not* a factual allegation that this Court is required to accept as true. *Fritz*, 592 F.3d at 722.

In fact, the governing statutes and regulations treat transgender and cisgender persons exactly the same with respect to their ability to amend the sex designation on their birth certificates. Both transgender and cisgender persons may amend their birth certificates in the manner sought by Plaintiffs—with no strikethrough or other evidence that an amendment has occurred—only by presenting "evidence that a reasonable person would conclude proves beyond a reasonable doubt that [the] original entry on [the] certificate was factually inaccurate *at the time of recordation*." Tenn. Code Ann. § 68-3-203(f) (emphasis added). What Plaintiffs are seeking is not equal treatment, but rather *more favorable* treatment that would allow transgender persons—and only transgender persons—to amend the sex designation on their birth certificates even though it accurately reflected their sex at birth.[5]

Because Plaintiffs have failed to adequately allege that Tennessee law discriminates against transgender individuals with respect to their ability to amend the sex designation on their birth certificates, Plaintiffs' claim under the Equal Protection Clause necessarily fails. *See Scarbrough*, 470 F.3d at 260 (disparate treatment is the "threshold element" of an equal protection claim).

---

[5] Plaintiffs allege that most other States allow birth certificates to be amended to reflect a person's current gender identity (Doc. 59 ¶ 72), but they fail to mention that no consensus exists as to what showing is necessary to obtain an amendment. Some States require only a doctor's letter confirming a person's current gender identity, while others require evidence of sex change surgery. *See, e.g.*, State-by-State Overview, available at https://transgenderlawcenter.org/resources/id/state-by-stateoverview-changing-gender-markers-on-birth-certficates (last visited June 13, 2019). These varied approaches make clear that whether and in what circumstances to allow amendments to birth certificates to reflect a person's current gender identity are sensitive policy choices best reserved for the State's political branches.

**B.      Tennessee's law is facially neutral and is without discriminatory intent.**

Plaintiffs' allegation that Tennessee's Birth Certificate Policy discriminates against transgender persons on its face appears to rest on Tenn. Code Ann. § 68-3-203(d), part of the Vital Records Act, which prohibits a change in the sex listed on a birth certificate "as a result of sex change surgery." (Doc. 59 ¶ 70). But the mere fact that this provision mentions "sex change surgery" does not mean that it *discriminates*, on its face, against transgender persons. As explained above, neither transgender persons nor cisgender persons may amend the sex designation on their birth certificates unless it was incorrectly recorded at the time of birth. Tennessee Code Annotated § 68-3-203(d) does not subject transgender persons to a different standard; it simply clarifies that the sex that is recorded on a person's birth certificate remains an accurate designation of sex *at the time of birth* even if that person later has a "sex change surgery." Moreover, even if Tenn. Code Ann. § 68-3-203(d) were discriminatory, it would not constitute facial discrimination against transgender persons, but rather persons who have had a "sex change surgery." As Plaintiffs themselves allege, not all transgender persons receive gender-confirming surgery. (Doc 59 ¶¶ 37, 42).

Thus, even if Plaintiffs could establish that the "Birth Certificate Policy" has a disparate impact on transgender persons, their equal protection claim still must be dismissed because Plaintiffs have not adequately alleged discriminatory intent. *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 264-65 (1977). Plaintiffs' conclusory allegation that the "Birth Certificate Policy . . . intentionally" discriminates against transgender persons is wholly inadequate to support an equal protection claim. (Doc. 59 ¶¶ 183-84, 188-89). "[T]he Court need not accept as true legal conclusions or unwarranted factual inferences." *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998).

### C. Tennessee's law survives the applicable level of scrutiny.

Even if Plaintiffs could establish disparate treatment and intentional discrimination, their equal protection claim would still fail because the challenged laws and regulations survive the applicable level of scrutiny.

