# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## AT NASHVILLE

| | | |
|---|---|---|
| KAYLA GORE; JAIME COMBS; L.G.; and K.N., | ) ) ) | |
| *Plaintiffs*, | ) ) | |
| v. | ) ) | No. 3:19-cv-00328 |
| WILLIAM BYRON LEE, in his official capacity as Governor of the State of Tennessee; and LISA PIERCEY, in her official capacity as Commissioner of the Tennessee Department of Health, | ) ) ) ) ) ) ) | Judge Eli J. Richardson Magistrate Judge Barbara D. Holmes |
| *Defendants*. | ) | |

---

## DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF MATERIAL FACTS

---

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure and Rule 56.01 of the Local Rules of Court, Defendants respond as follows to Plaintiffs' Statement of Material Facts:

### INTRODUCTION

Rule 56.01 of the Local Rules of Court, consistent with Rule 56(c) of the Federal Rules of Civil Procedure, requires parties filing a motion for summary judgment to file with it "a separate, concise statement of the material facts as to which the moving party contends there is no genuine issue for trial." Local Rule 56.01(b). A fact is "deemed material only if it might affect the outcome of the lawsuit under the governing substantive law." *Barton v. Martin,* 949 F. 3d 938, 947 (6th Cir. 2020) (citing *Baynes v. Cleveland*, 799 F. 3d 600, 607 (6th Cir. 2015). A material fact is one which "would establish or refute an essential element of the cause of action or defense." *Bruederle v. Louisville Metro Gov't*, 687 F. 3d 771, 776 (6th Cir. 2012). In this case, Plaintiffs have filed a Statement of Material Facts in Support of Plaintiffs' Motion for Summary Judgment (Doc. 63)

1

consisting of 99 facts which Plaintiffs assert are material to the outcome in this case. However, Plaintiffs also take the position that theirs is a facial constitutional challenge that "presents issues of law, not fact." (Plaintiffs' Response to Defendants' Motion for Extension of Time to Respond to Motion for Summary Judgment, Doc. 70, PageID #901, at ¶13), stating:

> Plaintiffs have moved for summary judgment that Tennessee's Birth Certificate Policy is unconstitutional on the grounds that the Policy: (1) violates Plaintiffs' fundamental rights and constitutionally-protected liberty interests to informational and decisional privacy, dignity, and autonomy; (2) the Policy deprives Plaintiffs of equal protection afforded by the Fourteenth Amendment; and (3) the Policy infringes upon Plaintiffs' First Amendment right to free speech. Each of these grounds is based on the facial application of Tennessee's Birth Certificate Policy and its effects of Plaintiffs' constitutional rights.

*Id.* Respectfully, not all of the facts stated by Plaintiffs are material, and, as noted below, not all of them are facts. By responding to the statements offered by the Plaintiffs, Defendants are not conceding that any of them are material. In addition, Defendants object to conclusory statements, opinions, and law being offered as "facts."

## RESPONSES

| No. | Fact | Supporting Record Citation |
|---|---|---|
| **I.** | **SEX AND GENDER IDENTITY** | |
| 1. | A person has multiple sex-related characteristics, including hormones, external and internal morphological features, external and internal reproductive organs, chromosomes, and gender identity. These characteristics may not always be in alignment. | Ettner Decl. ¶¶ 18, 20; Taylor Decl. ¶¶ 19, 20, 30. |
| | Response: Undisputed for purposes of this motion. | |
| 2. | Gender identity—a person's core internal sense of their own gender—is the primary factor in determining a person's sex. Every person has a gender identity. | Ettner Decl. ¶¶ 19, 20, 21, 24, 25, 34; Taylor Decl. ¶¶ 21, 30, 42. |

| | | |
|---|---|---|
| | <u>Response:</u> Defendants dispute this statement as the materials cited would not support such a statement.[1] | |
| 3. | There is a medical consensus that gender identity is innate and that efforts to change a person's gender identity are unethical and harmful to a person's health and well-being. | Ettner Decl. ¶¶ 20, 24, 25, 34, 38; Taylor Decl. ¶¶ 21, 28, 29. |
| | <u>Response:</u>  Disputed.  Specifically, Defendants acknowledge that these experts have testified that the "growing assemblage of research" and the "medical community at large" agree that efforts to change a person's gender identity are futile and unethical. Neither expert referred to a "medical consensus." | Ettner Decl. ¶24; Taylor Decl. ¶29 |
| | Dr. Ettner also stated that past efforts to "cure" transgender persons by such means as psychotherapy, aversion treatments or electroshock therapy were ineffective and caused extreme psychological damage. | Ettner Decl ¶25. |
| 4. | Although there is no one definitive factor that determines gender identity, biological factors—most notably the neurodevelopmental characteristics of a person's brain with respect to sex—play a role in gender identity development and cannot be changed. | Ettner Decl. ¶ 24; Taylor Decl. ¶¶ 21-24. |
| | <u>Response:</u>  For purposes of this motion, Defendants do not dispute that no one definitive factor determines gender identity and that it involves biological factors. However, Defendants dispute that either of these experts testified that the "most notabl[e]" biological factor is the neurodevelopmental characteristics of a person's brain with respect to sex.  Dr. Taylor stated only that a "leading explanation for the biological basis of gender identity" is the difference in timing between the development of fetal sexual organs and the sexual differentiation of the fetal brain.  She goes on to state that "[r]arely, this can result in situations where the sexual organs do not match the brain's sexual differentiation."  Dr. Ettner did not address the topic. | Taylor Decl. at 22. |
| 5. | The phrase "sex assigned at birth" refers to the sex recorded on a person's birth certificate at the time of birth. Typically, a person is assigned a sex on their birth certificate solely on the basis of the appearance of | Ettner Decl. ¶¶ 16, 18; Taylor Decl. ¶¶ 18, 19. |

---

[1] Defendants object to each of the many facts offered by Plaintiffs which are not supported by the record citations.  Except as noted, Defendants are not offering contrary facts to raise a dispute, nor need they, where the "facts" do not exist.

| | | |
|---|---|---|
| | external genitalia at the time of birth. Other sex-related characteristics (such as a person's chromosomal makeup and gender identity, for example) are typically not assessed or considered at the time of birth. | |
| | Response:  This first sentence of this statement is not a fact but is simply terminology preferred by Plaintiffs. Sex is *recorded* on a birth certificate at the time of birth. Defendants do not dispute the second sentence of this statement.  Defendants dispute the third sentence as the materials cites do not support this statement. | |
| 6. | External genitalia alone—the critical criterion for assigning sex at birth—is not an accurate proxy for a person's sex. | Ettner Decl. ¶ 17; Taylor Decl. ¶ 18; *see also Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1053 (7th Cir. 2017) ("[I]t is unclear that the sex marker on a birth certificate can even be used as a true proxy for an individual's biological sex. The marker does not take into account an individual's chromosomal makeup, which is also a key component of one's biological sex."). |
| | Response:  Disputed.  Dr. Ettner testified that the appearance of the external genitals at birth is a proxy for sex in the majority of people.  She also stated that assigning sex at birth based upon the appearance of external genitalia turns out to be accurate for most people.  Dr. Taylor testified that "we should continue to use an infant's genitals as a proxy for their sex, as we are unable to have the capacity to do a further diagnostic workup on every individual that's born."

Defendants object to the citation to quoted language from a case in support of Plaintiffs' factual assertion, as it is, at best, hearsay and not capable of being admitted as factual evidence.  Moreover, it does not support their fact as stated, stating only that it is "unclear" that the sex marker on a birth certificate could be used as a "true proxy for an individual's biological sex."

