# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# AT NASHVILLE

| | | |
|---|---|---|
| KAYLA GORE; JAIME COMBS; L.G.; and K.N., | ) ) ) | |
| *Plaintiffs*, | ) ) | |
| v. | ) ) | No. 3:19-cv-00328 |
| WILLIAM BYRON LEE, in his official capacity as Governor of the State of Tennessee; and LISA PIERCEY, in her official capacity as Commissioner of the Tennessee Department of Health, | ) ) ) ) ) ) ) | Judge Eli J. Richardson<br>Magistrate Judge Barbara D. Holmes |
| *Defendants*. | ) | |

## DECLARATION OF ANTHONY E. D. TRABUE, M.D.

I, Anthony E. D. Trabue, M.D., being of legal age and sound mind, do hereby declare as follows:

1. I submit this declaration based on my personal knowledge.

2. I have been retained by counsel for Defendants as an expert in connection with the above-captioned lawsuit.

3. I have been asked by Defendants' counsel to provide my expert medical opinion regarding how a baby's sex is determined at the time of birth.

4. I prepared this report to state the opinions I may provide at trial and the basis for those opinions. My opinions in this report are based on the information that I have reviewed so far, and I reserve the right to revise and supplement this report in the future if any additional information becomes available. I also relied on my medical education, professional training, and extensive experience in reaching my opinions in this report.

5. I have not authored any publications during the past 10 years.

6. I have not testified as an expert at trial or by deposition during the past 4 years.

7. I am being compensated $400 per hour for my time inspecting, reviewing, and analyzing materials in this litigation. I will receive a flat fee of $3,000 for any deposition testimony given during my regular office hours and a flat fee of $2,000 for any deposition testimony given after my regular office hours. If I am called to give testimony at a hearing or trial in this lawsuit, I will be compensated a per diem of $4,000, inclusive of travel time. I will also be reimbursed for reasonable out-of-pocket expenses related to my work in this lawsuit in accordance with the State of Tennessee Comprehensive Travel Regulations.

8. My compensation does not depend on the outcome of this lawsuit, the opinions I express, or the testimony I may provide.

## QUALIFICATIONS

8. Below is a summary of my qualifications. My curriculum vitae, which is attached as Exhibit A to this report, provides more detailed information about my professional background and experience.

9. I have been licensed to practice medicine in the state of Tennessee since 1976. My Tennessee medical license number is 9901.

10. I have been board-certified in Obstetrics and Gynecology ("OB-GYN") since 1982 and was elected as a Fellow of the American College of Obstetrics and Gynecology in 1983.

11. I graduated from Vanderbilt University with a Bachelor of Arts in European History. After receiving my medical degree from Vanderbilt University School of Medicine, I completed an internship in General Surgery and OB-GYN residency at Vanderbilt University Medical Center.

12. I have been in private practice since 1979 and have maintained a solo practice since 1984. I have been on the Active Staff of Centennial and Saint Thomas Midtown Hospitals since 1979.

13. In addition to my clinical work, I have served on numerous medical committees and professional organizations—often in leadership roles—during my 42 years of practice. For example, I served as chair of the Department of OB-GYN at Centennial Hospital from 1988 to 1999, where I helped design and implement a quality assurance apparatus that later served as a model for Baptist Hospital (predecessor to Saint Thomas Hospital) and all of the Tri-Star hospitals. More recently, I have served on the Quality Oversight Committees for Cigna Health Care of Nashville and Health 123 of Middle Tennessee.

14. I currently serve as the Medical Director for Hope Clinic for Women, a free clinic that offers medical care, counseling, education, and support for pregnant women.

15. In addition to my clinical and volunteer work, I currently serve as an Assistant Professor of Obstetrics and Gynecology at the University of Tennessee College of Medicine, working with the OB-GYN residents at Saint Thomas Midtown Hospital.

16. Having delivered approximately 12,000 babies, I particularly cherish teaching these residents a safe approach to completing difficult deliveries.

17. In recent years, I have—on average—delivered over 100 babies and performed over 100 surgeries per year.

## EXPERT OPINIONS

18. My opinions are based on the information I have been provided by Defendants' attorneys—including Plaintiffs' Amended Complaint and Defendants' Motion to the Dismiss Amended Complaint—and my education and extensive professional experience of having delivered approximately 12,000 babies over the course of my 42 years as a practicing OB-GYN.

19. In the overwhelming majority of cases, a baby's sex is determined at birth by visual observation of his or her external genitals. In fact, in my 42 years of practice, I have delivered only a handful of babies whose sex could not be instantly determined by looking at their external genitals.

20. In those rare occasions involving ambiguous genitalia, I deferred to the baby's pediatrician to determine the baby's sex.

21. Even in cases involving ambiguous genitalia, however, the baby's sex at birth can be overwhelmingly determined by examining his or her chromosomal make up. Indeed, a baby born with XY chromosomes is a male while a baby born with XX chromosomes is a female. And, of course, that baby's chromosomal make up can never change. In other words, persons who undergo gender reassignment surgery always remain chromosomally the same as they were born. Their chromosomal makeup reflects their sex at birth, and never changes.

22. Surely, I am aware of certain genetic conditions that cause a chromosomal make up that is something other than XX or XY. But, even in those rare cases, the presence or absence of the Y chromosome overwhelmingly determines the baby's sex at birth.

23. Birth of a baby can be a complex medical procedure, and the mother's medical record reflects the serious nature of the procedure. A medical record cannot be changed.

24. Of course, the baby's sex at birth is an important part of his or her medical record. But the baby's sex at birth is not any more difficult to determine than the other data that make up the rest of the medical record. Indeed, determining the baby's sex at birth is akin to noting the baby's birth weight, height, date and time of birth, and physical condition.

25. Nevertheless, because it is a medical determination made at the time of birth, the baby's sex designation at birth, as recorded in the medical record or on the birth certificate, cannot and

should not later be changed.  The baby's sex is a part of the medical record.  It must not change so that it will always accurately reflect what happened during the birth procedure.

## CONCLUSIONS

26.   A baby's sex is determined at birth by visually inspecting its external genitals and contemporaneously recording that information in the baby's medical record along with other vital information like its birth weight and date and time of birth.  In other words, the baby's sex as noted in its medical record—and as is subsequently recorded on the birth certificate—is simply a reflection of what the physician observed at birth and thus cannot later be changed.

I declare under penalty of perjury that the foregoing is true and correct.
This ___ day of May, 2020.

Anthony E. D. Trabue, M.D.

5

should not later be changed. The baby's sex is a part of the medical record. It must not change so that it will always accurately reflect what happened during the birth procedure.

## CONCLUSIONS

26.  A baby's sex is determined at birth by visually inspecting its external genitals and contemporaneously recording that information in the baby's medical record along with other vital information like its birth weight and date and time of birth. In other words, the baby's sex as noted in its medical record—and as is subsequently recorded on the birth certificate—is simply a reflection of what the physician observed at birth and thus cannot later be changed.

I declare under penalty of perjury that the foregoing is true and correct.

This 17 day of May, 2020.

_____
Anthony E. D. Trabue, M.D.