Plaintiffs urge this Court to assume that transgender persons are a suspect class and therefore to apply heightened scrutiny to their equal protection claim, something that neither the United States Supreme Court nor the Sixth Circuit has done. (Doc. 59 ¶ 186). The Sixth Circuit has held that discrimination based on transgender status is prohibited under Title VII of the Civil Rights Act of 1964, *EEOC v. R.G. & G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560 (6th Cir. 2018) *cert. granted,* 2019 WL 1756679 (U.S. April 22, 2019) (No. 18-107); *Smith v. City of Salem, Ohio,* 378 F. 3d 566 (6th Cir. 2004). But it has never held that transgender persons are a suspect class for purposes of equal protection analysis. *See Davis*, 426 U.S. at 239 (distinguishing between Title VII claims and equal protection claims). Moreover, both *R.G. & G.R. Harris Funeral Homes* and *Smith* concerned discrimination based on sex stereotyping, which is not alleged here. *EEOC*, 884 F.3d at 571; *Smith*, 378 F.3d at 571. Indeed, there is no controlling authority that supports Plaintiffs' bare assertion that transgender persons are part of a protected class for Equal Protection purposes

Therefore, because Plaintiffs are not members of a suspect class, Tennessee's "Birth Certificate Policy" must be reviewed under the rational basis test. *Scarbrough*, 470 F.3d at 261. "Under this test, government action is considered irrational only if it is 'unrelated to the achievement of any combination of legitimate purposes.'" *Id.* (citing *Warren v. City of Athens,* 411 F. 3d 697, 710 (6th Cir. 2005). If there is any "reasonably conceivable state of facts that could provide a rational basis for the classification" then the law must be upheld. *Heller v. Doe*, 509

U.S. 312, 320 (1993) (quoting *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993)). The means chosen by the State does not have to be the best means for achieving the desired result. *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 316 (1976).

Tennessee's statutes and regulations prescribing the circumstances under which the sex designation on a birth certificate may be amended further numerous legitimate government interests. First, the statute governing amendments of vital records explicitly provides that the amendment process is designed "to protect the integrity and accuracy of vital records." Tenn. Code Ann. § 68-3-203(a). Second, the information collected on birth certificates and other vital records "shall be such as will aid the public health of the state." *Id.* § 68-3-201. To that end, the state registrar of vital records is tasked with "preparing and publishing reports of vital statistics of this state and other reports required by the department." *Id.* § 68-3-104(b)(3). This information is provided to approved agencies for purposes including local health planning and programming, *id.* § 68-3-104(b)(6), and is used for research purposes, including legislatively mandated studies of maternal deaths and of suicides. *Id.* §§ 68-3-205(b); 68-3-607; 68-3-703. In other words, Tennessee's Birth Certificate Policy promotes the State's legitimate governmental interests.

Indeed, Tennessee's Birth Certificate Policy is rationally related to these legitimate interests. Because one of the purposes of the Vital Records Act is to collect accurate information for public health and research purposes, it is rational for the State to allow an amendment to the sex designation on a birth certificate only when that designation was inaccurately recorded at the time of birth. As the name suggests, vital records are primarily "records" of past events—not current identification documents. Requiring the State to allow Plaintiffs to amend their birth certificates to reflect their current gender identities—when there is no evidence that their biological

11

sex, as determined by the appearance of external genitalia, was incorrectly recorded at the time of birth—would undermine the State's legitimate interests in maintaining accurate records.[6]

Tennessee's Birth Certificate Policy would also survive the heightened scrutiny that applies to discrimination based on sex, because the interests described above are important and the State's carefully circumscribed amendment process for birth certificates is substantially related to achieving those interests. *Communities for Equity v. Mich. High Sch. Athletic Ass'n*, 459 F.3d 676, 693 (6th Cir. 2006) (internal quotation marks omitted).

## III. Plaintiffs' Substantive Due Process Claims Fail As a Matter of Law.

Plaintiffs make two substantive due process claims: first, that Tennessee's Birth Certificate Policy violates their right to informational privacy (Doc. 59 ¶¶ 199-203); and, second, that the policy violates their right to personal autonomy (Doc. 59 ¶¶ 204-209). Both claims fail as a matter of law and should be dismissed.

### A. Plaintiffs' informational privacy claim fails as a matter of law.

The Supreme Court has assumed that a right to informational privacy exists, but it has never specifically held so. *See NASA v. Nelson*, 562 U.S. 134, 147 (2011) (assuming the "Government's challenged inquiries implicate a privacy interest of a constitutional significance"); *see also id.* at 161 (Scalia, J., concurring) (noting that the Court had made this same assumption in *Whalen v. Roe*, 429 U.S. 589 (1977), and *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425 (1977), and arguing that the Court's "due process precedents, even our 'substantive due process' precedents,

---

[6] Plaintiffs suggest that an accurate determination of sex must consider not only external genitalia but also "[o]ther sex-related characteristics" such as "a person's chromosomal makeup or gender identity," but the criteria to be used to accurately determine a person's biological sex for purposes of recording that information on a birth certificate is a matter of policy for the General Assembly and Department of Health. And the decision to determine a person's biological sex at the time of birth based on external genitalia is hardly irrational or arbitrary.