Furthermore, sex is not "assigned" at birth, it is recorded. | Ettner Deposition at 54; Ettner Decl. at ¶16; Taylor Deposition at 23.

Ettner Deposition at 55. |

| | | |
|---|---|---|
| 7. | When there is a divergence between anatomy and identity, one's gender identity is paramount and the primary determinant of an individual's sex designation. | Ettner Decl. ¶ 20; Taylor Decl. ¶¶ 30, 32, 42. |
| | <u>Response:</u>  Defendants dispute this statement to the extent "sex" refers to biological sex, as the materials cited would not support such a statement. | |
| 8. | A transgender person is someone whose gender identity diverges from the sex they were assigned at birth. A transgender man's sex is male (even though he was assigned the sex of female at birth), and a transgender woman's sex is female (even though she was assigned the sex of male at birth). | Ettner Decl. ¶¶ 16, 23; Taylor Decl. ¶¶ 18, 26, 33, 45, 66. |
| | <u>Response:</u>  Disputed to the extent the statement characterizes a person's biological sex as the "sex they were assigned at birth" and conflates the terms "gender identity" and sex."  A transgender man's gender identity is male (even though his biological sex is female), and a transgender woman's gender identity is female (even though her biological sex is male). | |
| 9. | A cisgender person is someone whose gender identity aligns with the sex they were assigned at birth. A cisgender man's sex is male (and was assigned the sex of male at birth), and a cisgender woman's sex is female (and was assigned the sex of female at birth). | Ettner Decl. ¶¶ 21, 22; Taylor Decl. ¶ 18. |
| | <u>Response:</u>  Disputed to the extent the statement characterizes a person's biological sex as the "sex they were assigned at birth" and conflates the terms "gender identity" and sex."  A cisgender man's gender identity and biological sex are male, and a cisgender woman's gender identity and biological sex are female. | |
| 10. | The incongruence between a transgender person's gender identity and sex assigned at birth can sometimes be associated with gender dysphoria. Gender dysphoria is a medical condition recognized in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fifth Ed. (2013) ("DSM-V"), and by the other leading medical and mental health professional groups, including the American Medical Association and the American Psychological Association. | Ettner Decl. ¶¶ 26, 31, 32; Taylor Decl. ¶¶ 34, 35, 37, 38. |

5

| | | |
|---|---|---|
| | Response: Disputed to the extent the statement characterizes a person's biological sex as "sex assigned at birth." The statement is otherwise undisputed. | |
| 11. | Gender dysphoria refers to clinically significant distress that can result when a person's gender identity differs from the person's sex assigned at birth. If left untreated, gender dysphoria may result in psychological distress, anxiety, depression, and suicidal ideation or even self-harm. | Ettner Decl. ¶¶ 26, 28, 29; Taylor Decl. ¶¶ 34, 35, 36. |
| | Response: Disputed to the extent the statement characterizes a person's biological sex as "sex assigned at birth." The statement is otherwise undisputed. | |
| 12. | Treatment of gender dysphoria is usually provided pursuant to the *Standards of Care for the Health of Transsexual, Transgender, and Gender Nonconforming People*, published by the World Professional Association of Transgender Health ("WPATH"). | Ettner Decl. ¶¶ 31, 32; Taylor Decl. ¶¶ 37, 38. |
| | Response: Defendants dispute this statement because the materials cited do not support the statement of fact. Both experts stated that the WPATH standards are medically accepted, and reflect best practices, neither stated that treatment of gender dysphoria is "usually provided" pursuant to those standards. | Ettner Decl. ¶¶ 31, 32; Taylor Decl. ¶¶ 37, 38. |
| 13. | Medical treatment for gender dysphoria must be individualized and tailored to the medical needs of each patient. | Ettner Decl. ¶ 33; Taylor Decl. ¶ 41. |
| | Response: Undisputed for purposes of this motion. | |
| 14. | These treatments do not change a transgender person's sex, which is already determined by their gender identity. Instead, they affirm the authentic gender than an individual person *is.* Attempts to change a person's gender identity in order to bring it into alignment with the person's sex assigned at birth are not only unsuccessful but also dangerous, risking psychological harm and even suicide. | Ettner Decl. ¶¶ 25, 34, 38, 39; Taylor Decl. ¶¶ 39, 42. |
| | Response: Defendants dispute that a person's "sex" is "determined by their gender identity." Because medical treatment for gender dysphoria is tailored to the medical needs of each patient, Defendants also dispute the general claims that these treatments "do not change a transgender person's sex" and "affirm the authentic gender tha[t] an individual person *is.*" The final sentence is undisputed for purposes of this motion | Taylor Decl. ¶ 19. |

| | | |
|---|---|---|
| | except that the reference to suicide is not supported by the provisions of the declarations cited. | |
| 15. | Treatments for gender dysphoria align the transgender person's body and lived experience with the person's sex, as determined by their gender identity. Among the steps that transgender people take to treat their gender dysphoria are: (1) social transition; (2) hormone therapy; and/or (3) gender-affirming surgery. | Ettner Decl. ¶¶ 33, 35-37, 39; Taylor Decl. ¶¶ 41, 43-46. |
| | Response: Defendants dispute that a person's "sex" is "determined by their gender identity." This statement is otherwise undisputed for purposes of this motion. | Taylor Decl. at ¶ 19. |
| 16. | Social transition entails a transgender person living in accordance with the person's gender identity. For example, for a transgender woman, social transition can include, among other actions, changing her first name to a name typically associated with women, no longer using male pronouns, changing her identity documents to indicate a female gender, wearing clothing and adopting grooming habits stereotypically associated with women, and otherwise living as a woman in all aspects of life. | Ettner Decl. ¶ 35; Taylor Decl. ¶ 43. |
| | Response: Undisputed for purposes of this motion. | |
| 17. | Social transition requires that a transgender woman or a transgender man be recognized as a woman or a man, respectively, and treated the same as all other women or men, respectively, by family members, coworkers, and others in the community. | Ettner Decl. ¶¶ 35, 41, 42, 46; Taylor Decl. ¶¶ 43, 44, 49. |
| | Response: Defendants dispute this statement because the references to the experts' declarations do not support the fact asserted. The experts describe the process of social transition, and the desires of the transgender person, but do not state that acceptance by all persons is a requirement of social transition. | |
| 18. | Social transition—which often includes correcting one's identity documents to accurately reflect one's sex—is the most important, and sometimes the only, aspect of transition that transgender people undertake. | Ettner Decl. ¶ 35; Taylor Decl. ¶¶ 43, 44, 58. |
| | Response: Defendants dispute that social transition is the "most important" aspect of transition. Dr. Taylor describes social transition as a "formative aspect" of transition, not the "most important" aspect. This | Taylor Decl. ¶ 43. |