12

do not support *any* right to informational privacy"). And it has never held that the right was violated. *See Whalen*, 429 U.S. at 591, 597-98, 603-04 (rejecting claim that state law requiring collection of private prescription data violated right to informational privacy because the law's immediate or threatened impact was insufficient "to constitute an invasion of any right or liberty protected by the Fourteenth Amendment"); *Nixon*, 433 U.S. at 455, 458-59, 464-65 (rejecting claim that Presidential Recordings and Materials Preservation Act violated right to informational privacy because, although President had a legitimate expectation of privacy in the materials, the public had a strong interest in accessing them); *NASA*, 52 U.S. at 144, 147, 159 (rejecting claim that background investigation for potential government contractors violated right to informational privacy because inquiries were "reasonable" and privacy interests were protected by nondisclosure requirement).

The Sixth Circuit has "narrowly construed the holdings of *Whalen* and *Nixon* to extend the right to informational privacy only to the interests that implicate a fundamental liberty interest." *Bloch v. Ribar*, 156 F.3d 673, 684 (6th Cir. 1998) (citing *J.P. v. Desanti*, 653 F.2d 1080, 1090 (6th Cir. 1981) and *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1061 (6th Cir. 1998)).[7] The "interest at stake must implicate either a fundamental right or one implicit in the concept of ordered liberty." *Id.* If such an interest exists, then "the government's interest in disseminating the information must be balanced against the individual's interest in keeping the information private." *Id.*

Identifying a new fundamental right for purposes of substantive due process is "an uphill battle" because the list of fundamental rights "is short." *Does v. Munoz*, 507 F.3d 961, 964 (6th

---

[7] As discussed further, *infra.*, the United States District Court for the Southern District of Ohio recently misinterpreted the holdings of both *Bloch* and *Kallstrom* in denying the defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6) in a case involving Ohio's "Birth Certificate Policy" with regard to transgender applicants seeking to amend their Ohio birth certificates. *Ray v. Himes*, No. 2:18-cv-272 (S.D. Ohio Sept. 12, 2019).

Cir. 2007) (quotes and citations omitted). The asserted right must be crafted as a "careful description of the asserted right." *Reno v. Flores*, 507 U.S. 292, 302, (1993); *Munoz*, 507 F.3d at 964.

The Sixth Circuit has identified only two specific situations in which an asserted right to informational privacy implicates a fundamental right: (1) "where the release of personal information could lead to bodily harm (*Kallstrom*)," and (2) "where the information released was of a sexual, personal, and humiliating nature (*Bloch*)." *Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008); *see also Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 586 (6th Cir. 2012).

In *Kallstrom*, the Sixth Circuit held that a city violated the informational privacy rights of undercover officers by releasing their personnel files to attorneys for gang members against whom the officers had testified. 136 F. 3d at 1063. The court explained that, "where the release of private information places an individual at substantial risk of serious bodily harm, possibly even death, from a perceived likely threat" it violates the individual's right to informational privacy because it infringes on that individual's fundamental right to bodily integrity. *Id*. at 1064. That standard was satisfied in *Kallstrom* because the gang at issue was known for its propensity for violence and intimidation. *Id*.

The Sixth Circuit later clarified that *Kallstrom* "created a narrowly tailored right, limited to circumstances where the information disclosed was particularly sensitive and the persons to whom it was disclosed were particularly dangerous *vis-à-vis the plaintiffs*." *Barber v. Overton*, 496 F.3d 449, 456 (6th Cir. 2007) (emphasis in original). It is not simply a generalized fear of violence from the release of personal information, but the release of particularly sensitive information and a fear of violence from a particularly dangerous source that is directed at the plaintiff, which gives rise to a constitutional claim.

In *Bloch*, the Sixth Circuit held that a sheriff violated a rape victim's right to informational privacy by revealing detailed information about the rape—details that the victim had not even shared with her husband—at a press conference. 156 F.3d at 676. The court explained that "a rape victim has a fundamental right of privacy in preventing government officials from gratuitously and unnecessarily releasing the intimate details of the rape where no penalogical [sic] purpose is being served." *Id.* at 686.