7

| | | |
|---|---|---|
| | statement is otherwise undisputed for purposes of this motion. | |
| 19. | Living in a manner consistent with one's gender identity is critical to the health and well-being of all transgender people. | Ettner Decl. ¶ 36. |
| | Response: Disputed because the material cited does not support this assertion. | |
| 20. | Living in a manner consistent with one's gender identity is also a key aspect of treatment for gender dysphoria for those who suffer from it. | Ettner Decl. ¶¶ 36, 39; Taylor Decl. ¶ 58. |
| | Response: Undisputed for purposes of this motion. | |
| 21. | Having identity documents consistent with one's gender identity is a key aspect of social transitioning for transgender persons and can result in significant improvements in the quality of life, health, and wellbeing of transgender persons. | Ettner Decl. ¶¶ 30, 35-36, 41-42, 47; Taylor Decl. ¶¶ 40, 44, 56, 66. |
| | Response: Undisputed for purposes of this motion. | |
| 22. | By contrast, not having identity documents, such as a birth certificate, consistent with one's gender identity can have negative effects in the quality of life, health, and welfare of transgender persons. | Ettner Decl. ¶¶ 29, 42-45; Taylor Decl. ¶¶ 50-55, 61. |
| | Response: For purposes of this motion, consistent with the material cited, this is undisputed as to some identity documents, but not all identity documents. | |
| 23. | Not every person suffering from gender dysphoria undergoes the same treatment. From a medical and scientific perspective, there is no basis for refusing to acknowledge a transgender person's sex, as determined by their gender identity, based on whether that person has undergone surgery or any other medical treatment. | Ettner Decl. ¶¶ 33, 37; Taylor Decl. ¶¶ 30, 41, 47, 58, 59, 65. |
| | Response: Defendants dispute that a person's "sex" is "determined by their gender identity." The statement is otherwise undisputed for purposes of this motion. | Taylor Decl. ¶19. |
| **II.** | **TRANSGENDER PEOPLE AS A CLASS** | |
| 24. | Transgender people, as a class, exhibit an immutable or distinguishing characteristic that define them as a discrete group. | Ettner Decl. ¶¶ 19, 21-22, 24-25; Taylor Decl. ¶¶ 26, 28-29. |
| | Response: Defendants dispute that transgender people exhibit an immutable or distinguishing characteristic. In her deposition in a previous case, Plaintiffs' expert, Dr. | Ettner Deposition at Exhibit 5, pp. 116-18. |

8

| | | |
|---|---|---|
| | Ettner, testified that she has known transgender persons who "detransitioned" back to living as their sex at birth. In addition, Defendants object to the statement as whole, as the experts cited did not make reference to a "class" of persons, either for purposes of any purported class action status or for purposes of attempting to define transgender persons as a "suspect class." To the extent Plaintiffs or their experts attempt to draw any such legal conclusion, the statement is improper and should be stricken. *F.R.C. Int'l. v. United States*, 278 F. 3d 641,643-44 (6th Cir. 2002) (quoting *A.L. Pickens Co., Inc. v. Youngstown Sheet & Tube Co.*, 650 F. 2d 118, 121 (6th Cir. 1981). | |
| 25. | Transgender people, as a class, represent a small minority. | Taylor Decl. ¶ 27; Gonzalez-Pagan Decl., Ex. J. |
| | <u>Response:</u> For purposes of this motion, Defendants do not dispute that transgender persons represent a minority of persons in the State of Tennessee and in the United States. However, Defendants dispute the statement as whole, as the experts cited did not make reference to a "class" of persons, either for purposes of any purported class action status or for purposes of attempting to define transgender persons as a "suspect class." To the extent Plaintiffs or their experts attempt to draw any such legal conclusion, the statement is improper and should be stricken. *F.R.C. Int'l. v. United States*, 278 F. 3d 641,643-44 (6th Cir. 2002) (quoting *A.L. Pickens Co., Inc. v. Youngstown Sheet & Tube Co.*, 650 F. 2d 118, 121 (6th Cir. 1981). | |
| 26. | Transgender people, as a class, have historically been and continue to be subject to discrimination, violence, and harassment. | Ettner Decl. ¶¶ 44-45; Taylor Decl. ¶¶ 50-51, 53-56; Gonzalez-Pagan Decl., Ex. D; Ex. F; Ex. G; Ex. H. |
| | <u>Response:</u> Disputed because the citations to the expert declarations do not support the statement. In addition, Dr. Taylor, when questioned about the cited statements during her deposition, was unable to support these statements.<br><br>Defendants also dispute the statement as whole, as the experts cited did not make reference to a "class" of persons, either for purposes of any purported class action status or for purposes of attempting to define transgender persons as a "suspect class." To the extent Plaintiffs or their experts attempt to draw any such legal | Taylor Deposition at 29-33, 47-48. |

9

| | | |
|---|---|---|
| | conclusion, the statement is improper and should be stricken. *F.R.C. Int'l v. United States*, 278 F. 3d 641,643-44 (6th Cir. 2002) (quoting *A.L. Pickens Co., Inc. v. Youngstown Sheet & Tube Co.*, 650 F. 2d 118, 121 (6th Cir. 1981). | |
| | Finally, Defendants object to the Plaintiffs' use of Exhibits D, F, G, and H to the Gonzalez-Pagan Declaration to support the statement, as these documents are hearsay and not capable of being presented in a form admissible in evidence. | |
| 27. | Transgender people, as a class, have a defining characteristic that bears no relation to their ability to perform or contribute to society. | Ettner Decl. ¶¶ 22, 29; Taylor Decl. ¶¶ 29, 40; Gonzalez-Pagan Decl., Ex. I at 4. |
| | <u>Response:</u> Disputed because the material cited does not support this statement. Defendants also dispute the statement as whole, as the experts cited did not make reference to a "class" of persons, either for purposes of any purported class action status or for purposes of attempting to define transgender persons as a "suspect class." To the extent Plaintiffs or their experts attempt to draw any such legal conclusion, the statement is improper and should be stricken. *F.R.C. Int'l. v. United States*, 278 F. 3d 641,643-44 (6th Cir. 2002) (quoting *A.L. Pickens Co., Inc. v. Youngstown Sheet & Tube Co.*, 650 F. 2d 118, 121 (6th Cir. 1981).<br><br>Finally, Defendants object to Plaintiffs' use of Exhibit I to the Gonzalez-Pagan Declaration to support the statement, as the document is hearsay and not capable of being presented in a form that would be admissible in evidence. Defendants also object because the document cited does not support the statement. | |
| 28. | Transgender people, as a class, have relatively little political power. | *See*, *e.g.*, Gonzalez-Pagan Decl., Ex. K. |
| | <u>Response:</u> Defendants object to Plaintiffs' use of Exhibit K to the Gonzalez-Pagan Declaration to support the statement, as the document is hearsay and not capable of being presented in a form admissible in evidence. Defendants also object because the document cited does not support the statement. It discusses proposed legislation from 2017, some of which did not pass or was predicted to fail.<br><br>Defendants also dispute the statement as whole, as the experts cited did not make reference to a "class" of | |