In *Lambert*, the Sixth Circuit specifically rejected an approach that would balance a person's reasonable expectation of privacy against the government's interest in releasing the information. 517 F.3d at 442. The court held that a county had not violated the plaintiff's right to informational privacy by posting his speeding ticket, which included personal identifying information, on a county website, because that release of information did not implicate the specific rights identified in *Kallstrom* or *Bloch* or any other right that was fundamental or implicit in the concept of ordered liberty. *Id.* at 435-36, 442-43.

### 1. Plaintiffs' informational privacy claim fails because Defendants have not disclosed Plaintiffs' transgender status.

Plaintiffs' informational privacy claim fails for the simple reason that Defendants have not disseminated information about Plaintiffs' transgender status. Even assuming that disclosure of the sex identifier on Plaintiffs' birth certificates would constitute disclosure of Plaintiffs' transgender status, Plaintiffs do not allege any instance in which Defendants have released copies of Plaintiffs' birth certificates to third parties. To the extent that Plaintiffs' birth certificates are being provided to third parties, it is Plaintiffs themselves who have released that information. (Doc. 59 ¶¶ 54, 93, 113, 138).

15

### 2. Plaintiffs' informational privacy claim fails because they do not allege facts implicating a fundamental right.

Plaintiffs' substantive due process claim based on informational privacy fails as a matter of law because it implicates neither of the specific rights identified by the Sixth Circuit in *Kallstrom* or *Bloch*, nor any other fundamental right. Plaintiffs attempt to shoehorn their informational privacy claim into *Kallstrom* by alleging that "[t]he involuntary disclosure of one's transgender status can . . . cause significant harm, including placing one's personal safety and bodily integrity at risk." (Doc 59 ¶ 201). But these vague references to harm, personal safety, and bodily integrity are easily distinguishable from the concrete threat that existed in *Kallstrom*. Plaintiffs fail to allege that information about their transgender status is being released to any specific individual who is "particularly dangerous *vis-à-vis the plaintiffs*." *Barber*, 496 F.3d at 456. [8]

Plaintiffs also attempt to fit within the right identified in *Bloch* by alleging that a person's transgender status is "highly personal and intimate information," the disclosure of which would be "deeply intrusive." (Doc. 59 ¶ 200). But the specific informational privacy right recognized in *Bloch* concerned "information . . . of a sexual, personal, and humiliating nature" that implicated the fundamental right of privacy in one's sexual and family life. *Lambert*, 517 F.3d at 440-41. Plaintiffs do not allege their transgender status is of a sexual or humiliating nature, only that it is

---

[8] In *Ray*, the District Court erroneously relied upon a generalized fear of violence in the transgender community to support its conclusion that "Plaintiffs' transgender status upon presentation of their birth certificates place their 'personal safety and bodily integrity in jeopardy.'" *Ray*, No. 2:18-cv-00272, Doc. 47 at 19. Although plaintiffs claimed "hostility" at government offices, the only allegation of an actual threat of violence came from a "co-worker," not the human resources employee to whom the plaintiff had disclosed her transgender identity. *Id.* at 20. In any event, Plaintiffs in this case fail to allege any concrete threat of physical violence.

intimate and personal. (Doc. 59 ¶ 200).[9] In any event, a birth certificate does not itself disclose one's transgender status. It simply reports as a historical fact one's biological sex at birth.

Because the Sixth Circuit has narrowed the right to informational privacy to the specific situations identified in *Kallstrom* and *Bloch*, and Plaintiffs' allegations do not satisfy those standards, their substantive due process claim based on informational privacy must be dismissed.

### B. Plaintiffs' personal autonomy claim fails as a matter of law.

Plaintiffs allege that their inability to obtain birth certificates that reflect, respectively, their current gender identity, violates their right to personal autonomy under the Due Process Clause. (Doc. 59 ¶¶ 204-208). But that claim fails a matter of law because the generalized "right to personal autonomy" does not support Plaintiffs' asserted right to obtain birth certificates that reflect their respective current gender identities.