10

| | | |
|---|---|---|
| | persons, either for purposes of any purported class action status or for purposes of attempting to define transgender persons as a "suspect class." To the extent Plaintiffs or their experts attempt to draw any such legal conclusion, the statement is improper and should be stricken. *F.R.C. Int'l. v. United States*, 278 F. 3d 641,643-44 (6th Cir. 2002) (quoting *A.L. Pickens Co., Inc. v. Youngstown Sheet & Tube Co.*, 650 F. 2d 118, 121 (6th Cir. 1981). | |
| **III.** | **PLAINTIFFS** | |
| 29. | Plaintiffs are four transgender persons who wish to amend their Tennessee birth certificates to accurately reflect their gender identity. | Declaration of Kayla Gore ("Gore Decl.") ¶¶ 5, 23; Declaration of Jaime Combs ("Combs Decl.") ¶¶ 6, 22; Declaration of L.G. ¶¶ 7, 25; Declaration of K.N. ¶¶ 5, 22. |
| | Response: Undisputed for purposes of this motion. | |
| | *Plaintiff Kayla Gore* | |
| 30. | Plaintiff Kayla Gore is a 34-year-old woman who was born and currently resides in Memphis, Tennessee. | Gore Decl. ¶¶ 2, 4. |
| | Response: Undisputed. | |
| 31. | At birth, Ms. Gore was incorrectly designated "male" on her birth certificate, even though she is, in fact, a woman. | Gore Decl. ¶¶ 4, 5. |
| | Response: Disputed. The materials cited do not support the statement that Plaintiff was incorrectly identified as "male" at the time her birth certificate was completed. | |
| 32. | Ms. Gore is transgender. | Gore Decl. ¶ 5. |
| | Response: Undisputed. | |
| 33. | Ms. Gore has undergone medical treatment for gender dysphoria. | Gore Decl. ¶ 10. |
| | Response: Undisputed. | |
| 34. | Ms. Gore's gender identity and expression is female (she looks, dresses, and expresses herself as a woman). | Gore Decl. ¶¶ 6, 8, 9, 10. |
| | Response: Undisputed for purposes of this motion. | |
| 35. | Ms. Gore has aligned her body characteristics, appearance, and lived experience with her female gender identity. | Gore Decl. ¶¶ 10, 11, 12. |

| | | |
|---|---|---|
| | Response: Undisputed for purposes of this motion. | |
| 36. | Ms. Gore has changed her name and corrected the gender marker on her state identification card and Social Security records. | Gore Decl. ¶¶ 11, 12. |
| | Response: Undisputed. | |
| 37. | Because Tennessee's Birth Certificate Policy makes it impossible for Ms. Gore to correct the gender marker on her birth certificate, she considers it futile to correct her name on her birth certificate, as the document would still be incongruent with her other identification documents. | Gore Decl. ¶ 15. |
| | Response: Disputed. Ms. Gore testified that she has applied to have her name changed on her birth certificate but has not received a response to that application. | Gore Deposition at 19-20. |
| 38. | Ms. Gore wishes to correct the gender marker on her birth certificate to accurately reflect her identity as a woman, as determined by her gender identity. | Gore Decl. ¶ 23. |
| | Response: Defendants dispute that Ms. Gore could "correct" her birth certificate since it was not incorrect as created. For purposes of this motion, it is not disputed that Ms. Gore wishes to change the sex field on her birth certificate. | |
| 39. | Ms. Gore's birth certificate does not reflect her true identity, is incongruent with her female identity and expression, and conflicts with her other identification documents. | Gore Decl. ¶¶ 14, 15. |
| | Response: Disputed to the extent that "true identity" is used to mean "gender identity." The statement is otherwise undisputed for purposes of this motion. | |
| **Plaintiff Jaime Combs** | | |
| 40. | Plaintiff Jaime Combs is a 51-year old woman who was born in Elizabethton, Tennessee and currently resides in Nashville, Tennessee. | Combs Decl. ¶¶ 3, 5. |
| | Response: Undisputed. | |
| 41. | At birth, Ms. Combs was incorrectly designated "male" on her birth certificate, even though she is, in fact, a woman. | Combs Decl. ¶¶ 5, 6. |

12

| | | |
|---|---|---|
| | Response: Disputed. The materials cited do not support the statement that Plaintiff was incorrectly identified as "male" at the time her birth certificate was completed. | |
| 42. | Ms. Combs is transgender. | Combs Decl. ¶ 6. |
| | Response: Undisputed. | |
| 43. | Ms. Combs's gender identity is female (she looks, dresses, and expresses herself as a woman). | Combs Decl. ¶¶ 5, 6, 7, 8, 10. |
| | Response: Undisputed for purposes of this motion. | |
| 44. | Ms. Combs has aligned her body characteristics, appearance, and lived experience with her female gender identity. | Combs Decl. ¶¶ 9-11. |
| | Response: Undisputed for purposes of this motion. | |
| 45. | Ms. Combs has changed her name and corrected the gender marker on her driver's license, Social Security records, and passport. | Combs Decl. ¶¶ 9, 11. |
| | Response: Undisputed. | |
| 46. | Because Tennessee's Birth Certificate Policy makes it impossible for Ms. Combs to correct the gender marker on her birth certificate, Ms. Combs' birth certificate is incongruent with her other identification documents. | Combs Decl. ¶ 13. |
| | Response: For purposes of this motion, it is undisputed that Tennessee law does not permit Ms. Combs to change the sex which was recorded on her birth certificate at the time of her birth. | |
| 47. | Ms. Combs wishes to correct the gender marker on her birth certificate to accurately reflect her identity as a woman, as determined by her gender identity. | Combs Decl. ¶ 22. |
| | Response: Defendants dispute that Ms. Combs could "correct" her birth certificate since it was not incorrect as created. For purposes of this motion, it is not disputed that Ms. Combs wishes to change the sex field on her birth certificate. | |
| 48. | Ms. Combs's birth certificate does not reflect her true identity, is incongruent with her female identity and expression, and conflicts with her other identification documents. | Combs Decl. ¶¶ 13, 14, 20, 21. |
| | Response: Disputed to the extent that "true identity" is used to mean "gender identity." The statement is otherwise undisputed for purposes of this motion. | |

13

| | **Plaintiff L.G.** | |
|---|---|---|
| 49. | Plaintiff L.G. is a 31-year-old woman who was born in Tennessee and currently resides in Kentucky. | L.G. Decl. ¶¶ 2, 6. |
| | <u>Response:</u> Undisputed. | |
| 50. | At birth, L.G. was incorrectly designated "male" on her birth certificate, even though she is, in fact, a woman. | L.G. Decl. ¶ 7. |
| | <u>Response:</u> Disputed. The materials cited do not support the statement that Plaintiff was incorrectly identified as "male" at the time her birth certificate was completed. | |
| 51. | L.G. is transgender. | L.G. Decl. ¶ 7. |
| | <u>Response:</u> Undisputed. | |
| 52. | L.G.'s gender identity is female (she looks, dresses, and expresses herself as a woman). | L.G. Decl. ¶¶ 6, 10-12. |
| | <u>Response:</u> Undisputed for purposes of this motion. | |
| 53. | L.G. has been diagnosed with and undergone medical treatment for gender dysphoria. | L.G. Decl. ¶ 11. |
| | <u>Response:</u> Undisputed. | |
| 54. | L.G. has aligned her body characteristics, appearance, and lived experience with her female gender identity. | L.G. Decl. ¶¶ 10, 11, 12, 14, 16. |
| | <u>Response:</u> Undisputed for purposes of this motion. | |
| 55. | L.G. has changed her name and corrected her gender marker on her driver's license and Social Security records. | L.G. Decl. ¶¶ 14, 16. |
| | <u>Response:</u> Undisputed. | |
| 56. | L.G. has changed the name on her birth certificate but has been prevented from correcting the gender marker on her birth certificate by Tennessee's Birth Certificate Policy. | L.G. Decl. ¶¶ 16, 17. |
| | <u>Response:</u> It is undisputed for purposed of this motion that L.G. has changed the name on her birth certificate, and that Tennessee law does not permit her to change the sex recorded at the time of birth on her birth certificate. | |
| 57. | L.G. wishes to change the gender marker on her birth certificate to accurately reflect her identity as a woman, as determined by her gender identity. | L.G. Decl. ¶ 25. |
| | <u>Response:</u> Defendants dispute that L.G. could "correct" her birth certificate since it was not incorrect as created. | |