The Supreme Court requires examining "our Nation's history, legal traditions, and practices" to determine whether a substantive due process claim exists. *Washington v. Glucksberg*, 521 U.S. 702, 710, (1997). Substantive due process protection has been afforded to "personal decisions relating to marriage, procreation, contraception, family relationships, child rearing, and education." *Planned Parenthood v. Casey*, 505 U.S. 833, 851 (1992). But just because many rights and liberties sound in personal autonomy, that "does not warrant the sweeping conclusion that any and all important, intimate, and personal decisions are so protected, *San Antonio Independent School Dist.* v. *Rodriguez*, 411 U.S. 1, 33-35 (1973), and *Casey* did not suggest otherwise." *Glucksberg*, 521 U.S. at 727-28.

---

[9] The District Court in *Ray* erroneously analogized the "private and intimate nature of being transgender" to the sexual information that was disclosed in *Bloch*. No. 2:18-cv-00272, Doc. 47 at 24 (alterations omitted). In doing so, the District Court improperly extended the narrow "right to informational privacy" to interests that do not "implicate a fundamental liberty interest." *Lambert*, 517 F.3d at 440 (internal quotation marks omitted).

17

Because neither the Supreme Court nor the Sixth Circuit has recognized a fundamental right to choose one's own gender identity, much less to dictate which sex is listed on one's birth certificate, Plaintiffs' substantive due process claim based on the right to personal autonomy fails as a matter of law and must be dismissed.[10]

## IV. Plaintiffs' First Amendment Claim Fails As a Matter of Law.

Plaintiffs assert that the Birth Certificate Policy violates their First Amendment right "to refrain from speaking by forcing them to identify with a sex that was incorrectly assigned to them at birth," "to disclose their transgender status," and to "endorse the government's position as to their own gender, as well as . . . the meaning of sex generally." (Doc. 59 ¶¶ 214-16). Plaintiffs also allege that the Birth Certificate Policy violates the First Amendment by "prevent[ing] [them] from accurately expressing their gender identity." (Doc. 59 ¶ 214.) All of these claims fail as a matter of law because the sex designation on a birth certificate is government speech, not the private speech of Plaintiffs.[11]

The right of "freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977) (citations omitted). But when "the government speaks, it is not barred . . . from determining the content of what it says." *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 135 S. Ct. 2239, 2245 (2015) (citing *Pleasant Grove City v. Summum*, 555 U.S. 460, 467-68 (2009)). As long as observers would attribute the speech at issue to the

---

[10] Plaintiffs' claim that Defendants have interfered with their ability to "define and express" their gender identity (Doc. 59 ¶ 205) is also belied by Plaintiffs' acknowledgement that Tennessee has allowed them to obtain other identity documents, such as driver's licenses, listing their preferred sex identifier. (Doc. 59 ¶ 6).

government, and not the plaintiff, a plaintiff's compelled-speech claim must be rejected. *See New Doe Child # 1 v. Congress of the United States*, 891 F.3d 578, 593 (6th Cir. 2018).

In *Walker*, the Supreme Court concluded that specialty license plates issued by Texas constituted government speech, not private speech, and on that basis rejected a First Amendment claim that Texas had engaged in viewpoint discrimination in selecting which designs to display on the plates. 135 S. Ct. at 472. The Court reasoned that Texas "select[ed] each design" and then presented them on "government-mandated, government-controlled, and government-issued" plates that had "traditionally been used as a medium for government speech." *Id.* Because the designs were "meant to convey and ha[d] the effect of conveying a government message," they "constitute[d] government speech." *Id.* (internal quotation marks omitted).

The factual information contained on birth certificates likewise constitutes government speech. All records created by the Office of Vital Records are the "property of the office of vital records," and "the uses that may be made of the records or other information" are controlled by the state registrar. Tenn. Code Ann. § 68-3-104(6); *see also* Tenn. Comp. R. & Regs. 1200-07-01.01 ("All forms, certificates, and reports used in the system of vital records are the property of the Department" and "shall be used only for official purposes."). The Department requires that birth certificates be issued, carefully controls the information that is included on them, and issues the certificates. Thus, when a person presents a copy of his or her birth certificate, it is generally understood that the factual information contained on that document—including the sex designation—is attributable to the government. *See Walker*, 135 S. Ct. at 2250.

Because the sex designation on Plaintiffs' birth certificates is government speech, not private speech, requiring Plaintiffs to keep the sex designation that was recorded at birth does not infringe on Plaintiffs' right to refrain from speaking. To the extent the sex designation on the birth

19

certificate conveys a message, it is the message of the government, not of Plaintiffs. Plaintiffs' compelled speech claim thus fails as a matter of law.