14

| | For purposes of this motion, it is not disputed that L.G. wishes to change the sex field on her birth certificate. | |
|---|---|---|
| 58. | L.G.'s birth certificate does not reflect her true identity, is incongruent with her female identity and expression, and conflicts with her other identification documents. | L.G. Decl. ¶¶ 17, 18, 23, 24. |
| | Response: Disputed to the extent that "true identity" is used to mean "gender identity." The statement is otherwise undisputed for purposes of this motion. | |
| 59. | L.G.'s transgender status is not publicly known, including not being known by any of her current co-workers. | L.G. Decl. ¶ 13. |
| | Response: Disputed. L.G. testified that her mother, her siblings, and at least one former work colleague know that she is a transgender woman, as well as "some of my classmates and immediate cohorts, the professors and director of admissions" at the institution she currently attends. | L.G. Deposition at 26-27. |
| | **Plaintiff K.N.** | |
| 60. | Plaintiff K.N. is a 31-year-old woman who was born in Tennessee and currently resides in California. | K.N. Decl. ¶¶ 2, 4. |
| | Response: Undisputed. | |
| 61. | At birth. K.N. was incorrectly designated "male" on her birth certificate, even though she is, in fact, a woman. | K.N. Decl. ¶ 5. |
| | Response: Disputed. The materials cited do not support the statement that Plaintiff was incorrectly identified as "male" at the time her birth certificate was completed. | |
| 62. | K.N. is transgender. | K.N. Decl. ¶ 5. |
| | Response: Undisputed. | |
| 63. | K.N. has been diagnosed with gender dysphoria. | K.N. Decl. ¶ 7. |
| | Response: Undisputed for purposes of this motion. | |
| 64. | K.N.'s gender identity is female (she looks, dresses, and expresses herself as a woman). | K.N. Decl. ¶¶ 4-8. |
| | Response: Undisputed for purposes of this motion. | |
| 65. | K.N. has aligned her body characteristics, appearance, and lived experience with her female gender identity. | K.N. Decl. ¶¶ 7-11. |
| | Response: Undisputed for purposes of this motion. | |

15

| 66. | K.N. has changed her name and corrected the gender marker on her driver's license, Social Security records, and passport. | K.N. Decl. ¶¶ 10, 11. |
|---|---|---|
| | Response: Undisputed. | |
| 67. | Because Tennessee's Birth Certificate Policy makes it impossible for K.N. to correct the gender marker on her birth certificate, K.N.'s birth certificate is incongruent with her other identification documents. | K.N. Decl. ¶ 16. |
| | Response: For purposes of this motion, it is undisputed that Tennessee law does not permit K.N to change the sex which was recorded on her birth certificate at the time of her birth. | |
| 68. | K.N. wishes to correct the gender marker on her birth certificate to accurately reflect her identity as a woman, as determined by her gender identity. | K.N. Decl. ¶ 22. |
| | Response: Defendants dispute that K.N. could "correct" her birth certificate since it was not incorrect as created. For purposes of this motion, it is not disputed that K.N. wishes to change the sex field on her birth certificate. | |
| 69. | K.N.'s birth certificate does not reflect her true identity, is incongruent with her female identity and expression, and conflicts with her other identification documents. | K.N. Decl. ¶¶ 16, 18, 21. |
| | Response: Disputed to the extent that "true identity" is used to mean "gender identity." The statement is otherwise undisputed for purposes of this motion. | |
| **IV. TENNESSEE'S BIRTH CERTIFICATE POLICY** | | |
| 70. | Tennessee birth certificates include, *inter alia*, the given name and surnames of the newborn child, the date of birth, the names of the child's parents, and the sex of the child. | *See, e.g.*, Tenn. Code Ann. § 68-3-311(b)(2); *see also* Gonzalez-Pagan Decl., Ex. B (RFA No. 21). |
| | Response: Defendants object as the cited materials do not support the statement. In addition, Defendants object because the requirements for Tennessee birth certificates are a function of state law. To the extent Plaintiffs attempt to state a legal conclusion, the statement is improper and should be stricken. *F.R.C. Int'l. v. United States*, 278 F. 3d 641,643-44 (6th Cir. 2002) (quoting *A.L. Pickens Co., Inc. v. Youngstown Sheet & Tube Co.*, 650 F. 2d 118, 121 (6th Cir. 1981). | |
| 71. | It is the practice of the State of Tennessee, for purposes of determining the sex designation on birth certificates, | *See* Defs.' Mem. Mot. to Dismiss (ECF No. 29) at 11- |

16

| | | |
|---|---|---|
| | to rely solely on the observations by third parties about the external genitalia of newborns. | 12 & n.6; *cf.* Gonzalez-Pagan Decl., Ex. B (RFA No. 21). |
| | <u>Response:</u>  Defendants object because the materials cited do not support this statement. | |
| 72. | In his official capacity as Governor of Tennessee, Defendant William Byron Lee executes the laws of the State, including The Vital Records Act of Tennessee (the "Vital Records Act"), and supervises the implementation and enforcement of the Vital Records Act.  Governor Lee has the power to appoint the Commissioner of the Department of Health for the State of Tennessee, who serves at the pleasure of the governor. | *See* Tenn. Code Ann. § 68-1-102. |
| | <u>Response:</u>  Defendants object because the material cited does not support the statement in the first sentence above.  In addition, the statement is not one of fact, but is a legal conclusion.  Therefore, the statement is improper and should be stricken.  *F.R.C. Int'l. v. United States*, 278 F. 3d 641,643-44 (6th Cir. 2002) (quoting *A.L. Pickens Co., Inc. v. Youngstown Sheet & Tube Co.*, 650 F. 2d 118, 121 (6th Cir. 1981). | |
| 73. | In her official capacity as Commissioner of the Tennessee Department of Health, Defendant Lisa Piercey supervises the activities of the Department and enforces Tennessee's vital records laws, including the Vital Records Act. | *See* Tenn. Code Ann. §§ 68-3-104. |
| | <u>Response:</u>  Defendants object because the material cited does not support the statement except by reference to general supervisory authority.  In addition, the statement is not one of fact, but is a legal conclusion.  Therefore, the statement is improper and should be stricken.  *F.R.C. Int'l. v. United States*, 278 F. 3d 641,643-44 (6th Cir. 2002) (quoting *A.L. Pickens Co., Inc. v. Youngstown Sheet & Tube Co.*, 650 F. 2d 118, 121 (6th Cir. 1981). | |
| 74. | The Tennessee Department of Health, which includes the Office of Vital Records, exercises responsibility for the registration, issuance, correction, and changes to Tennessee birth certificates. | *See* Tenn. Code Ann. § 68-3-103. |
| | <u>Response:</u> Defendants object because the material cited does not support the statement except by reference to general authority.  In addition, the statement is not one of fact, but is a legal conclusion.  Therefore, the statement is improper and should be stricken.  *F.R.C.* | |