Even if the sex designation on Plaintiffs' birth certificates could be considered private speech, the compelled speech claims would still fail because Plaintiffs have not plausibly alleged that Defendants have forced them to present their birth certificates to anyone. Although some Plaintiffs allege that they have had to present their birth certificates to employers or in order to obtain a U.S. passport (Doc. 59 ¶¶ 93, 113), other Plaintiffs avoided presenting their birth certificates to employers by instead presenting a U.S. passport, which may be amended to reflect the passport holder's current gender identity. (Doc. 59 ¶¶73, 163). Indeed, the Amended Complaint readily admits that Plaintiffs can change the gender designation on numerous federal and state identification documents—for example, U.S. Passports, social security documents, driver's licenses, and voter registration cards. (Doc. 59 ¶¶ 73, 74). Many of the situations in which Plaintiffs allege they were required to present their birth certificates could easily have been avoided by obtaining and presenting one of these other identification documents with an amended gender designation. (Doc. 59 ¶¶ 138, 139).

Even the implementing regulations for the REAL ID Act, which established national minimum standards for state identification cards such as driver's licenses, allow an applicant to establish identity by presenting *either* a U.S. passport or a birth certificate. 6 C.F.R. § 37.11(c). Given the widespread acceptance of other documents as proof of identity, Plaintiffs have failed to plausibly allege that they are compelled to share their birth certificates with third parties.

Plaintiffs' claim that the Birth Certificate Policy violates their First Amendment right to express their gender identity also fails as a matter of law. The First Amendment does not guarantee individuals the right to express their views "whenever and however and wherever they please."

*Greer v. Spock*, 424 U.S. 828, 836 (1976) (internal quotation marks omitted). Because birth certificates constitute government speech, Plaintiffs have no First Amendment right to use that medium to express their own views. *See Summum*, 555 U.S. at 467-68 (explaining that the government "has the right to speak for itself" and to "select the views that it wants to express" (internal quotation marks omitted)). Since Plaintiffs lack any First Amendment right to express their gender identities on their respective birth certificates in the first place, denying them the opportunity to amend their birth certificates plainly does not infringe on that right.

## CONCLUSION

For all of the reasons discussed above, all claims in the Amended Complaint should be dismissed.

Respectfully Submitted,

HERBERT H. SLATERY III
Attorney General and Reporter


*s/ Dianna Baker Shew*
DIANNA BAKER SHEW     BPR 012793
Senior Assistant Attorney General
(615) 532-1969
dianna.shew@ag.tn.gov

SARA E. SEDGWICK   BPR 004336
Senior Assistant Attorney General
(615) 532-2589
sara.sedgwick@ag.tn.gov
Attorneys for Defendants
P.O. Box 20207
Nashville, TN 37202

*Counsel for the Defendants*

21

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of March 2020 I filed the foregoing electronically through the Court's CM/ECF System and thereby served the following:

Gavin R. Villareal
Maddy Dwertman
BAKER BOTTS L.L.P.
98 San Jacinto Boulevard, Suite 1500
Austin, TX 78701-4078
Phone: (512) 322-2500
Facsimile: (512) 322-2501
gavin.villareal@bakerbotts.com
maddy.dwertman@bakerbotts.com

Brandt Thomas Roessler
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112-4498
Phone (212) 408-2500
Facsimile: (212) 408-2501
brandt.roessler@bakerbotts.com

Kathryn S. Christopherson
BAKER BOTTS L.L.P.
1001 Page Mill Rd., Bldg. One, Suite 200
Palo Alto, CA 94304-1007
Phone: (650) 739-7500
Facsimile: (650) 739-7699
kathryn.christopherson@bakerbotts.com

Omar Gonzalez-Pagan
LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, NY 10005-3919
Telephone: (212) 809-8585
Facsimile: (212) 809-0055
ogonzalez-pagan@lambdalegal.org

Tara L. Borelli
LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
730 Peachtree Street NE, Suite 640
Atlanta, GA 30318-1210
Telephone: (404) 897-1880
Facsimile: (404) 897-1884
tborelli@lambdalegal.org

Sasha Buchert
LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
1776 K Street NW, Suite 722
Washington, DC 20006
Telephone: (202) 804-6245
sbuchert@lambdalegal.org

*s/ Dianna Baker Shew*
Dianna Baker Shew

22