17

| | | |
|---|---|---|
| | *Int'l. v. United States*, 278 F. 3d 641,643-44 (6th Cir. 2002) (quoting *A.L. Pickens Co., Inc. v. Youngstown Sheet & Tube Co*., 650 F. 2d 118, 121 (6th Cir. 1981). | |
| 75. | Recognizing that the information in a birth certificate may sometimes be inaccurate or need updating, the Vital Records Act and the regulations promulgated and enforced by Defendants permit the correction of errors on and updating of birth certificate records. | *See* Tenn. Code Ann. § 68-3-203; Tenn. Comp. R. & Regs. 1200-07-01-.10; *see also* |
| | Response:  Defendants object because the statement is not one of fact but is a legal conclusion.  Therefore, the statement is improper and should be stricken.  *F.R.C. Int'l. v. United States*, 278 F. 3d 641,643-44 (6th Cir. 2002) (quoting *A.L. Pickens Co., Inc. v. Youngstown Sheet & Tube Co*., 650 F. 2d 118, 121 (6th Cir. 1981). | |
| 76. | For example, in cases which a person has lawfully changed their name, such person may present a duly authenticated copy of the court order changing their name and request an amended certificate of birth. | Tenn. Comp. R. & Regs. 1200-07-01-.10 |
| | Response:  Defendants object because this statement does not accurately describe the law.  Defendants also object because the statement is not one of fact but is a legal conclusion.  Therefore, the statement is improper and should be stricken.  *F.R.C. Int'l. v. United States*, 278 F. 3d 641,643-44 (6th Cir. 2002) (quoting *A.L. Pickens Co., Inc. v. Youngstown Sheet & Tube Co*., 650 F. 2d 118, 121 (6th Cir. 1981). | |
| 77. | Similarly, following the adoption of a child, a new birth certificate reflecting only the names of the adoptive parents and the new name of the adopted child must be substituted for the original registered birth certificate. The original registration certificate of the birth of the adoptee, decree of adoption, and other documents are kept under seal and can only be opened upon a court order or upon a directive from the Tennessee Department of Children's Services. | Tenn. Comp. R. & Regs. 1200-07-01-.04 |
| | Response:  Defendants object because this statement does not accurately describe the law.  Defendants also object because the statement is not one of fact but is a legal conclusion.  Therefore, the statement is improper and should be stricken.  *F.R.C. Int'l. v. United States*, 278 F. 3d 641,643-44 (6th Cir. 2002) (quoting *A.L. Pickens Co., Inc. v. Youngstown Sheet & Tube Co*., 650 F. 2d 118, 121 (6th Cir. 1981). | |

18

| | | |
|---|---|---|
| 78. | Pursuant to Tenn. Comp. R. & Regs. 1200-07-01-.10, and as documented on the public website for the Office of Vital Records, the sex listed on a person's birth certificate may be corrected if the change is substantiated by (1) a signed and notarized affidavit showing the full name, date of birth, the sex as it is shown on the certificate and the sex as it should be correctly listed, and (2) documentary evidence showing the correct sex of the individual. | *See* Tenn. Comp. R. & Regs. 1200-07-01-.10; Gonzalez-Pagan Decl., Ex. C at 3. |
| | Response:  For purposes of this motion, Defendants do not dispute that Exhibit C from the Gonzalez-Pagan Declaration is part of the public website for the Office of Vital Records.  The remainder of this statement is not one of fact but is a legal conclusion.  Therefore, the statement is improper and should be stricken.  *F.R.C. Int'l. v. United States*, 278 F. 3d 641,643-44 (6th Cir. 2002) (quoting *A.L. Pickens Co., Inc. v. Youngstown Sheet & Tube Co.*, 650 F. 2d 118, 121 (6th Cir. 1981). | |
| 79. | The original bills for the Vital Records Act of 1977 (House Bill 425 and Senate Bill 162) expressly authorized the amendment of the sex designation on Tennessee-issued birth certificates following "sex change surgery." | Gonzalez-Pagan Decl., Ex. L, Ex. M. |
| | Response:  Undisputed for purposes of this motion. | |
| 80. | The bills for the Vital Records Act of 1977 (House Bill 425 and Senate Bill 162) were amended on the floor of the legislature to expressly prohibit amendments to the sex designation on Tennessee-issued birth certificates in response to "controversy" at the time. | Gonzalez-Pagan Decl., Ex. N at 6-7, Ex. O at 5, Ex. M. |
| | Response:  Undisputed for purposes of this motion. | |
| 81. | As a result, the Vital Records Act provides, in part, that "[t]he sex of an individual shall not be changed on the original certificate of birth as a result of sex change surgery." | Tenn. Code Ann. § 68-3-203(d). |
| | Response:  Defendants object because the statement is not one of fact but is a legal conclusion.  Therefore, the statement is improper and should be stricken.  *F.R.C. Int'l. v. United States*, 278 F. 3d 641,643-44 (6th Cir. 2002) (quoting *A.L. Pickens Co., Inc. v. Youngstown Sheet & Tube Co.*, 650 F. 2d 118, 121 (6th Cir. 1981). | |
| 82. | Based on this provision, Defendants enforce a policy, custom, or practice that categorically prohibits transgender persons born in Tennessee from correcting | *See* Defs.' Mem. Mot. to Dismiss (ECF No. 29) at 7-8 & n.5; *see also*, *e.g.*, Tenn. |

| | | |
|---|---|---|
| | the sex listed on their birth certificates so that it matches their sex, consistent with their gender identity, regardless of what steps such persons have taken to live in a manner consistent with their gender identity. | Op. Att'y Gen. No. 14-70, 2014 WL 3700672 (July 16, 2014) (designation of sex on police booking sheets, warrants and other court records must match birth certificate, regardless of gender-confirming surgery); Tenn. Op. Att'y Gen. No. 88-43, 1988 WL 410159 (Feb. 29, 1988) (person's sex determined at birth for purposes of obtaining Tennessee marriage license). |
| | Response:  Disputed.  The provision cited by Plaintiffs pertains to persons who have had sex change surgery.  This provision is not limited to transgender persons and does not describe all transgender persons.

In addition, Defendants dispute that "sex" and "gender identity" are the same thing. | Taylor Decl. ¶ 19. |
| 83. | Furthermore, Tennessee typically requires birth certificates to show a strike-out line through any information corrected, such as when instituting name changes on birth certificates. | Tenn. Comp. R. & Regs. 1200-07-01-.10(a)(2). |
| | Response:  This statement appears to cite Tenn. Comp. R. & Regs. 1200-07-01-.10 (11)(a)(2).  Defendants object because the statement does not accurately describe the regulation which provides that the original corrected entry may be blocked if ordered by a court or required by statute.  Defendants also object because the statement is not one of fact but is a legal conclusion.  Therefore, the statement is improper and should be stricken.  *F.R.C. Int'l. v. United States*, 278 F. 3d 641,643-44 (6th Cir. 2002) (quoting *A.L. Pickens Co., Inc. v. Youngstown Sheet & Tube Co.*, 650 F. 2d 118, 121 (6th Cir. 1981) | Tenn. Comp. R. & Regs. 1200-07-01-.10(11)(a)(2). |
| 84. | Taken in conjunction, these applications of the Vital Records Act by Defendants constitute the Birth Certificate Policy challenged by Plaintiffs. | Gore Decl. ¶ 13; Combs Decl. ¶ 12; K.N. Decl. ¶ 14; L.G. Decl. ¶ 25. |
| | Response:  Defendants object because the materials cited do not support this statement.  In addition, the statement is simply a definition used by Plaintiffs, in various ways, in various filings. | |

20

| 85. | The Model State Vital Statistics Act, published by the National Center for Health Statistics, expressly authorizes the amendment of the sex designation on birth certificates in a manner consistent with a transgender person's gender identity. | Gonzalez-Pagan Decl., Ex. Q at 10; *see also* Gonzalez-Pagan Decl., Ex. B (RFA No. 7). |
|---|---|---|
| | Response:  Disputed.  The Model State Vital Statistics Act, as cited by Plaintiffs, allows the amendment of sex only [u]pon receipt of a certified copy of an order of (a court of competent jurisdiction) indicating the sex of an individual born in the State has been changed by a surgical procedure…."  Defendants' responses to Plaintiffs' requests for admissions, also cited by Plaintiffs, note this. | |
| 86. | Tennessee's Birth Certificate Policy is inconsistent with the Model State Vital Statistics Act. | Gonzalez-Pagan Decl., Ex. B (RFA Nos. 7, 9). |
| | Response:  Disputed.  As noted in the cited materials, the Model State Vital Statistics Act is, by its own account, "guidance" only.  Tennessee statutory and regulatory law, in many respects, contains the same or similar language to the Model Act. | |

| V. | OTHER TENNESSEE POLICIES REGARDING IDENTITY DOCUMENTS | |
|---|---|---|
| 87. | Tennessee permits transgender persons to correct the sex designation on their drivers' licenses in a manner consistent with their gender identity. | Gore Decl. ¶ 12; Combs Decl. ¶¶ 11, 17; Gonzalez-Pagan Decl., Ex. B (RFA No. 5); Tenn. Comp. R. & Regs. 1340-01-13-.12(6). |
| | Response:  Undisputed for purposes of this motion. | |
| 88. | The State of Tennessee requires persons, in a variety of contexts, to produce their birth certificates to access and enjoy a host of government benefits and to participate in public and private life. | *See, e.g.*, Tenn. Code Ann. § 4-58-103(c)(2) (food stamps); Tenn. Code Ann. § 50-1-703(a)(1)(B) (employers to keep some proof of citizenship on file for their employees); Tenn. Comp. R. & Regs. § 0770-01-05-.13(2)(a) (housing assistance); Tenn. Comp. R. & Regs. § 0450-01-.05 (requiring presentation of birth certificate for application as licensed clinical counselor); *see also* Gonzalez-Pagan Decl., Ex. B (RFA No. 11) ("Defendants |

| | | admit that some Tennessee statutes and regulations may contemplate the use of birth certificates as personal identification documents."). |
|---|---|---|
| | **Response:** Disputed. Except for the requirements for licensure as a licensed clinical counselor, all of the other authorities cited permit a variety of documents to be used. A birth certificate is only one of the list of acceptable documents. Defendants object because the citation to Exhibit B to the Gonzalez-Pagan Declaration does not support this statement. Finally, Defendants object because this statement is not factual, but states a legal conclusion. Therefore, the statement is improper and should be stricken. *F.R.C. Int'l. v. United States*, 278 F. 3d 641,643-44 (6th Cir. 2002) (quoting *A.L. Pickens Co., Inc. v. Youngstown Sheet & Tube Co.*, 650 F. 2d 118, 121 (6th Cir. 1981). | |

| | **VI.  THE HARMS INFLICTED UPON TRANSGENDER PERSONS, INCLUDING PLAINTIFFS, BY THE BIRTH CERTIFICATE POLICY** | |
|---|---|---|
| 89. | Being unable to correct the gender marker on one's identity documents, including one's birth certificate, means that transgender people are forced to display documents that indicate their birth-assigned sex (typically assumed based only upon the appearance of genitalia at birth), rather than their actual sex as determined by their gender identity and their lived experience. This discordance creates a myriad of deleterious social and psychological consequences. | Ettner Decl. ¶ 40; Taylor Decl. ¶¶ 50, 52. |
| | **Response:** Disputed. As discussed in response to #88, above, transgender persons would often have the option to present other documentation such as a driver's license or passport. Defendants also dispute this statement because Dr. Taylor's Declaration, cited above, does not support this statement.<br><br>In addition, Defendants dispute that a person's "sex" is "determined by their gender identity and their lived experience." "Sex" and "gender identity" are distinct terms. | Taylor Decl. ¶ 19 |
| 90. | The inability access identity documents, such as birth certificates, that accurately reflect one's sex is harmful and exacerbates gender dysphoria, kindling shame and amplifying fear of exposure, as the *sine qua non* of the | Ettner Decl. ¶¶ 39, 42, 43, 46; Taylor Decl. ¶ 44, 52. |

| | | |
|---|---|---|
| | gender dysphoria diagnosis is the desire to be regarded in accordance with one's true sex as determined by one's gender identity. | |
| | Response: Defendants dispute that a person's "true sex" is "determined by one's gender identity." This statement is otherwise undisputed for purposes of this motion. | Taylor Decl. ¶ 19 |
| 91. | The forced disclosure of the transgender status of Plaintiffs and other transgender persons by way of an inaccurate birth certificate exposes them to prejudice, discrimination, distress harassment, and violence. | Ettner Decl. ¶¶ 42, 43; Taylor Decl. ¶ 51, 53-55; Gore Decl. ¶ 20; Combs Decl. ¶¶ 15, 17; L.G. Decl. ¶¶ 16, 20; K.N. Decl. ¶ 20 . |
| | Response: This statement is undisputed for purposes of this motion only as it pertains to ¶ 20 of Plaintiff L.G.'s Declaration. Defendants otherwise object to this statement because it is not supported by the materials cited. In addition, Dr. Taylor, when questioned about the cited statements during her deposition, was unable to support these statements. | Taylor Deposition at 29-33, 47-48. |
| 92. | Having a birth certificate incorrectly identifying the sex of a transgender person is also a significant barrier to their ability to function successfully as their true self in seeking employment and volunteer opportunities, and gaining access to other private and public services, entitlements, and benefits. | See, e.g., Taylor Decl. ¶¶ 50, 51, 53-55, 61; Gore Decl. ¶ 20; Combs Decl. ¶ 18; L.G. Decl. ¶ 20; K.N. Decl. ¶ 20. |
| | Response: This statement is undisputed for purposes of this motion only as it pertains to ¶ 20 of Plaintiff L.G.'s Declaration. Defendants otherwise dispute this statement as the materials cited do not support this broad conclusion. In addition, the cited material from Dr. Taylor's Declaration does not support the statement and when questioned about the cited statements during her deposition, Dr. Taylor was unable to support these statements. | Taylor Deposition at 29-33, 47-48. |
| 93. | For example, Ms. Gore has been outed as a transgender woman to several employers and subjected to invasive personal questions when she has had to present her birth certificate with the incorrect gender marker. Knowing that she would have to present an inaccurate birth certificate has dissuaded Ms. Gore from applying for jobs and resuming her education, because doing so would force her to disclose her transgender status. | Gore Decl. ¶ 20. |

| | | |
|---|---|---|
| | <u>Response:</u>  Disputed.  During her deposition, Ms. Gore listed only two employers to whom she was outed, neither of which declined to hire her.  She stated that conversations about surgery occurred after she was hired and were "conversational" although uncomfortable.  In terms of her reluctance to apply for jobs, she testified that she preferred obtaining a job with someone who owned their own business because, "in addition to them paying  more and more benefits, they were more relaxed on documentation, and they were really only require maybe a Social and identification, or just identification."  She acknowledged that any concerns she had about resuming her education were speculative. | Gore Deposition at 41-50, 71-73. |
| 94. | The forced disclosure of a person's transgender status through inaccurate identification documents, such as a birth certificate, violates a transgender person's privacy—the right to maintain stewardship of personal and medical information—and their ability to control whether, when, how, and to whom to disclose one's transgender status. | Ettner Decl. ¶ 46; Taylor Decl. ¶¶ 57-60. |
| | <u>Response:</u>  Defendants dispute that a birth certificate that accurately recorded a person's biological sex at the time of birth is "inaccurate."  Defendants also dispute this statement as it is not supported by the materials cited, with the exception of the statement in ¶ 60 of Dr. Taylor's Declaration.  Defendants object to that statement to the extent it is an attempt to define a "right of privacy" as a legal concept.  To the extent that it is such an attempt, it states a legal conclusion and is improper and should be stricken.  *F.R.C. Int'l. v. United States*, 278 F. 3d 641,643-44 (6th Cir. 2002) (quoting *A.L. Pickens Co., Inc. v. Youngstown Sheet & Tube Co.*, 650 F. 2d 118, 121 (6th Cir. 1981). | |
| 95. | Being denied birth certificates that accurately reflect their sex, as determined by their gender identity, is psychologically and emotionally harmful to transgender persons born in Tennessee, including Plaintiffs. | Ettner Report ¶¶ 45-47; Taylor Report ¶¶ 52, 61; Gore Decl. ¶ 22; Combs Decl. ¶ 21; L.G. Decl. ¶ 24; K.N. Decl. ¶ 21. |
| | <u>Response:</u>  Defendants dispute this statement as it is not supported by the materials cited.  The cited provisions of the Plaintiffs' Declarations contain only conclusory statements, nearly identical in each declaration.  The specific fact requirement of Rule 56(c)(4) of the Fed. R. Civ. P. is not satisfied by such conclusory statements.  *LaPine v. Savoie,* 2017 WL 6764085, *3 (6th Cir. 2017) | |

| | | |
|---|---|---|
| | (citing *Stine v. State Farm Fire & Casualty Co.*, 428 Fed. Appx. 549, 550 (6th Cir. 2011). Finally, the Ettner Report and Taylor Report cited are not in the record. | |
| 96. | Finally, by forcing Plaintiffs to have birth certificates incongruent with their gender identity—despite their social and medical transitions, and in defiance of their legal name changes and corrections to their other Tennessee and Federal identity documents—Defendants interfere with Plaintiffs' ability to communicate to others who they are. | Gore Decl. ¶¶ 14, 18; Combs Decl. ¶¶ 14, 20; L.G. Decl. ¶¶ 16, 20, 27; K.N.'s Decl.¶¶ 18, 20, 24; *see also* Ettner Decl. ¶ 46 |
| | Response:  Defendants dispute this statement, as the materials cited do not support this conclusory statement that "Defendants interfere with Plaintiffs' ability to communicate to others who they are."  In addition, the Declaration of Plaintiff K.N. does not have a ¶ 24. | |
| 97. | As a result of the Birth Certificate Policy, Plaintiffs are faced with a consistent reminder that the State of Tennessee does not respect them for who they are and does not recognize their personhood. | Ettner Decl. ¶¶ 43, 44; Gore Decl. ¶ 22; Combs Decl. ¶ 21; L.G. Decl. ¶ 24; K.N. Decl. ¶ 21. |
| | Response:  Defendants object to this statement.  It is not factual; it is an opinion and/or is conclusory.  The Ettner Declaration and Gore Declaration do not support the statement.  The Declarations of the remaining Plaintiffs contain nearly identical conclusory opinions. | |
| 98. | The Birth Certificate Policy stigmatizes transgender persons born in Tennessee, such as Plaintiffs, as illegitimate or unworthy of recognition. | Ettner Decl. ¶¶ 43, 44; Gore Decl. ¶ 22; Combs Decl. ¶ 21; L.G. Decl. ¶¶ 18, 24; K.N. Decl. ¶ 21. |
| | Response:  Defendants dispute this statement.  The materials cited do not support the statement, except for the conclusory language at ¶ 18 of the Declaration of L.G. that she is stigmatized. | |
| 99. | The Birth Certificate Policy inhibits the ability of transgender persons born in Tennessee, including Plaintiffs, to fully participate in our society. | *See, e.g.*, Gore Decl. ¶ 20; Combs Decl. ¶¶ 15, 17, 18; L.G. Decl. ¶ 20; K.N. Decl. ¶ 20; Taylor Decl. ¶¶ 48, 55. |
| | Response:  Defendants dispute this statement as the materials cited do not support the statement.  In general, the cited material discusses the need for accurate "identity documents."  In addition, Plaintiff Gore's statement in ¶ 20 of her Declaration is disputed.  During her deposition, Ms. Gore listed only two employers to whom she was outed, neither of which declined to hire | Gore Deposition at 41-50, 71-73. |

25

| her. She stated that conversations about surgery occurred after she was hired and were "conversational" although uncomfortable. In terms of her reluctance to apply for jobs, she testified that she preferred obtaining a job with someone who owned their own business because, "in addition to them paying more and more benefits, they were more relaxed on documentation, and they would really only require maybe a Social and identification, or just identification." She acknowledged that any concerns she had about resuming her education were speculative. | |
|---|---|

Respectfully Submitted,

HERBERT H. SLATERY III
Attorney General and Reporter

*/s/ Dianna Baker Sh*ew
DIANNA BAKER SHEW     BPR 012793
Senior Assistant Attorney General
(615) 532-1969
dianna.shew@ag.tn.gov

SARA E. SEDGWICK   BPR 004336
Senior Assistant Attorney General
(615) 532-2589
sara.sedgwick@ag.tn.gov
P.O. Box 20207
Nashville, TN  37202
*Counsel for the Defendants*

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on the 15th day of May 2020 I filed the foregoing via the Court's ECF system and thereby served the following counsel:

Gavin R. Villareal
Maddy Dwertman
Puneet Kohli
Samoneh Kadivar
BAKER BOTTS L.L.P.
98 San Jacinto Boulevard, Suite 1500
Austin, TX 78701-4078
Phone: (512) 322-2500
Facsimile: (512) 322-2501
gavin.villareal@bakerbotts.com
maddy.dwertman@bakerbotts.com
puneet.kohli@bakerbotts.com
samoneh.kadivar@bakerbotts.com


Brandt Thomas Roessler
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112-4498
Phone (212) 408-2500
Facsimile: (212) 408-2501
brandt.roessler@bakerbotts.com


Kathryn S. Christopherson
BAKER BOTTS L.L.P.
1001 Page Mill Rd., Bldg. One, Suite 200
Palo Alto, CA 94304-1007
Phone: (650) 739-7500
Facsimile: (650) 739-7699
kathryn.christopherson@bakerbotts.com

John T. Winemiller (TN 021084)
MERCHANT & GOULD
9717 Cogdill Road, Suite 101
Knoxville, TN 37932
Phone: (865) 380-5960
Facsimile: (612) 332-9081
JWinemiller@merchantgould.com


Sasha Buchert
LAMBDA LEGAL DEFENSE AND EDUCATION
FUND, INC.
1776 K Street NW, Suite 722
Washington, DC 20006
Telephone: (202) 804-6245
sbuchert@lambdalegal.org


Omar Gonzalez-Pagan
LAMBDA LEGAL DEFENSE AND EDUCATION
FUND, INC.
120 Wall Street, 19th Floor
New York, NY 10005-3919
Telephone: (212) 809-8585
Facsimile: (212) 809-0055
ogonzalez-pagan@lambdalegal.org


Tara L. Borelli
LAMBDA LEGAL DEFENSE AND EDUCATION
FUND, INC.
730 Peachtree Street NE, Suite 640
Atlanta, GA 30318-1210
Telephone: (404) 897-1880
Facsimile: (404) 897-1884
tborelli@lambdalegal.org


                              /s/ *Dianna Baker Shew*
                              Dianna Baker Shew